David M. Zensky
Jacqueline Yecies
David C. Bethea
Akin Gump Strauss Hauer & Feld LLP
One Bryant Park
New York, NY 10036
(212) 872-1000
(212) 872-1002 (fax)
dzensky@akingump.com
jyecies@akingump.com
dbethea@akingump.com

*Counsel for Petitioner*

### UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THREE BROTHERS TRADING, LLC, d/b/a ALTERNATIVE EXECUTION GROUP,<br><br>Petitioner,<br><br>v.<br><br>GENEREX BIOTECHNOLOGY CORP.<br><br>Respondent. | Civil Action No. 18-CV-11585 (KPF) |

### DECLARATION OF RICHARD ALTER IN SUPPORT OF PETITIONER'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

1.      I am submitting this declaration pursuant to 28 U.S.C. § 1746 in support of Petitioner's Memorandum of Law in Support of its Motion for Summary Judgment.[1]  I make this declaration based on my own personal knowledge and belief and my review of the documents relevant to the arbitration proceedings titled *Three Brothers Trading, LLC v. Generex*

---

[1] Capitalized terms used but not defined herein have the meaning given to them in Petitioner's Memorandum of Law in Support of its Motion for Summary Judgment.

*Biotechnology Corp.*, Case No. 01-17-0007-1894, administered by Daniel F. Kolb (the "Arbitrator") in the International Centre for Dispute Resolution of the American Arbitration Association ("AAA").

2. Since its inception in June 2007, I have been the CEO of Three Brothers Trading, LLC, d/b/a Alternative Execution Group ("AEXG"). I am also an attorney, admitted and in good standing in the State of New York. In my capacity as CEO of AEXG, I am familiar with all aspects of AEXG's business, including the contracts it executes and the legal proceedings in which it is involved.

### A. AEXG

3. AEXG is a limited liability company under the laws of New York. AEXG is a broker-dealer that provides liquidity and execution services for broker-dealers and other institutions.

4. My wife, Caroline Alter, and I are the members of AEXG and are residents of Westchester County, New York. AEXG's principal place of business is located at 708 Third Avenue, New York, New York 10017.

### B. The Contract

5. In February 2017, AEXG entered into a written Memorandum of Understanding (the "Contract") with Generex Biotechnology Corp. ("Generex"). The purpose of the Contract was to memorialize the terms whereby AEXG would provide referral services to Generex, which wished to secure financing for its business.[2]

6. In exchange for AEXG's services, Generex agreed to compensate AEXG as follows:

---

[2] *See* Memorandum of Understanding between AEXG and Generex (the "Contract"), a true and correct copy of which is attached hereto as Exhibit A.

(i)   Upon receipt of funds from a Referred Party, the Company [Generex] will pay AEXG 7% (Seven Percent) of the funds received.

(ii)  In addition to compensation pursuant to section (i), above, the Company [Generex] will issue to AEXG, or to representatives or agents of AEXG as instructed by AEXG, warrants equivalent to any warrants sold or issued to a Referred Party. These warrants will have the same substantive terms and conditions, including duration, exercise price, price adjustment provisions, and the like as any warrants issued to the Referred Party. AEXG will pay the Company [Generex] $100 for these warrants which shall be issued in an amount equivalent to 7% of those issued to the Referred Party. If no warrants are issued to the Referred Party in a transaction triggering compensation pursuant to this document, the Company [Generex] shall issue to AEXG, or to representatives or agents of AEXG as instructed by AEXG, warrants exercisable at the price paid by the Referred Party for Company [Generex] shares, equivalent in number to 7% of the number of shares purchased by the Referred Party. These warrants shall have a 5-year duration. AEXG, AEXG's representatives, or agents will have piggyback registration rights with respect to the warrants, which will be exercisable for cash only.[3]

7.  The Contract did not put a ceiling on the value of the warrants, nor did it provide an additional payment from Generex to AEXG if the warrants were to expire without AEXG exercising them, i.e., if the warrants' strike price was below Generex's share price.[4] Thus, the parties envisioned that the warrants issued pursuant to the Contract could have either benefited AEXG (i.e., if Generex's stock price went above the warrants' strike price, which it did) or ended up costing Generex nothing (i.e., if AEXG never exercised the warrants), depending on Generex's performance. To put it differently, if Generex performed well, AEXG would benefit from the warrants; if Generex did not perform well, AEXG would not have benefited.

8.  In lieu of Generex providing a retainer fee, Generex agreed to a sixty-day "No Shop" exclusivity provision (the "No Shop Provision"), which gave AEXG the exclusive right to provide financing referral services to Generex from February 8, 2017 to April 9, 2017 (the

---

[3] *See* Ex. A (Contract) at 1.
[4] *See* Ex. A (Contract) at 1.

3

"Exclusivity Period").[5]  During the Exclusivity Period, Generex agreed that it would not "directly or indirectly discuss, negotiate, consider, or enter into any financing transaction other than with existing shareholders."[6]

9.      The Contract included an explicit remedy for AEXG if Generex breached the No Shop Provision: in the event that Generex secured any financing from an investor not referred by AEXG during the Exclusivity Period, Generex was to compensate AEXG as if AEXG had sourced the financing.[7]  These damages included Generex granting warrants to AEXG, which as already noted, did not contain any ceiling or floor provisions.  The amount of the warrants was to be determined based on the amount of financing Generex received.[8]  The strike price of the warrants was to be determined based on the arrangement between Generex and the financing party.[9]

10.     The parties agreed to arbitrate any disputes concerning the Contract.[10]

**C. The Arbitration**

11.     AEXG performed its obligations under the Contract.  Specifically, in or around March 2017, AEXG presented Generex an appropriate and willing potential investor, Kodiak Capital Group, LLC ("Kodiak"), which was prepared to invest $3 million in Generex.  On March 28, 2017, however, Generex rejected the Kodiak investment and instead agreed to enter into a financing agreement with another investor not referred by AEXG, Pharma Trials, LLC

---

[5] *See* Ex. A (Contract) at 2.
[6] *See* Ex. A (Contract) at 2.
[7] *See* Ex. A (Contract) at 2.
[8] *See* Ex. A (Contract) at 1-2.
[9] *See* Ex. A (Contract) at 1-2.
[10] *See* Ex. A (Contract) at 3.

("Pharma").[11]  The financing arrangement with Pharma involved Pharma providing $3 million to Generex in exchange for 3,000 preferred shares convertible into 1,200,000 shares of common stock at a conversion price of $2.50 per share.[12]  AEXG considered this a breach of the Contract's No Shop Provision.[13]

12.     On August 22, 2017, AEXG, through its counsel, sent a letter to Generex.[14]  The letter informed Generex that AEXG considered its conduct on March 28, 2017 a breach of the Contract.[15]

13.     AEXG sought to settle the matter with Generex outside of a formal arbitration proceeding, but was unsuccessful.[16]  Thus, on November 27, 2017, AEXG formally demanded that the parties submit their dispute to arbitration before the AAA.[17]  The demand sought "$210,000, along with 84,000 warrants convertible to Generex common stock, exercisable at $2.50 per share, plus accrued simple interest running at New York's statutory rate of 9% from March 28, 2017, along with attorneys' fees, costs and expenses."[18]  The amount of warrants sought in the demand was calculated based on the $3 million investment Generex received from Pharma.[19]

---

[11] *See* AEXG's Demand to Arbitrate, a true and correct copy of which, including the exhibits, is attached hereto as Exhibit B, at Ex. 2.
[12] *See* Ex. B (Demand to Arbitrate) at 13.
[13] *See* Ex. A (Contract) at 2; Ex. B (Demand to Arbitrate) at Ex. 5.
[14] *See* Ex. B (Demand to Arbitrate) at Ex. 5.
[15] *See* Ex. B (Demand to Arbitrate) at Ex. 5.
[16] *See* Ex. B (Demand to Arbitrate) at Ex. 5.
[17] *See* Ex. B (Demand to Arbitrate).
[18] *See* Ex. B (Demand to Arbitrate) at 17-18.
[19] *See* Ex. B (Demand to Arbitrate) at 13 n.3.

14. The dispute was referred to AAA's international division, the International Centre for Dispute Resolution. After reviewing his experience and qualifications,[20] AEXG and Generex agreed that Daniel F. Kolb would serve as the arbitrator of the dispute.

15. Prior to an arbitration hearing, the parties engaged in discovery, and the Arbitrator accepted pre-hearing submissions from the parties. AEXG provided its pre-hearing submission to Generex, but Generex never provided a copy of its pre-hearing submission to AEXG (and AEXG still has not seen a copy to date).[21]

16. After receiving the submissions, the Arbitrator held a hearing on September 24, 2018, in New York, New York. During this hearing, the Arbitrator heard arguments from both counsel for AEXG and counsel for Generex. The Arbitrator also heard testimony from three fact witnesses: Jeff Meyerson, a Senior Managing Director at AEXG; Joe Moscato, Generex's CEO; and Mark Fletcher, Generex's Executive Vice-President & General Counsel. The hearing lasted roughly four hours.

17. During the hearing, Generex's CEO, Joe Moscato, testified that Generex could not register the warrants promised in the Contract because this would cause Generex to lose the ability to utilize its net operating loss. A net operating loss can be favorable from a tax perspective. Moscato also testified that he never intended to issue the warrants to AEXG.

18. On October 19, 2018, both AEXG and Generex submitted to the Arbitrator post-hearing briefs summarizing the relevant facts and law.[22]

---

[20] *See* Daniel F. Kolb's AAA Resume, a true and correct copy of which is attached hereto as Exhibit C.

[21] *See* AEXG's pre-hearing submission, a true and correct copy of which is attached hereto as Exhibit D.

[22] *See* AEXG's post-hearing submission, a true and correct copy of which is attached hereto as Exhibit E; Generex's post-hearing submission, a true and correct copy of which is attached hereto as Exhibit F.

**D. Generex's Stock Dividend**

19. Sometime after the hearing and after the parties submitted their post-hearing briefs, I became aware through Generex's public filings that Generex's board had approved the issuance of a stock dividend, which would provide twenty shares of common stock for every one share of issued and outstanding common stock (the "Stock Dividend").[23] Under the terms of the Stock Dividend, the owner of a single share of Generex's common stock would own twenty-one shares post-dividend. The twenty-one fold increase in the number of outstanding shares of stock would result in a corresponding reduction in the value of each Generex share, equivalent to dividing the pre-dividend share price by twenty-one.

20. I also became aware that Generex planned to adjust the amount of outstanding warrants per the Stock Dividend. Specifically, Generex's October 22, 2018 announcement states that, "[a]ll options, warrants, and convertible securities of the Company outstanding on the record date will be proportionally adjusted to reflect the dividend."[24] Thus, similar to the adjustments to the number of shares, the owner of a warrant to purchase a single share of Generex stock would have a warrant to purchase twenty-one shares of Generex stock. Likewise, there would need to be a corresponding proportional adjustment to the strike price of outstanding warrants by dividing the strike price by twenty-one.

21. Because the Stock Dividend would have significantly affected AEXG's award unless the award took into account the proportional adjustment Generex was offering holders of options and warrants, I drafted a letter to the Arbitrator explaining the Stock Dividend, attaching two Generex press releases detailing the Stock Dividend, and instructed my arbitration counsel to

---

[23] *See* Ex. Ex. G (AEXG's Nov. 2, 2018 Email) at 3-5.
[24] *See* Ex. G (Generex's Nov. 2, 2018 Email).

send this to the Arbitrator, which he did on November 2, 2018.[25] The parties could not address the Stock Dividend during the hearing because Generex had not announced the dividend at that time.

22. The letter attached to the November 2, 2018 email informed the Arbitrator that AEXG's interest in 84,000 of Generex's warrants would be rendered nearly worthless unless an upward adjustment was made to the number of warrants and a downward adjustment was made to the strike price of the warrants.[26] Thus, the letter requested that any arbitration award consider the Stock Dividend.[27] If any award did not take into account the dividend, AEXG would not be placed in the position it would have been had the breach not occurred, as contracted for by the parties.[28] Indeed, if Generex had complied with the Contract, AEXG would have owned 84,000 warrants at the time of the Stock Dividend. Thus, AEXG would have benefited from the proportional adjustment Generex offered to other warrant holders: its 84,000 warrants would have become 1,764,000 warrants (multiplying the 84,000 warrants by 21).[29] Additionally, the strike price for those warrants would have been proportionally adjusted to approximately 11.9 cents (dividing the $2.50 strike price by 21).[30]

23. Generex responded to the letter by emailing the Arbitrator and AEXG on November 2, 2018.[31] AEXG sent a reply letter via email to the Arbitrator and Generex on

---

[25] *See* the November 2, 2018 email from A. Weiner to the Arbitrator, attaching a letter regarding the Stock Dividend, a true and correct copy of which is attached hereto as Exhibit G.
[26] *See* Ex. G (AEXG's Nov. 2, 2018 Email) at 2.
[27] *See* Ex. G (AEXG's Nov. 2, 2018 Email) at 2.
[28] *See* Ex. G (AEXG's Nov. 2, 2018 Email) at 2.
[29] *See* Ex. G (AEXG's Nov. 2, 2018 Email) at 2.
[30] *See* Ex. G (AEXG's Nov. 2, 2018 Email) at 2.
[31] *See* Generex's November 2, 2018 email, attaching its response letter, a true and correct copy of which is attached hereto as Exhibit H.

November 5, 2018, and Generex responded to the Arbitrator and AEXG that same day.[32] In its submissions, Generex contended that no warrants should be awarded, but if they were, the Arbitrator should not consider the Stock Dividend.[33] Thus, prior to issuing his award, the Arbitrator had multiple submissions from the parties regarding the Stock Dividend and the parties' respective positions on how the Stock Dividend should affect the award.

24. Generex announced that the Stock Dividend had occurred on November 30, 2018, a Friday.[34] The dividend (and its corresponding effect on Generex's share price) was not reflected in the market until the next business day, Monday, December 3, 2018.[35]

**E. Attorneys' Fees**

25. Under the Contract, the prevailing party to an arbitration or any other legal proceeding to enforce or interpret the Contract is entitled to collect from the non-prevailing party reasonable attorneys' fees.[36]

26. Following the hearing, on September 28, 2018, AEXG, through its arbitration counsel, sent Generex a letter attaching invoices for attorneys' fees and costs it had incurred to date.[37] AEXG also summarized its fees in its post-hearing brief.[38]

27. I understand from my arbitration counsel that subsequently, Generex complained to the Arbitrator about the reasonableness of AEXG's fees, and thus, on October 22, 2018, the

---

[32] *See* AEXG's November 5, 2018 email, attaching its reply, a true and correct copy of which is attached hereto as Exhibit I; Generex's November 5, 2018 email, attaching its response, a true and correct copy of which is attached hereto as Exhibit J.

[33] Ex. H (Generex's Nov. 2, 2018 Email); Ex. J (Generex's Nov. 5, 2018 Email).

[34] *See* Generex's November 30, 2018 Form 8-K, a true and correct copy of which is attached hereto as Exhibit K.

[35] *See* Generex's November 14, 2018 Announcement, a true and correct copy of which is attached hereto as Exhibit L (noting the ex-dividend date as December 3, 2018).

[36] *See* Ex. A (Contract) at 3.

[37] *See* AEXG's September 28, 2018 letter to Generex, a true and correct copy of which is attached hereto as Exhibit M.

[38] *See* Ex. E (AEXG's Post-Hearing Brief) at 7.

Arbitrator requested that AEXG justify the fees it had incurred.[39] AEXG responded to the Arbitrator on October 29, 2018, attaching a letter explaining its fees and a separate letter that attached the invoices for the fees it had incurred since September 28, 2018.[40]

### F. The Arbitration Award

28. On December 3, 2018, the Arbitrator issued a three-page decision detailing his findings (the "Arbitration Award").[41] The Award determined that Generex had breached the Contract and thus the Arbitrator awarded AEXG four subsets of damages: (1) "210,000 in liquidated damages," (2) "the economic value today of 84,000 warrants convertible to Respondent's stock exercisable at $2.50 per share as of September 24, 2018," (3) $93,304.06 in legal fees and $12,392.50 in costs, and (4) "accrued simple interest running at 9% from March 28, 2017."[42]

29. The award of the "economic value of 84,000 warrants convertible to Respondent's stock exercisable at $2.50 per share as of September 24, 2018" made evident sense given the information the Arbitrator had before him, including the testimony of Mr. Moscato (i.e., that he could not register new warrants) and the parties' submissions regarding the Stock Dividend. The calculation of the "economic value today of 84,000 warrants" should thus result in an award to AEXG of $3,300,360.[43]

30. The economic value of the warrants can be calculated as follows:

- The Arbitrator awarded the economic value of the warrants as of September 24, 2018.[44] This means that the Arbitration Award intended for AEXG to

---

[39] *See* October 2018 email exchange between the Arbitrator and AEXG regarding attorneys' fees, a true and correct copy of which is attached hereto as Exhibit N.

[40] *See* Ex. N (Attorneys' Fees Correspondence) at 34-36.

[41] *See* Award of Arbitrator, a true and correct copy of which is attached hereto as Exhibit O.

[42] Ex. O (Award) at 3.

[43] *See* Ex. G (AEXG's Nov. 2, 2018 Email).

[44] *See* Ex. O (Award) at 3.

> benefit from the adjustment that Generex provided to all holders of outstanding warrants.[45] Thus, AEXG's award of 84,000 warrants would be proportionally adjusted to 1,764,000 warrants (84,000 x 21).[46]

- "[T]he economic value today" means that the value of AEXG's warrants should be calculated based on Generex's share price on the day the Arbitrator issued the award, December 3, 2018. I know from publicly available information that the closing value of Generex's shares (GNBT) on December 3, 2018, was $1.99.[47]

- The warrants Generex was required to give for breaching the Contract were exercisable for $2.50 per share;[48] therefore, to calculate the "economic value" of the warrants, the price AEXG would have had to pay to exercise the warrants should be considered. Exercising this right would have cost AEXG $210,000 (84,000 shares x $2.50).[49]

- Therefore, the Arbitration Award valued the warrants at $3,300,360, which is determined by using the following calculation: 1,764,000 (number of shares taking into account the Stock Dividend) x $1.99 (closing price of GNBT on December 3, 2018) - $210,000 (the price AEXG would have paid on September 24, 2018).

31.   Based on the Arbitration Award, pre-award interest on the $210,000, running from March 28, 2017 to December 3, 2018, is valued at $31,844.70. Post-award interest on the entire award accrues daily at $900.30 beginning on December 3, 2018.

32.   As of the date of this declaration, Generex has not complied with the Arbitration Award.

---

[45] *See* Ex. G (AEXG's Nov. 2, 2018 Email) at 5.

[46] *See* Ex. G (AEXG's Nov. 2, 2018 Email) at 5.

[47] *See* Bigcharts.com webpage representing Generex's stock price as of December 3, 2018, a true and correct copy of which is attached hereto as Exhibit P.

[48] *See* Ex. B (Demand to Arbitrate) at 13 n.3.

[49] *See* Ex. G (AEXG's Nov. 2, 2018 Email) at 3. An alternate way to calculate this is as follows: AEXG's claim sought 84,000 warrants with an exercise price of $2.50 per warrant. According to the Stock Dividend, however, there was a twenty-one fold increase in the number of outstanding shares. The Arbitration Award thus required a commensurate twenty-one times increase in the number of warrants awarded to AEXG (84,000 warrants x 21 = 1,764,000 warrants). The requested adjustment in the number of warrants would require a corresponding adjustment in the exercise price to $0.119048 per warrant. ($2.50 / 21 = $0.119048). Thus, the adjustment preserves AEXG's full exercise price ($0.119048 x 1,764,000 = $210,000).

33. I am aware of Generex's argument that the value of the warrants that the Arbitrator awarded is zero. This is the first time Generex is making this argument. Neither during the Hearing nor in its post-hearing submissions to the Arbitrator did Generex ever argue that awarding the warrants would be futile because their strike price was above Generex's current share price.

I declare, under penalty of perjury, that the foregoing is true and correct.

Executed on this 4th day of February 2019, in New York, New York.

_____
Richard Alter

13