UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---

THREE BROTHERS TRADING LLC d/b/a
ALTERNATIVE EXECUTION GROUP,

                    Petitioner,

v.                                           Civil No. 18 CV 11585 (KPF)

GENEREX BIOTECHNOLOGY CORP.,

        Respondent.

---

**RESPONDENT'S MEMORANDUM OF LAW IN OPPOSITION
TO PETITIONER'S MOTION FOR SUMMARY JUDGMENT AND
IN SUPPORT OF RESPONDENTS CROSS-MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

I.   STATEMENT OF FACTS ................................................................................................ 1

II.  SUMMARY JUDGMENT STANDARD ..................................................................... 5

III. SUMMARY OF ARGUMENT ...................................................................................... 5

IV.  Argument ........................................................................................................................ 8

  A.  3 Brothers Is Not Entitled To a Judgment In The Amount of $3,651,213.76. ............. 8

  B.  The Warrants Were Valueless On December 3, 2018 And This Court S hould Not Award 3 Brothers Any Economic Value For The Warrants...................... 13

  C.  The Award Of A Judgment In The Amount of $3,651,213.76 Would Amount To An Unenforceable Penalty Under New York Law.................................. 15

  D.  Alternatively, The Award Of The Arbitrator Is Incomplete And Indefinite And The Arbitrator Imperfectly Executed His Powers So that A Material, Final, And Definite Award Upon The Subject Matter Submitted Was Not Made Under 9 USC § 10 (a)(4) And The Award Was Imperfect In Matter Of Form Under 9 USC § 11(c). ..................................................................... 18

  E.  Interest.................................................................................................................... 20

  F.  3 Brothers Is Not Entitled To Attorneys' Fees .......................................................... 21

V.   Conclusion...................................................................................................................... 22

## Table of Authorities

**Cases**

*Alcatel Space, S.A. v. Loral Space & Communications, LTD*, No. 02 CIV 2674(SAS),
  2002 WL 1391819 (S.D.N.Y. June 25, 2002) .................................................. 20

*Americas Insurance Co. v. Seagull Compania Naviera*, SA 744 F.2d 64 (2d Cir. 1985) ............ 19

*Board of Managers of Cent. Park Place Condominium v. Potoschnig*, 136 A.D.3d 441,
  23 N.Y.S.3d 888, 889 (1st Dept. 2016) .................................................. 21

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ........................................... 5

*Cole Publishing Co., Inc. v. Wiley & Sons, Inc.*, No. 93 (CIV 3641 (KMW),
  1994 WL 532898  (S.D.N.Y. Sept. 29, 1994) .................................................. 12, 13

*Commw. Assoc. v. Palomar Med. Techs., Inc.*, 982 F Supp. 205 (S.D.N.Y 1997) ..................... 12

*D'Amico v. N.Y.C.*, 132 F.3d 145 (2d Cir. 1998) .......................................... 5

*Daum Global Holdings Corp. v. Ybrant Digital Ltd.*, No. 13-CV-3135 (AJN),
  2015 WL 5853783 (S.D.N.Y. Oct. 6, 2015) .................................................. 10

*Ethyl Corp. v. United Steelworkers of Am., AFL–CIO-CLC*, 768 F.2d 180 (7th Cir. 1985) ........... 8

*Halifax Funds, L.P. v. M.R.V. Commc'ns, Inc.*, No. 00 CIV 4878 HB,
  2001 WL 1622261 (S.D.N.Y., Dec. 18, 2001) .................................................. 12

*Hermanowski v. Acton Corp.*, 580 F. Supp. 140, 146 (E.D.N.Y. 1983),
  *aff'd* 729 F.2d 921 (2d Cir. 1984) .................................................. 14

*In re Freeman*, 34 N.Y.2d 1 (N.Y. 1974) .................................................. 22

*In re Vivendi Universal, S.A. Securities Lit.*, 634 F. Supp. 2d 352 (S.D.N.Y. 2009) ................... 14

*John T. Brady & Co. v. Form–Eze Systems, Inc.*, 623 F.2d 261 (2d Cir. 1980) ..................... 17

*Josephthal & Co., Inc. v. Cruttendon Roth, Inc.*, 177 F. Supp. 2d 232 (S.D.N.Y 2001) ........ 12, 13

*Leasing Service Corp. v. Justice*, 673 F.2d 70 (2d Cir. 1982) ..................................... 17

*Lucente v. IBM Corp.*, 310 F3d. 243, (2d Cir. 2002) .......................................... 5, 16

*Lucente v. Int'l Business Machines Corp.*, 146 F. Supp. 2d 298 (S.D.N.Y. 2001) ..................... 15

*Massina v. Massina*, 149 A.D.3d 927, 928, 52 N.Y.S.3d 409 (2d Dep't 2017) .......................... 21

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) ........................... 5

*Maxim Group LLC v. Life Partners Holdings, Inc.*, 690 F. Supp. 2d 293
  (S.D.N.Y. 2010) .................................................. passim

*Measom v. Greenwich and Perry Street Housing Corp.*, 193 Misc. 2d 741,
  752 N.Y.S.2d 194 (N.Y. City Civ. Ct. 2002) .................................................. 21

*NYCTL 1996-1 Trust v. Stavrinos Realty Corp.*, 113 A.D.3d 602, 978 N.Y.S.2d 320
  (2d Dep't 2014) .................................................. 21

*Olympia & York Florida Equity Corp. v. Gould*, 776 F.2d 42 (2d Cir. 1985) .......................... 20

ii

*Oscar Gruss & Son, Inc. v. Hollander*, 337 F.3d 186 (2d Cir. 2003)......................................... 7, 15

*Remsen Funding Corp. of N.Y. v. Ocean W. Holding Corp.*, No. 06 Civ. 15265,
    2009 WL 874212 (S.D.N.Y. Mar. 31, 2009) ............................................................................ 6

*Sharma v. Skaarup Ship Mgmt. Corp.*, 916 F.2d 820 (2d Cir. 1990) ............................................ 15

*Siegel v. Titan Indus. Corp.*, 779 F.2d 891 (2d Cir. 1985) ........................................................ 8, 20

*Tempo Shain Corp. v. Bertek, Inc.*, 120 F.3d 16 (2d. Cir. 1997)...................................................... 8

*Walsh v. Schlecht*, 429 U.S. 401 (1977) .................................................................................... 18

*Zephyros Maritime Agencies, Inc.*, 662 F. Supp. 892 (S.D.N.Y. 1987) ........................................ 21

## Statutes

Fed. R. Civ. P. 56(a) ...................................................................................................................... 5

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---

THREE BROTHERS TRADING LLC d/b/a
ALTERNATIVE EXECUTION GROUP,

                Petitioner,

v.                                  Civil No. 18 CV 11585 (KPF)

GENEREX BIOTECHNOLOGY CORP.,

                Respondent.

---

### RESPONDENT'S MEMORANDUM OF LAW IN OPPOSITION TO PETITIONER'S MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF RESPONDENT'S CROSS-MOTION FOR SUMMARY JUDGMENT

Now comes Respondent, Generex Biotechnology Corp. ("Generex") and files the within Memorandum of Law In Opposition to Petitioner's, 3 Brothers Trading, LLC's ("3 Brothers") Motion for Summary Judgment and In Support of Generex's Cross-Motion For Summary Judgment as follows:

## I.    STATEMENT OF FACTS

3 Brothers has moved for summary judgment confirming an arbitration Award dated December 3, 2018 issued in an arbitration between 3 Brothers and Generex. The arbitration arose from a dispute concerning a Memorandum of Understanding ("MOU") between Generex and 3 Brothers providing for 3 Brothers to extend efforts to locate a source for financing certain obligations of Generex in connection with an acquisition of another business.[1] (Statement of Undisputed Material Facts Pursuant to Local Rule 56.1 (hereinafter "Rule 56.1 Stat.,") Doc. 22, ¶¶ 7-8; MOU, Doc. 1-2.)

---

[1] Moscato Declaration, ¶¶ 6,7, Ex. A hereto.

The MOU did not provide for a specific amount of financing, nor did it provide for a specific amount of compensation to 3 Brothers, rather it provided for 3 Brothers to receive as compensation 7% of the amount of any financing obtained through 3 Brothers and for the issuance of warrants for the common stock of Generex in the amount of 7% of any warrants purchased by the source of the financing or warrants in the amount of 7% of common stock purchased by the company that provided the financing.  (MOU, Doc. 1-2, p. 2.)  3 Brothers, under the MOU, had the exclusive right to seek and obtain financing for a period of 60 days from the date of the MOU, February 8, 2017, for compensation as set forth in the MOU.  The MOU contained an exception from its compensation provisions for financing obtained through or with existing shareholders. (MOU, Doc. 1-2, p. 3.)

On March 28, 2018, Generex at a meeting of its Board of Directors rejected a proposed financing transaction from a source referred by 3 Brothers and instead closed a financing transaction with a company named Pharma Trials, LLC ("Pharma") and certain of its shareholders. Pharma was a source of financing located by Andrew Greene, an officer of Generex and a member of its board of directors, and a shareholder and member of the board of directors of Pharma.  (Doc. 20-6, pp. 9, 13, 17; Declaration of Joseph Moscato, President and CEO of Generex, attached hereto as Exhibit "A.")

The amount of financing provided by Pharma and its shareholders was $3,000,000.  As part of the transaction, Pharma purchased 3,000 shares of Generex Preferred Stock convertible to 1,200,000 shares of common stock of Generex at $2.50 per share. (Rule 56.1 Stat., Doc. 22, ¶ 32; Doc. 20-2, at pp. 56-57.)

After the closing of the transaction with Pharma, 3 Brothers contended that Generex had breached the MOU by obtaining a source of financing independent of 3 Brothers.  3 Brothers

sought to be paid 7% of the amount financed or $210,000.00 and 84,000 warrants equal to 7% of the 1,200,000 shares of common stock converted from the 3,000 shares of preferred stock, transferred to Pharma. (Doc. 20-2, pp. 2, 19, 20.) Generex believed that the transaction was subject to the exception set forth in the MOU for financing through existing shareholders, and took the position that Andrew Greene was an insider as a member of the Generex board of directors and that Pharma was within the intent of the parties to the MOU to be an excluded party from the compensation provision of the MOU. (Moscato Dec. ¶ 13.) Generex also contended that 3 Brothers breached the MOU by failing to obtain an acceptable source of financing under the MOU. (Exhibit F to Declaration of Richard Alter, Post Hearing Submission of Generex, Doc. 20-6, at pp. 2, 3, and 10.) 3 Brothers disagreed and 8 months after the closing of the financing transaction with Pharma, 3 Brothers filed its Statement of Claim with the AAA claiming the $210,000 and 84,000 warrants.[2] The AAA determined that the case should proceed under its International Arbitration Rules, even though Generex is a Delaware Corporation, since Generex had a Canadian and Florida office.

A hearing was held on September 24, 2018 during which time evidence was presented by both parties and post-hearing submissions were filed by both parties with the arbitrator.

On October 3, 2018, 9 days after the close of the arbitration hearing, Generex authorized a 20 to 1 stock dividend ("dividend") for holders of its common stock. (*See* Exhibit C to Petition to Confirm Arbitration, Doc. 1-3.) Since the dividend was authorized after the close of the hearing, no evidence was submitted at the hearing with regard to the dividend. However, in a post-hearing letter to the arbitrator, 3 Brothers improperly made a submission to the arbitrator based on a post-

---

[2] Contrary to Rule R-6(b) of the AAA (Yecie Declaration, Doc. 21-10, p. 14), 3 Brothers did not seek to amend its Statement of Claim after the hearing to claim entitlement to the dividend, which amounted to a change in claim, nor did it seek to reopen the hearing with regard to the dividend.

3

hearing occurrence arguing that it was entitled to common shares of Generex at 20 to 1 pursuant

to the dividend, upon the exercise of the 84,000 warrants, even though it had only sought in its

Statement of Claim 7% of the amount financed and the 84,000 warrants and no evidence was

admitted or considered at the hearing with regard to the dividend.  (Doc. 20-2, pp. 2, 19, 20.)

Therefore, the dividend was never contemplated by the parties when they entered into the MOU

or was considered during the hearing.

Generex objected to and opposed 3 Brothers post-hearing position that the 84,000 warrants

were subject to the dividend, by written submission to the arbitrator.  (*See* Generex Post-Hearing

Submission, Doc. 20-6.)  3 Brothers never requested that the arbitrator reopen the hearing and take

evidence subject to cross-examination with regard to the dividend.

The arbitrator, on December 3, 2018, issued his Award finding that Generex had breached

the MOU and awarded $210,000 to 3 Brothers (7% of the amount financed) as liquidated damages,

legal fees in the amount of $93,304.06, costs in the amount of $12,392.50, interest from March 28,

2017 at 9%, a 50-50% split in the AAA and arbitrator's fees and:

> the economic value today of 84,000 warrants convertible to
> Respondent's stock exercisable at $2.50 per share as of September
> 24, 2018, plus accrued simple interest running at 9% from March
> 28, 2017.[3]  (Award, Doc. 1-1, p. 4.)

The arbitrator did not award the warrants themselves to 3 Brothers, nor stock, nor the value

of Generex stock, only the economic value "today" of 84,000 warrants.   There was no

consideration or discussion of the dividend by the arbitrator in the Award. (Generex Statement of

Undisputed Material Facts ("SMF"), ¶¶ 133, 140) The plain meaning of the Award therefore

---

[3] Pharma does not fall under the definition of "Referred Party" under the MOU, which is a party referred by 3 Brothers, which Pharma was not. (MOU, Doc. No. 1-2, p. 2) This amounts to an ambiguity under the award and the Agreement, in addition to other ambiguities described herein.

requires that the Award consist of only the value of 84,000 warrants as of December 3, 2018, the date of the Award.

3 Brothers however, in its Petition To Confirm, in an unjustified and opportunistic manner not provided for in the MOU, seeks a judgment in the amount of $3,651,213.76, which is $651,213.76 more than the $3,000,000 amount actually financed, rather than a percentage of the amount financed and the 84,000 warrants, contrary to the clear and literal meaning of the Award and the intent of the parties as reflected in the MOU.

## II.   SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The entry of summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Although the Court must view the evidence in a light most favorable to the non-moving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), "[t]he nonmoving party may not rely on mere conclusory allegations nor speculation but instead must offer some hard evidence showing that its version of the events is not wholly fanciful." *D'Amico v. N.Y.C.*, 132 F.3d 145, 149 (2d Cir. 1998).

In assessing whether summary judgment is proper, the court construes the evidence in the light most favorable to the non-moving party. *Lucente v. IBM Corp.*, 310 F3d. 243, 253, (2d Cir. 2002).

## III.   SUMMARY OF ARGUMENT

A.     3 Brothers' unjustified request for a judgment in the amount of $3,651,213.76 far exceeds any reasonable interpretation of the Award of the arbitrator ("Award") and 3 Brothers'

5

Motion For Summary Judgment should be denied. While the Award indicated a specific amount of liquidated damages, $210,000.00, the Award attributed no specific monetary value to the 84,000 warrants as of the date of the Award. 3 Brothers seeks a windfall to which it is not entitled in asking for the value of the stock underlying the warrants, had it exercised the warrants, with the benefit of hindsight, after a post-arbitration 20-1 dividend for the stock. This retrospective valuation constitutes a purely speculative exercise and was plainly not awarded by the arbitrator.

B.      The arbitrator did not award the stock of Generex to 3 Brothers, nor did he award the warrants to 3 Brothers, only the "economic value today [December 3, 2018] of 84,000 warrants convertible to Respondent's stock exercisable at $2.50 per share as of September 24, 2018." (Award, Doc. 1-1, p. 4.) Petitioner, under the Award, is therefore not entitled to receive summary judgment in the amount of $3,651,213.76, which far exceeds the economic value of the 84,000 warrants on the date of the Award – December 3, 2018.

C.      While the Award does not specify any value for the warrants, the intrinsic value of the warrants under New York law was defined by the United States District Court for the Southern District of New York in *Maxim Group LLC v. Life Partners Holdings, Inc.*, 690 F. Supp. 2d 293 (S.D.N.Y. 2010). Pursuant to *Maxim* and consistent with industry standards, the damages for failure to issue a warrant is calculated "by comparing the warrant's strike price to the market price of the stock on the date of the attempted exercise." *Id.* at 301 (quoting *Remsen Funding Corp. of N.Y. v. Ocean W. Holding Corp.*, No. 06 Civ. 15265, 2009 WL 874212, at *1 (S.D.N.Y. Mar. 31, 2009)). The value of Generex stock on December 3, 2018, the date of valuation under the Award, was $1.99 per share and the exercise price of the warrants was $2.50 per share. (56.1 Statement, ¶¶ 104-05.) The value of the warrants is therefore zero under the standard set forth in *Maxim*; because the value of the stock was less than the exercise price of the warrants and the stock could

therefore have been purchased for less than the exercise price of the warrants; the warrants would thus be rendered valueless. *See Oscar Gruss & Son, Inc. v. Hollander*, 337 F.3d 186, 196 (2d Cir. 2003). 3 Brothers is thus entitled to no actual damages for the warrants under the plain meaning and literal interpretation of the Award.

D.      The intent of the parties, as reflected in the MOU, is to provide as compensation to 3 Brothers for obtaining financing under the MOU, a percentage of the amount financed (7%) and warrants equal to a percentage (7%) of warrants or stock issued to the company providing the financing. The amount of financing provided to Generex was $3,000,000. The judgment sought by 3 Brothers is $3,651,213.56, an amount far in excess of the amount financed. A judgment of $3,651,213.56 in favor of 3 Brothers would amount to an unenforceable and disproportionate penalty under New York law and Petitioner's request for judgment in that amount should be denied.

E.      For the reasons summarized above, the Court should deny 3 Brothers' Petition To Confirm and Motion For Summary Judgment in the amount of $3,651,213.56. In the alternative, the award is ambiguous, incomplete and indefinite in that the arbitrator did not specify an amount for the value of the warrants or provide a method to calculate the value and the court should either vacate the Award under 9 USC § 10(a)(4) of the FAA, correct and interpret the Award under 9 USC § 11(c) to find that the warrants have no value, or remand the case to the arbitrator for clarification. Given the foregoing, this Court should grant Generex' Cross-Motion For Summary Judgment, and find the warrants valueless.

## IV.    ARGUMENT

Generex requests that 3 Brothers Motion for Summary Judgment in the amount of $3,651,213.76 be denied and that this Court enter a summary judgment for Generex finding that the 84,000 warrants are of no value under the Award.

### A.    <u>3 Brothers Is Not Entitled To a Judgment In The Amount of $3,651,213.76.</u>

It is well established that arbitrator's awards are generally accorded great deference under the FAA when reviewed by a District Court and that judicial review of arbitration awards is necessarily narrowly limited. *See, e.g., Tempo Shain Corp. v. Bertek, Inc.*, 120 F.3d 16, 19 (2d. Cir. 1997) (citing *Ethyl Corp. v. United Steelworkers of Am., AFL-CIO-CLC*, 768 F.2d 180, 183 (7th Cir. 1985)).

However, the Second Circuit in *Siegel v. Titan Indus. Corp.*, 779 F.2d 891 (2d Cir. 1985) stated that:

> Recognizing that if there is to be any meaningful judicial review, an arbitrator's award cannot be absolutely immune from scrutiny, court's on occasion may remand awards to arbitrators to clarify the meaning or effect of an award. *Id.* at 894 (citations omitted).

A District Court reviewing an arbitrator's decision or award may also vacate an award under section 10 of the FAA "where the arbitrators exceeded their powers *or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made.*" 9 U.S.C. § 10(a)(4) (emphasis added).

A reviewing District Court may also make an order modifying or correcting an award "*where the award is imperfect in matter of form not affecting the merits of the controversy.*" 9 U.S.C. § 11(c) (emphasis added).

In the within case, the arbitrator issued a written, reasoned award, granting a specific amount of damages to Petitioner 3 Brothers under a liquidated damages provision in the MOU

($210,000.00), but did not specify a sum certain in damages when he awarded "the economic value *today* of 84,000 warrants convertible to Respondent's stock exercisable at $2.50 per share as of September 24, 2018, plus accrued interest running at 9% from March 28, 2017. (*See* Award, Doc. 1-1, at p. 3 (emphasis supplied).)

The terms of this portion of the Award can be analyzed as follows:

- "the economic value today of 84,000 warrants" – the arbitrator did not give 3 Brothers the warrants themselves, the 3,000 shares of preferred stock convertible to 1,200,000 shares purchased by Pharma, or the purported 1,764,000 shares after the dividend, as argued by 3 Brothers, although he could have done so under specific performance provision of the AAA Rules. *See* American Arbitration Association, *Commercial Arbitration Rules and Mediation Procedures*, R-47(a), *available at* www.adr.org/sites/default/files/CommercialRules_Web.pdf. He only awarded the value of 84,000 warrants.

  ➢ The Court, therefore, must determine the economic value of 84,000 warrants, not 84,000 x 21 warrants.

  ➢ The economic value is to be measured as of "today" which should, under the plain meaning of the Award, mean December 3, 2018, the date of the Award.

- "convertible to respondent's stock exercisable at $2.50 per share, as of September 24, 2018."

  ➢ The exercise price of the warrants that were convertible to respondent's stock was $2.50 per share as of September 24, 2018.

  ➢ Under the MOU, there is no special significance to the September 24, 2018 date, other than that was the date of the hearing, therefore, the exercise or strike price of $2.50 per share was set as of September 24, 2018.

- "The number of warrants is calculated pursuant to the Parties' agreement, which provides for warrants for a total of 7% of the shares purchased by the Referred Party."[4]

---

[4] In actuality, there were no shares purchased by the "Referred Party" in that Pharma was a third party and not a "Referred Party" (See definition of "Referred Party" in MOU, Doc. No.1-2, p. 2).

> ➢ It is clear that the arbitrator intended 3 Brothers to be awarded warrants only amounting to 7% of the shares purchased by the Referred Party, *i.e.*, 1,200,000 shares equal to 84,000 warrants, not 21 x 84,000 warrants

In interpreting an arbitration award, a court should look to the plain language of the award, *Daum Global Holdings Corp. v. Ybrant Digital Ltd.*, No. 13-CV-3135 (AJN), 2015 WL 5853783 (S.D.N.Y. Oct. 6, 2015).

Under the plain meaning of the Award, it is evident that 3 Brothers was awarded the value of 84,000 warrants only, to be valued as of December 3, 2018, the date of the Award and that the value of 84,000 warrants on December 3, 2018 was zero under New York law as discussed herein.

The judgment requested by 3 Brothers in the amount of $3,651,213.76 was not awarded by the arbitrator, far exceeds any reasonable interpretation of the arbitrator's Award, and amounts to a cash grab and attempt to gain an unmerited windfall by 3 Brothers. The intent of the parties in entering into the MOU was for 3 Brothers to receive 7% of the amount of financing secured by Generex and warrants for the same percentage of Generex stock. It was clearly not the intent of the parties, or the intent of the arbitrator, to gift 3 Brothers an amount far in excess of *100%* of the total amount financed – such an agreement or Award would defy all reason. Nowhere is such an unjust amount specified in the Award or intended by the arbitrator, and Generex certainly would not have entered into the MOU had Generex known that 3 Brothers would require more than 100% of the financing it secured pursuant to the MOU to compensate 3 Brothers.

While the arbitrator awarded the economic value of 84,000 warrants for Generex stock as of the date of the Award, he did not determine the value of those warrants as of that date (December 3, 2018), nor did he award the warrants themselves, or the stock to be received after the exercise

of the warrants. 3 Brothers, under the plan meaning and intent of the Award, is therefore entitled

only to the economic value of the warrants on December 3, 2018, the date of the Award.

The arbitrator further indicated that the "number of warrants is calculated pursuant to the

Parties['] Agreement, which provides for warrants for a total of 7% of the shares purchased by the

Referred Party." (Award, Doc. 1-1, p. 4.) It was the arbitrator's intent to award only a percentage

of the amount financed and warrants representing a percentage of shares purchased by the

"Referred Party," and not an amount far in excess of the amount financed or far in excess of the

value of 84,000 warrants as of December 3, 2018.

Given the plain meaning of the Award and the intent of the arbitrator as discussed above,

granting a judgment to 3 Brothers in the amount of $3,651,213.76 would be an unenforceable

penalty provision, a result which the arbitrator tried to avoid. (Doc. 1-1, p. 4 ("[The contract] does

not provide for a disproportionate payment and is certainly not a penalty.").) Contrary to the

arbitrator's intent, granting a judgment to 3 Brothers in the amount of $3,651,213.76 would far

exceed the value of the contract itself, and thus be disproportionate and amount to an unenforceable

penalty provision under New York law.[5]

As it was conspicuously not the arbitrator's intent to award $3,651,213.76 to 3 Brothers,

and the Award did not assign a dollar value to the warrants, any affirmance of the Award should

be for the intrinsic value of the warrants as of the date of the Award, at which time the warrants

had a value of zero.

---

[5] The arbitrator also awarded attorney's fees, costs, and interest in the amount of 9% from March 28, 2017, and assessed half of the AAA and arbitrator's fees to the parties for a total of $350,853.76 - almost 12% of the amount financed. The arbitrator could not have intended for the value of the warrants to be anywhere near what 3 Brothers is seeking, as he awarded an additional 8.5% of the amount financed in costs, interest, and fees, despite acknowledging that the contract does not provide for a disproportionate payment.

3 Brothers cites *Halifax Funds, L.P. v. M.R.V. Commc'ns, Inc.*, No. 00 CIV 4878 HB, 2001 WL 1622261 at *5 (S.D.N.Y., Dec. 18, 2001) and *Commw. Assoc. v. Palomar Med. Techs., Inc.*, 982 F Supp. 205, 210-12 (S.D.N.Y 1997) in arguing the standard for assessing damages with regard to items with fluctuating values such as stock. (Petitioner's Memorandum In Support, Doc. 19, at p. 20)  Both *Halifax* and *Commonwealth Associates* are inapplicable in that they did not arise from decisions of arbitration panels and, most importantly, the dates of valuation in those cases were not determined in the same manner as the date of valuation of the warrants was determined in the instant case.  Here, the arbitrator determined the date of valuation for the warrants was December 3, 2018, the date of his decision, and the fluctuation in the value of the shares of Generex stock or warrants over an extended period of time is not a factor as it was in *Halifax* or *Commonwealth Associates*.  Both cases are inapplicable.

3 Brothers also cites *Josephthal & Co., Inc. v. Cruttendon Roth, Inc.*, 177 F. Supp. 2d 232, 237 (S.D.N.Y 2001), for the proposition that "an error" in applying the "wrong theory of damages" is not enough to not confirm the arbitration award, and *Cole Publishing Co., Inc. v. Wiley & Sons, Inc.*, No. 93 (CIV 3641 (KMW), 1994 WL 532898 at *2-3 (S.D.N.Y. Sept. 29, 1994), for the proposition that courts have denied petitions to vacate arbitration awards where the parties are seeking to vacate the award on the basis that the Award was speculative, and that the damages were unfounded (Memorandum In Opposition, Doc. 19, p. 21, n.77).

Both cases are inapplicable as well.  Generex is not contending that the arbitrator miscalculated the damages with regard to the warrants, as was the case in *Josephthal*, but rather that the arbitrator's award provided no specific dollar value for the warrants, and that the warrants should be valued at zero based on their intrinsic value on the date of the Award.

Further, Generex is not contending that under the plain language of the Award that the damages are speculative, as was contemplated in *Cole*, but rather that it is Petitioner's unfounded interpretation of the Award and its request for a judgment in the amount of $3,651,213.76 that would amount to a speculative award and unenforceable penalty.  Neither case is applicable under the facts and circumstances of the within case.

**B.**    **The Warrants Were Valueless On December 3, 2018 And This Court Should Not Award 3 Brothers Any Economic Value For The Warrants.**

3 Brothers, in agreeing to accept a percentage of warrants for common stock of Generex, also agreed to accept the inherent risk of the fluctuation in value of the warrants and Generex stock. The value of the warrants exercisable at $2.50 per share are dependent upon the market value of the stock on any given day.

If warrants are not registered and sold in a market or exchange, as here, they have no formal market value that is readily ascertainable from the market or exchange.  (See Declaration and Report of Phillip C. Scott, attached hereto as Exhibit "B".)  In the event that the warrants have no formal market value, their intrinsic value is used for valuation and may be determined by calculating the difference between the exercise price of the warrants and the market value of the stock. *Maxim Group LLC v. Life Partners Holdings, Inc.*, 690 F. Supp. 2d 293, 301 (S.D.N.Y. 2010).  If the market value of the stock is less than the exercise price of the warrants, the warrants are of little or no value.  (Declaration and Report of Phillip C. Scott attached hereto as Exhibit "B".) The United States District Court for the Southern District of New York discussed this method and principle of valuing warrants by their intrinsic value in *Maxim*, holding:

> Under New York law, "it is appropriate to assess damages for breach of contract based on a failure to issue a warrant or a failure to honor a warrant by comparing the warrant's strike price to the market price of the stock on the date of attempted exercise" (Citations omitted).  "The measure of

> damages is the difference between the option price and the
> market value of the stock…" *Id.* at 301 (citations omitted).

Here, since the exercise or strike price of the warrants ($2.50 per share) was greater than the market value of the stock ($1.99 per share) on December 3, 2018 (the date of valuation as determined by the arbitrator), the warrants would have a negative value or no value at all.  This makes sense because it would cost a warrant owner $2.50 to exercise a warrant for a share of stock, while that same owner could instead purchase the same stock for $1.99 on the open market.  The warrants were thus worthless as of December 3, 2018, because the warrant holder would have *lost* $0.51 per share by paying the $2.50 exercise price of the warrant on December 3, 2018, making the warrants of no value, *see Hermanowski v. Acton Corp.*, 580 F. Supp. 140, 146 (E.D.N.Y. 1983), *aff'd* 729 F.2d 921 (2d Cir. 1984) (holding that the measure of damages is the difference between the option price and the market value of the stock).

Given the literal and plain meaning of the arbitrator's Award that the warrants are to be valued on the date of the Award, December 3, 2018, the value of the warrants are zero and 3 Brothers should receive no damages for the value of the warrants with regard to its Motion For Summary Judgment.  3 Brothers assumed the risk of the value of the warrants which amounted to zero on the valuation date as determined by the arbitrator.  *See In re Vivendi Universal, S.A. Securities Lit.*, 634 F. Supp. 2d 352, 371 (S.D.N.Y. 2009) ("Stocks are risky investments, and purchasers assume a variety of risks to the value of their stock.").

Respondents argue that had they been given the warrants by Generex previous to December 3, 2018, they could have exercised them to make a profit.  However, this invites the parties and the Court to speculate on the date of exercise of the warrants, the value of the stock on the date of exercise, how long 3 Brothers would have held on to the warrants before or after December 3, 2018 and whether there was a holding period for the stock under federal securities law or under an

agreement, which would amount to improper speculation with regard to damages under New York law and which would be contrary to the arbitrators Award with regard to valuation of the warrants. *E.g., Lucente v. Int'l Business Machines Corp.*, 146 F. Supp. 2d 298, 312 (S.D.N.Y. 2001) ("To ask a jury to speculate as to whether and when an option would have been exercised is impermissible."). A factfinder is not permitted to invent a hypothetical date on which a plaintiff would have exercised his option to purchase stock, absent a defendant's breach. *Id.* at 314. Therefore, under the arbitrator's Award, there is no value to the warrants and the Court should deny 3 Brothers Motion For Summary Judgment for $3,651,213.76 and instead award 3 Brothers $0 for the value of the warrants..

### C.   The Award Of A Judgment In The Amount of $3,651,213.76 Would Amount To An Unenforceable Penalty Under New York Law

The Second Circuit has recognized that, under the laws of New York, damages for general breach of contract cases are measured from the date of breach, not a future date following some event that increased the value of the stock following breach. *E.g., Oscar Gruss & Son, Inc. v. Hollander*, 337 F.3d 186, 196 (2d Cir. 2003); *Maxim Group LLC v. Life Partners Holdings, Inc.*, 690 F. Supp. 2d 293, 299 (S.D.N.Y. 2010). The Second Circuit applying New York law has similarly rejected awards based on "the actual economic conditions and performance … in light of hindsight." *Oscar Gruss & Son, Inc.*, 337 F.3d at 196 (quoting *Sharma v. Skaarup Ship Mgmt. Corp.*, 916 F.2d 820, 826 (2d Cir. 1990)); *see also Lucente v. Int'l Business Machines Corp.*, 310 F.3d 243, 263 (2d. Cir. 2002 (affirming the principle that damages should be determined as of the date of the breach in a breach of contract action involving stock options, and rejecting a measurement of damages that would involve determining the time when re-entry into the market would be warranted and desired). Here, the arbitrator determined the date of valuation, therefore, that date should be used in measuring damages.

In fact, the Second Circuit dealt with a similar fact pattern as that in the instant case in *Oscar Gruss*. In that case, the defendant company was found to have breached a contract with the plaintiff in which the defendant was supposed to have granted the plaintiff a certain number of stock warrants, similar to the instant case. 337 F.3d at 190. Months after the defendant refused to grant the plaintiff the warrants (that is, well after the defendant had breached the contract, and plaintiff was aware of the breach), the defendant company received a tender offer that greatly increased the value of the company far beyond the strike price of the warrants. *See id.* The Second Circuit rejected the plaintiff's argument that it should be granted the value of the warrants if exercised after the tender offer, because that date occurred well after the date of breach, and it was improper to grant the plaintiff a higher award with the benefit of hindsight. *See id.* at 196-98.

As summarized above, the proper measure of damages for failure to issue a warrant is calculated by comparing the "strike" price of the warrant to the market price of the stock on the date of the attempted exercise. *See Maxim,* 690 F. Supp. 2d at 300 (citing *Lucente*, 310 F.3d at 262). Here, the arbitrator determined that the exercise date of the warrants - their valuation date - was December 3, 2018, not the closing date with Pharma. The value of Generex stock on December 3, 2018, the valuation date under the Award,  was $1.99 per share and the exercise price of the warrants were $2.50 per share. The value of the warrants as of December 3, 2018 is therefore zero, since the value of the stock was less than the exercise price of the warrants, and it would have been cheaper to purchase shares of Generex on the open market on that date than to exercise any warrants.

Petitioner admits in its Rule 56.1 Statement of Undisputed Material Facts that the parties specifically contemplated that the warrants might not offer any value to either side. *See* Dkt. 22, ¶ 12 ("The parties envisioned that the warrants issued pursuant to the Contract could have either

benefited AEXG (i.e., if Generex's stock price went above the warrants' strike price, which it did) or ended up costing Generex nothing (i.e., if AEXG never exercised the warrants), depending on Generex's performance."). Plainly, as of the date of the Arbitrator's award, the strike price of the warrants exceeded the value of Generex stock; therefore, the warrants should, in Petitioner's own words, "cost[] Generex nothing," as contemplated by the parties.

There is no evidence in the record that the Arbitrator meant anything other than what he explicitly stated in his Award when he ordered that the Petitioner be granted the value of the outstanding warrants as of the date of the Award. There is no language in the Award contemplating future performance, or requiring that the warrants be calculated with the benefit of hindsight to presume that the Petitioner would have exercised the warrants on a certain future date. As Petitioner has moved to *confirm* the Award, not to *modify* it, Petitioner cannot now argue that the warrants should be valued on some date other than the date of the Award, as explicitly stated by the Arbitrator.

Moreover, the interpretation of the Award suggested by Petitioner would assign a value of the warrants that far exceeds the total amount of financing ($3 million) that Generex was seeking. It would be absurd to conclude that the damages for a breach of contract would exceed the value of the contract itself. Indeed, such a posture would constitute a contractual penalty clause, which is void *ab initio* as a matter of New York public policy. *See, e.g.*, *Leasing Service Corp. v. Justice*, 673 F.2d 70, 73 (2d Cir. 1982) ("The law is clear that contractual terms providing for the payment of a sum disproportionate to the amount of actual damages exact a penalty and are unenforceable."); *John T. Brady & Co. v. Form–Eze Systems, Inc.*, 623 F.2d 261, 263 (2d Cir. 1980) (holding that unlawful penalty clauses are unenforceable).

It is axiomatic under Supreme Court precedent that "ambiguously worded contracts should not be interpreted to render them illegal and unenforceable where the wording lends itself to a logically acceptable construction that renders them legal and enforceable." *Walsh v. Schlecht*, 429 U.S. 401, 408 (1977). While there is no basis to interpret the Award as granting Petitioner over $3 million dollars when the value of the warrants as of the date of the award was zero, even if an arguable basis did exist to find an ambiguity in the Arbitration Award, it would run counter to established Supreme Court precedent and the basic principles of construction to adopt a reading of the Award that would interpret the contract at issue as imposing what is, in essence, an illegal and void as against public policy contractual penalty far in excess of the value of the contract itself. Accordingly, to the extent the Court were to find an ambiguity exists in the Award, it should be interpreted in such a way as to find the contract enforceable – that is, that the warrants should be valued as of the date of the award, which would equate to a value of zero.

D.   <u>Alternatively, The Award Of The Arbitrator Is Incomplete And Indefinite And The Arbitrator Imperfectly Executed His Powers So that A Material, Final, And Definite Award Upon The Subject Matter Submitted Was Not Made Under 9 USC § 10 (a)(4) And The Award Was Imperfect In Matter Of Form Under 9 USC § 11(c).</u>

The Award of the arbitrator clearly did not award or determine a value for the warrants nor did it specify a sum certain in damages with regard to the warrants or set forth a method for calculating the damages with regard to the warrants. This cannot be disputed and 3 Brothers does not dispute this conclusion in their Memorandum In Support ("Memorandum"). 3 Brothers, however, does point out that the parties do dispute the calculation of the Award (Doc. 19, at p. 17). In fact, 3 Brothers argues on the same page of its Memorandum that the court should "interpret" the Award, which could be construed as a contention that the Award, is indefinite, incomplete and imperfect.

However, 3 Brothers goes on to argue that the Court interpret the Award in a manner contrary to the plain meaning and literal terms of the Award; contrary to legal and industry requirements for valuing warrants, contrary to the record in the case and contrary to common sense and fairness. 3 Brothers urges the Court to adopt 3 Brothers skewed and unjustified formulae for calculating the damages relating to the warrants that will result in an outrageously excessive judgment in an amount not intended by the arbitrator and the parties and not authorized by the applicable law (See Doc. 19, at p. 18). It is 3 Brothers' skewed and opportunistic interpretation of the Award and its attempt to take advantage of a post-hearing occurrence that creates an ambiguity in this case, not the language of the Award, which is clear on its face.

To the extent that the actual monetary value of the warrants is open to interpretation, however, this Court has the authority to interpret the Award under 9 USC § 11(c): "where the award is imperfect in matter of form not affecting the merits of the controversy." 9 USC § 11(c). Section 11 of the FAA permits the Court to modify and correct the Award "to promote justice between the parties." To interpret the Award to allow 3 Brothers far more than the amount financed would be an injustice.

In the alternative, in the event that this Court believes that due to the within described shortcomings of the Award, *i.e.,* failure to specify a sum certain for damages relating to the warrants, this Court has the authority under the FAA §§ 10(a)(4) and 11(c) and under Second Circuit precedent to remand the case to the arbitrator to either clarify his Award or hold an additional hearing to consider evidence with regard to the value of the warrants. *See Olympia & York Florida Equity Corp. v. Gould,* 776 F.2d 42, 45 (2d Cir. 1985) (finding an Award ambiguous where it failed to deal explicitly with a contingency that arose and remanding the case to the arbitrators for a determination of intent); *Americas Insurance Co. v. Seagull Compania Naviera,*

SA 744 F.2d 64, 67 (2d Cir. 1985) ("[A]n ambiguous award should be remanded to the arbitrators

so that the Court will know exactly what it is being asked to enforce."); *Siegel v. Titan Indus.*

*Corp.,* 776 F.2d 891, 894 (2d. Cir. 1985) ("Recognizing that if there is to be any meaningful

judicial review, an arbitrator's award cannot be absolutely immune from scrutiny, courts, on

occasion, may remand awards to arbitrators to clarify the meaning or effect of an award."); *see*

*also Zephyros Maritime Agencies, Inc.*, 662 F. Supp. 892, 895 (S.D.N.Y. 1987) ("Where the parties

dispute the meaning of an award the Court's role is to examine the award and determine whether

remanding it to the panel is necessary to clarify precisely what the Court is being asked to enforce."

(quotation marks omitted)); *Alcatel Space, S.A. v. Loral Space & Communications, LTD*, No. 02

CIV 2674(SAS), 2002 WL 1391819, at *4 (S.D.N.Y. June 25, 2002) (noting that where parties

dispute the meaning of an award, the court must examine the award to determine whether a

provision is ambiguous).

Generex believes that the Award of the arbitrator is clear that the value of the warrants at

issue are zero as of December 3, 2018 under the law of New York and industry standards, and the

Court should confirm and interpret the Award accordingly.  However, if the Court believes that

the Award is indefinite, incomplete and ambiguous, the Court should remand the case to the

arbitrator for further proceedings with regard to the economic valuation of the 84,000 warrants.

### E.   Interest

The Arbitrator awarded pre-judgment interest on the $210,000 in liquidated damages.  He

also appears to have awarded interest on the value of the warrants; however, as previously argued,

the value of the warrants is zero.  Therefore, there should be no interest awarded for the warrants.

In the alternative, as the Award addressed interest on the value of the warrants without specifically

valuing the warrants, it is incomplete, indefinite and imperfect in matter of form under the FAA

20

sections 10(a)(4) and 11(c), 9 USC § 10(a)(4) and 9 USC § 11(c) and should either be vacated under those sections or remanded to the arbitrator for further proceedings and clarification.

### F.    3 Brothers Is Not Entitled To Attorneys' Fees

The arbitrator also awarded attorney fees under the MOU to 3 Brothers.  Under the attorneys' fees  provision of the MOU, the prevailing party was entitled to recover "reasonable attorneys' fees" incurred in the proceedings.  However, there was a failure of proof regarding the amount of attorneys' fees sought in this case.

The party seeking recovery for attorneys' fees "bear[s] the burden to establish the reasonableness, necessity, and value of their attorney's services" and "[t]he court may not make their case for them." *Measom v. Greenwich and Perry Street Housing Corp.*, 193 Misc. 2d 741, 743, 752 N.Y.S.2d 194, 196-97 (N.Y. City Civ. Ct. 2002); *see also NYCTL 1996-1 Trust v. Stavrinos Realty Corp.*, 113 A.D.3d 602, 604-05, 978 N.Y.S.2d 320, 322-23 (2d Dep't 2014) (affirming an award of $2,500 rather than the requested $26,823.25 because the only evidence presented was testimony as to the amounts paid to counsel, no affidavit was submitted by counsel as to what services were actually provided, and there was "no evidence at the hearing as to the customary fee charged for similar services by lawyers in the community with like experience and of comparable reputation to those by whom the prevailing party was represented"); *Board of Managers of Cent. Park Place Condominium v. Potoschnig*, 136 A.D.3d 441, 441, 23 N.Y.S.3d 888, 889 (1st Dept. 2016) (reversing an award of attorney's fees and ordering a new hearing when there was no evidence in the record that the referee considered the relevant factors in determining reasonable attorneys' fees and there the evidence was not, on its face, sufficient to show the reasonable amount of attorneys' fees incurred by plaintiff); *Massina v. Massina*, 149 A.D.3d 927, 928, 52 N.Y.S.3d 409, 410 (2d Dep't 2017) (overturning an award of counsel fees because

plaintiff's counsel failed to submit detailed billing records showing the legal services performed, and the time expended on each service).

The amount of attorneys' fees that is reasonable in any given case is determined based on the following factors: time and labor required; the difficulty of the legal questions involved and the skill required to handle the problems presented; the lawyer's experience, ability, and reputation; the amount at issue and benefit resulting to the client from the legal services; the customary fee charged by the Bar for similar services; the contingency or certainty of compensation; the results obtained; and the responsibility involved. *In re Freeman*, 34 N.Y.2d 1, 9-10 (N.Y. 1974). In the instant case, 3 Brothers offered no testimony or sworn affidavit whatsoever to establish that the billing records submitted were reasonable, necessary, or even accurate. Nor did 3 Brothers offer any testimony or sworn affidavit establishing the value of their attorneys' services. 3 Brothers also failed to provide Generex with an opportunity to cross-examine counsel with regard to the reasonableness of the fees. (Moscato Dec. ¶¶ 16-17.) In fact, three separate law firms performed duplicative work for 3 Brothers in this case, including by at least one attorney who never appeared in the matter. As 3 Brothers has failed to establish the reasonableness of its fees, no attorneys' fees should have been awarded, and the Award should be vacated or remanded to the arbitrator to take additional evidence with regard to 3 Brothers claim for attorneys' fees.

## V.   CONCLUSION

Based on the foregoing and the record in this case it is clear that: (1) Generex did not bargain for, nor did the Agreement between the parties contain, terms that provide for liquidated damages in an amount in excess of any amount to be financed; (2) to hold otherwise would be tantamount to imposing an unenforceable penalty; (3) the economic value of 84,000 warrants as of December 3, 2018 is zero, and 3 Brothers is not entitled to actual damages with regard to the

value of the warrants or interest thereon; and (4) 3 Brothers is not entitled to summary judgment in the amount of $3,651,213.76 as requested in its Petition to Confirm and Petitioner's Motion For Summary Judgment should be denied.

In the alternative, the Award is incomplete, indefinite and imperfect under the FAA, USC §§ 10 and 11 and the Court should either interpret the Award to find no damages or interest for the warrants and vacate the Award of attorneys' fees or remand the case to the arbitrator to hold further hearings and take evidence with regard to the value of the warrants and reasonableness of attorneys' fees.

Furthermore, this Court should grant Generex's Cross-Motion For Summary Judgment and find that the warrants are of no value.

Dated:  White Plains, New York
        February 19, 2019

Respectfully submitted,

ECKERT SEAMANS CHERIN & MELLOTT, LLC

By: *Thomas M. Smith*
    Thomas M. Smith, Esq.
    10 Bank Street, Suite 700
    White Plains, New York 10606
    (914) 286-2807
    *tsmith@eckertseamans.com*

*Attorneys for Respondent Generex Biotechnology*

24