## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

THREE BROTHERS TRADING, LLC, d/b/a
ALTERNATIVE EXECUTION GROUP,

Petitioner,

v.

GENEREX BIOTECHNOLOGY CORP.

Respondent.

Civil Action No. 18-CV-11585
(KPF)

## RESPONDENT'S ANSWER TO STATEMENT OF UNDISPUTED MATERIAL FACTS OF PETITIONER AND ADDITIONAL STATEMENT OF UNDISPUTED MATERIAL FACTS PURSUANT TO LOCAL RULE 56.1

Respondent Generex Biotechnology Corporation ("Generex" or "Respondent") by its attorneys Eckert Seamans Cherin & Mellott, LLC respectfully submits the following answer to the statement of undisputed material facts of Petitioner Three Brothers Trading, LLC d/b/a Alternative Execution Group ("3 Brothers"), and further submits Generex's additional statement of undisputed material facts pursuant to Local Rule 56.1, as follows:

### A. The Parties

1.  AEXG is a limited liability company under the laws of New York.[1]

**Admitted.**

2.  The members of AEXG are Richard Alter and Caroline Alter.[2]

**Admitted.**

---

[1] *See* Declaration of Richard Alter dated February 4, 2019 (the "Alter Decl.") ¶ 3; Petition to Confirm Arbitration Award (the "Petition") ¶ 2; Respondent Generex Biotechnology Corporation's Answer and Affirmative Defenses to Petition to Confirm Arbitration Award ("Generex's Answer") ¶ 2.

[2] *See* Alter Decl. ¶ 4; Petition ¶ 2; Generex's Answer ¶ 2.

3.      Richard and Caroline Alter are residents of Westchester County, New York.[3]

**Generex has no knowledge of the truth or falsity of this assertion, and therefore**

**denies same and demands strict proof thereof.**

4.      AEXG's principal place of business is located at 708 Third Avenue, New York,

New York 10017.[4]

**Admitted.**

5.      Generex Biotechnology Corp. ("Generex") is a Delaware entity.[5]

**Admitted.**

6.      Generex's principal place of business is located at 4145 North Service Road,

Burlington, Ontario Canada and 10102 USA Today Way Miramar, Florida 33025.[6]

**Admitted.**

B.  **The Contract**

7.      In February 2017, AEXG and Generex entered into a written Memorandum of

Understanding (the "Contract").[7]

**This statement refers to a written document, the terms of which speak for**

**themselves and is for the Court to interpret.  Generex therefore neither admits nor**

**denies this assertion but refers the Court to the document for a complete statement**

**of its terms.**

---

[3] *See* Alter Decl. ¶ 4; Petition ¶ 2; Generex's Answer ¶ 2.

[4] *See* Alter Decl. ¶ 4; Petition ¶ 2; Generex's Answer ¶ 2.

[5] *See* Respondent Generex Biotechnology Corporation's Cross-Petition to Vacate, Modify and or Remand the Arbitration Award (the "Cross-Petition") ¶ 1; Petitioner's Answer to Respondent's Cross-Petition to Vacate, Modify and or Remand the Arbitration Award ("AEXG's Answer") ¶ 1.

[6] *See* Cross-Petition ¶ 1; AEXG's Answer ¶ 1.

[7] *See* Alter Decl. ¶ 5; Memorandum of Understanding between AEXG and Generex ("Contract"), a true and correct copy of which is attached as Exhibit A to the Alter Declaration.

8.      In the Contract, the parties memorialized the terms whereby AEXG would provide referral services to Generex, which wished to secure financing for its business.[8]

**This statement refers to a written document, the terms of which speak for themselves and is for the Court to interpret.  Generex therefore neither admits nor denies this assertion but refers the Court to the document for a complete statement of its terms.**

9.      In exchange for AEXG's services, Generex agreed to compensate AEXG as follows:

(i)      Upon receipt of funds from a Referred Party, the Company [Generex] will pay AEXG 7% (Seven Percent) of the funds received.

(ii)     In addition to compensation pursuant to section (i), above, the Company [Generex] will issue to AEXG, or to representatives or agents of AEXG as instructed by AEXG, warrants equivalent to any warrants sold or issued to a Referred Party.  These warrants will have the same substantive terms and conditions, including duration, exercise price, price adjustment provisions, and the like as any warrants issued to the Referred Party. AEXG will pay the Company [Generex] $100 for these warrants which shall be issued in an amount equivalent to 7% of those issued to the Referred Party.  If no warrants are issued to the Referred Party in a transaction triggering compensation pursuant to this document, the Company [Generex] shall issue to AEXG, or to representatives or agents of AEXG as instructed by AEXG, warrants exercisable at the price paid by the Referred Party for Company [Generex] shares, equivalent in number to 7% of the number of shares purchased by the Referred Party. These warrants shall have a 5-year duration.  AEXG, AEXG's representatives, or agents will have piggyback registration rights with respect to the warrants, which will be exercisable for cash only.[9]

**This statement refers to a written document, the terms of which speak for themselves and is for the Court to interpret.  Generex therefore neither admits nor**

---

[8] *See* Alter Decl. ¶ 5; Alter Decl., Ex. A (Contract) at 1.
[9] *See* Alter Decl. ¶ 6; Alter Decl., Ex. A (Contract) at 1.

**denies this assertion but refers the Court to the document for a complete statement**

**of its terms.**

10.     The Contract did not put a ceiling on the value of the warrants.[10]

**This statement refers to a written document, the terms of which speak for**

**themselves and is for the Court to interpret.  Generex therefore neither admits nor**

**denies this assertion but refers the Court to the document for a complete statement**

**of its terms.**

11.     The Contract did not provide an additional payment from Generex to AEXG if the

warrants were to expire without AEXG exercising them, i.e., if the warrants' strike price was

below Generex's share price.[11]

**This statement refers to a written document, the terms of which speak for**

**themselves and is for the Court to interpret.  Generex therefore neither admits nor**

**denies this assertion but refers the Court to the document for a complete statement**

**of its terms.**

12.     The parties envisioned that the warrants issued pursuant to the Contract could

have either benefited AEXG (i.e., if Generex's stock price went above the warrants' strike price,

which it did) or ended up costing Generex nothing (i.e., if AEXG never exercised the warrants),

depending on Generex's performance.[12]

**This statement refers to a written document, the terms of which speak for**

**themselves and is for the Court to interpret.  Generex therefore neither admits nor**

**denies this assertion but refers the Court to the document for a complete statement**

---

[10] *See* Alter Decl. ¶ 7.

[11] *See* Alter Decl. ¶ 7.

[12] *See* Alter Decl. ¶ 7.

of its terms.  **Generex does admit that if Generex's stock price did not exceed the warrants' strike price, it would cost Generex nothing.**

13.     Generex did not provide a retainer fee to AEXG.[13]

**Admitted.**

14.     The parties agreed to a sixty-day "No Shop" exclusivity provision (the "No Shop Provision"), which ran from February 8, 2017 to April 9, 2017 (the "Exclusivity Period").[14]

**This statement refers to a written document, the terms of which speak for themselves and is for the Court to interpret.  Generex therefore neither admits nor denies this assertion but refers the Court to the document for a complete statement of its terms.**

15.     During the Exclusivity Period, the advisory relationship with AEXG was exclusive.[15]

**This statement refers to a written document, the terms of which speak for themselves and is for the Court to interpret.  Generex therefore neither admits nor denies this assertion but refers the Court to the document for a complete statement of its terms.  To the extent that this assertion refers to the relationship between 3 Brothers and Generex that existed outside the contract, this assertion is denied and strict proof demanded thereof.**

---

[13] *See* Alter Decl. ¶ 8.
[14] *See* Alter Decl. ¶ 8; Alter Decl., Ex. A (Contract) at 2.
[15] *See* Alter Decl. ¶ 8; Alter Decl., Ex. A (Contract) at 2.

16.    During the Exclusivity Period, Generex agreed that it would not "directly or indirectly discuss, negotiate, consider, or enter into any financing transaction other than with existing shareholders."[16]

**This statement refers to a written document, the terms of which speak for themselves and is for the Court to interpret. Generex therefore neither admits nor denies this assertion but refers the Court to the document for a complete statement of its terms.**

17.    The Contract included an explicit remedy for AEXG if Generex breached the No Shop Provision.[17]

**This statement refers to a written document, the terms of which speak for themselves and is for the Court to interpret. Generex therefore neither admits nor denies this assertion but refers the Court to the document for a complete statement of its terms.**

18.    In the event that Generex secured any financing from an investor not referred by AEXG during the Exclusivity Period, Generex was to compensate AEXG as if AEXG had sourced the financing.[18]

**This statement refers to a written document, the terms of which speak for themselves and is for the Court to interpret. Generex therefore neither admits nor denies this assertion but refers the Court to the document for a complete statement of its terms.**

---

[16] *See* Alter Decl. ¶ 8; Alter Decl., Ex. A (Contract) at 2.
[17] *See* Alter Decl. ¶ 9; Alter Decl., Ex. A (Contract) at 2.
[18] *See* Alter Decl. ¶ 9; Alter Decl., Ex. A (Contract) at 2.

19.      The Contract states: "Should an investor other than a Referred Party make an investment during the exclusive period, . . . AEXG will be compensated according to the compensation provisions detailed [in the Contract]."[19]

**This statement refers to a written document, the terms of which speak for themselves and is for the Court to interpret. Generex therefore neither admits nor denies this assertion but refers the Court to the document for a complete statement of its terms.**

20.      These damages included Generex granting warrants to AEXG.[20]

**This statement refers to a written document, the terms of which speak for themselves and is for the Court to interpret. Generex therefore neither admits nor denies this assertion but refers the Court to the document for a complete statement of its terms.**

21.      The amount of warrants granted to AEXG was to be determined based on the amount of financing Generex received.[21]

**This statement refers to a written document, the terms of which speak for themselves and is for the Court to interpret. Generex therefore neither admits nor denies this assertion but refers the Court to the document for a complete statement of its terms.**

22.      The price of the warrants was to be determined based on the terms of the arrangement between Generex and the financing party.[22]

---

[19] *See* Alter Decl., Ex. A (Contract) at 2.
[20] *See* Alter Decl. ¶ 9; Alter Decl., Ex. A (Contract) at 1.
[21] *See* Alter Decl. ¶ 9; Alter Decl., Ex. A (Contract) at 1.
[22] *See* Alter Decl. ¶ 9; Alter Decl., Ex. A (Contract) at 1.

**This statement refers to a written document, the terms of which speak for themselves and is for the Court to interpret. Generex therefore neither admits nor denies this assertion but refers the Court to the document for a complete statement of its terms. To the extent further response is required, the assertion is denied and strict proof is demanded thereof.**

23.     The parties agreed to arbitrate any disputes concerning the Contract.[23]

**This statement refers to a written document, the terms of which speak for themselves and is for the Court to interpret. Generex therefore neither admits nor denies this assertion but refers the Court to the document for a complete statement of its terms.**

24.     Specifically, the Contract provides: "Any controversy or claim arising out of, or relating to, this Agreement, to the making, performance, or interpretation of it, shall be settled by arbitration in New York, New York unless otherwise mutually agreed upon by the parties."[24]

**This statement refers to a written document, the terms of which speak for themselves and is for the Court to interpret. Generex therefore neither admits nor denies this assertion but refers the Court to the document for a complete statement of its terms.**

25.     The Contract also had a cost-shifting provision that required the non-prevailing party to reimburse reasonable attorneys' fees and other costs associated with disputes arising under the Contract.[25]

---

[23] *See* Alter Decl. ¶ 10; Alter Decl., Ex. A (Contract) at 3.

[24] *See* Alter Decl., Ex. A (Contract) at 3.

[25] *See* Alter Decl. ¶ 24; Alter Decl., Ex. A (Contract) at 3.

**This statement refers to a written document, the terms of which speak for themselves and is for the Court to interpret. Generex therefore neither admits nor denies this assertion but refers the Court to the document for a complete statement of its terms.**

26.     The Contract states:

If any legal action or any arbitration or other proceeding is brought for the enforcement of this Agreement, or because of an alleged dispute, breach, default, or misrepresentation in connection with any provisions of this Agreement, the successful or prevailing party or parties shall be entitled to recover reasonable attorney's fees and other costs incurred in that action or proceeding, in addition to any other relief to which it or they may be entitled.[26]

**This statement refers to a written document, the terms of which speak for themselves and is for the Court to interpret. Generex therefore neither admits nor denies this assertion but refers the Court to the document for a complete statement of its terms.**

**C. The Arbitration**

27.     AEXG performed its obligations under the Contract.[27]

**This assertion is denied as stated, and Generex demands strict proof thereof.**

28.     In or around March 2017, AEXG presented Generex an appropriate and willing potential investor, Kodiak Capital Group, LLC ("Kodiak"), which was prepared to invest $3 million in Generex.[28]

**This assertion is denied as stated, and Generex demands strict proof thereof.**

---

[26] *See* Alter Decl., Ex. A (Contract) at 3.
[27] *See* Alter Decl. ¶ 11.
[28] *See* Alter Decl. ¶ 11.

29.     On March 28, 2017, Generex rejected the Kodiak investment.[29]

**Generex admits only that it rejected the Kodiak investment on March 28, 2017 with good cause.  To the extent that the assertion is inconsistent with this admission, Generex denies same.**

30.     On March 28, 2017, Generex agreed to enter into a financing agreement with another investor not referred by AEXG, Pharma Trials, LLC ("Pharma").[30]

**This statement refers to a written document, the terms of which speak for themselves and is for the Court to interpret.  Generex therefore neither admits nor denies this assertion but refers the Court to the document for a complete statement of its terms.**

31.     The financing arrangement with Pharma involved Generex receiving $3 million from Pharma.[31]

**This statement refers to a written document, the terms of which speak for themselves and is for the Court to interpret.  Generex therefore neither admits nor denies this assertion but refers the Court to the document for a complete statement of its terms.**

32.     In exchange for the $3 million, Pharma received 3,000 preferred shares convertible into 1,200,000 shares of common stock at a conversion price of $2.50 per share.[32]

**This statement refers to a written document, the terms of which speak for themselves and is for the Court to interpret.  Generex therefore neither admits nor**

---

[29] *See* Alter Decl. ¶ 11; AEXG's Demand to Arbitrate ("Demand to Arbitrate"), a true and correct copy of which, including the exhibits, is attached as Exhibit B to the Alter Declaration, at Ex. 2.

[30] *See* Alter Decl. ¶ 11; Alter Decl., Ex. B (Demand to Arbitrate) at Ex. 2.

[31] *See* Alter Decl. ¶ 11; Alter Decl., Ex. B (Demand to Arbitrate) at Ex. 2.

[32] *See* Alter Decl. ¶ 11; Alter Decl., Ex. B (Demand to Arbitrate) at 13, Ex. 2.

**denies this assertion but refers the Court to the document for a complete statement of its terms.**

33.     This was a breach of the Contract's No Shop Provision.[33]

**This is an assertion of law, not fact, and thus does not require a response.  To the extent a response is required, this statement refers to a written document, the terms of which speak for themselves and is for the Court to interpret.  Generex therefore neither admits nor denies this assertion but refers the Court to the document for a complete statement of its terms.**

34.     On August 22, 2017, AEXG, through its counsel, sent a letter to Generex.[34]

**Admitted.**

35.     The letter informed Generex that AEXG considered its conduct on March 28, 2017 a breach of the Contract.[35]

**This statement refers to a written document, the terms of which speak for themselves and is for the Court to interpret.  Generex therefore neither admits nor denies this assertion but refers the Court to the document for a complete statement of its terms.  By way of further response, Generex denies that it breached the Contract.**

36.     On November 27, 2017, AEXG formally demanded that the parties submit their dispute to arbitration before the AAA.[36]

**Admitted.**

---

[33] *See* Alter Decl. ¶ 11; Alter Decl., Ex. A (Contract) at 2; Alter Decl., Ex. B (Demand to Arbitrate) at Ex. 5.

[34] *See* Alter Decl. ¶ 12; Alter Decl., Ex. B (Demand to Arbitrate) at Ex. 5.

[35] *See* Alter Decl. ¶ 12; Alter Decl., Ex. B (Demand to Arbitrate) at Ex. 5.

[36] *See* Alter Decl. ¶ 13; Alter Decl., Ex. B (Demand to Arbitrate).

37.     In the demand, AEXG sought "$210,000, along with 84,000 warrants convertible to Generex common stock, exercisable at $2.50 per share, plus accrued simple interest running at New York's statutory rate of 9% from March 28, 2017, along with attorneys' fees, costs and expenses."[37]

**This statement refers to a written document, the terms of which speak for themselves and is for the Court to interpret. Generex therefore neither admits nor denies this assertion but refers the Court to the document for a complete statement of its terms.**

38.     The amount of warrants (84,000) was calculated based on the $3 million investment Generex received from Pharma.[38]

**This statement refers to a written document, the terms of which speak for themselves and is for the Court to interpret. Generex therefore neither admits nor denies this assertion but refers the Court to the document for a complete statement of its terms.**

39.     The dispute was referred to AAA's international division, the International Centre for Dispute Resolution.[39]

**Admitted.**

40.     To resolve the dispute, the parties chose Arbitrator Daniel F. Kolb.[40]

**Admitted.**

---

[37] *See* Alter Decl. ¶ 13; Alter Decl., Ex. B (Demand to Arbitrate) at 17-18.
[38] *See* Alter Decl. ¶ 13; Alter Decl., Ex. B (Demand to Arbitrate) at 13 n.3.
[39] *See* Alter Decl. ¶ 14.
[40] *See* Alter Decl. ¶ 14.

41.     Before choosing the Arbitrator, the parties reviewed his experience and qualifications.[41]

**Generex objects to this assertion on the grounds that it is irrelevant and immaterial. By way of further response, the assertion is admitted.**

42.     The Arbitrator has "[o]ver 45 years experience representing major corporations, accounting firms, law firms, and individuals as a trial lawyer and litigator in matters involving significant damage claims and regulatory and business issues."[42]

**This statement refers to a written document, the terms of which speak for themselves and is for the Court to interpret.  Generex therefore neither admits nor denies this assertion but refers the Court to the document for a complete statement of its terms.**

43.     The Arbitrator has significant alternative dispute resolution training and experience.[43]

**Generex objects to this assertion on the grounds that the term "significant" is undefined and is subject to multiple interpretations, and further that the assertion is irrelevant and immaterial.**

44.     Prior to conducting a hearing, the Arbitrator accepted pre-hearing submissions from the parties.[44]

**Admitted.**

---

[41] *See* Alter Decl. ¶ 14; Daniel F. Kolb's AAA Resume ("Arbitrator's Resume"), a true and correct copy of which is attached as Exhibit C to the Alter Declaration.

[42] *See* Alter Decl., Ex. C (Arbitrator's Resume).

[43] *See* Alter Decl., Ex. C (Arbitrator's Resume).

[44] Alter Decl. ¶ 15.

45.     AEXG submitted its pre-hearing brief to the Arbitrator and Generex.[45]

**Denied. On the contrary, the arbitrator instructed the parties not to exchange pre-hearing briefs.**

46.     Generex did not provide a copy of its pre-hearing submission to AEXG.[46]

**It is admitted only that Generex acted in accordance with the instructions of the arbitrator, and no more.**

47.     An arbitration hearing was held on September 24, 2018, in New York, New York (the "Hearing").[47]

**Admitted.**

48.     During the Hearing, the Arbitrator heard arguments of the parties and took testimony of certain fact witnesses, including Jeff Meyerson, a Senior Managing Director at AEXG; Joe Moscato, Generex's CEO; and Mark Fletcher, Generex's Executive Vice-President & General Counsel.[48]

**Admitted.**

49.     During the Hearing, Generex's CEO, Joe Moscato, testified that Generex could not register the warrants promised in the Contract because this would cause Generex to lose the ability to utilize its net operating loss.[49]

---

[45] *See* Alter Decl. ¶ 15; AEXG's pre-hearing submission ("AEXG's Pre-Hearing Brief"), a true and correct copy of which is attached as Exhibit D to the Alter Declaration.

[46] *See* Alter Decl. ¶ 15.

[47] *See* Alter Decl. ¶ 16.

[48] *See* Alter Decl. ¶ 16.

[49] *See* Alter Decl. ¶ 17.

**This assertion is denied as stated and strict proof demanded thereof.  On**

**information and belief, Moscato testified that no one in management received**

**warrents.**

50.     Moscato testified that he never intended to issue the warrants to AEXG.[50]

**This assertion is denied as stated and strict proof is demanded thereof.**

51.     Each party submitted a post-hearing brief summarizing the relevant facts and law

on October 19, 2018.[51]

**Admitted.**

   **D.   Generex's Stock Dividend**

52.     On October 10, 2018, Generex announced that its board had approved the

issuance of twenty shares of common stock for every one share of issued and outstanding

common stock (the "Stock Dividend").[52]

**This statement refers to a written document, the terms of which speak for**

**themselves and is for the Court to interpret.  Generex therefore neither admits nor**

**denies this assertion but refers the Court to the document for a complete statement**

**of its terms.**

53.     Included in that announcement was a short description of how the Stock Dividend

would affect those who held options, warrants, and convertible securities in Generex.[53]

---

[50] *See* Alter Decl. ¶ 17.

[51] *See* Alter Decl. ¶ 18; AEXG's post-hearing submission ("AEXG's Post-Hearing Brief"), a true and correct copy of which is attached as Exhibit E to the Alter Declaration; Generex's post-hearing submission ("Generex's Post-Hearing Brief"), a true and correct copy of which is attached as Exhibit F to the Alter Declaration.

[52] *See* Generex's October 10, 2018 Announcement, a true and correct copy of which is attached as Exhibit 1 to the Declaration of Jacqueline Yecies dated February 4, 2019 (the "Yecies Decl.").

[53] *See* Yecies Decl., Ex. 1 (Generex's Oct. 10, 2018 Announcement).

**This statement refers to a written document, the terms of which speak for themselves and is for the Court to interpret.  Generex therefore neither admits nor denies this assertion but refers the Court to the document for a complete statement of its terms.**

54.    The announcement states, in relevant part:

> All options, warrants, and convertible securities of the Company that are outstanding on the record date and entitle the holders thereof to exercise or convert for shares of the Company's common stock will be proportionally adjusted to reflect the dividend.[54]

**This statement refers to a written document, the terms of which speak for themselves and is for the Court to interpret.  Generex therefore neither admits nor denies this assertion but refers the Court to the document for a complete statement of its terms.**

55.    The announcement did not require Generex's stock price to be at or above a certain value for holders of options, warrants, or convertible securities to receive the benefit of the proportional adjustment.[55]

**This statement refers to a written document, the terms of which speak for themselves and is for the Court to interpret.  Generex therefore neither admits nor denies this assertion but refers the Court to the document for a complete statement of its terms.**

---

[54] *See* Yecies Decl., Ex. 1 (Generex's Oct. 10, 2018 Announcement).
[55] *See* Yecies Decl., Ex. 1 (Generex's Oct. 10, 2018 Announcement).

56.     The Stock Dividend would have significantly affected AEXG's award unless the award took into account the proportional adjustment Generex was offering holders of options and warrants.[56]

**Generex objects to this contention on the grounds that it is a question of law, not fact, and thus does not require a response.  To the extent a response is required, Generex denies same; on the contrary, the stock dividend had no effect on the Award of the arbitrator.**

57.     Following this initial announcement of its Stock Dividend, Generex issued a series of other press releases and made SEC filings specifying the terms of the Stock Dividend.[57]

**This statement refers to a written document, the terms of which speak for themselves and is for the Court to interpret.  Generex therefore neither admits nor denies this assertion but refers the Court to the document for a complete statement of its terms.**

58.     The final announcement was issued on November 14, 2018.[58]

**This statement refers to a written document, the terms of which speak for themselves and is for the Court to interpret.  Generex therefore neither admits nor denies this assertion but refers the Court to the document for a complete statement of its terms.**

---

[56] *See* Alter. Decl. ¶ 21.

[57] *See* Generex's October 22, 2018 Announcement, a true and correct copy of which is attached as Exhibit 2 to the Yecies Declaration; Generex's October 31, 2018 Announcement, a true and correct copy of which is attached as Exhibit 3 to the Yecies Declaration; Generex's November 5, 2018 Announcement, a true and correct copy of which is attached as Exhibit 4 to the Yecies Declaration; Generex's November 13, 2018 Announcement, a true and correct copy of which is attached as Exhibit 5 to the Yecies Declaration; Generex's November 14, 2018 Announcement, a true and correct copy of which is attached as Exhibit 6 to the Yecies Declaration and as Exhibit L to the Alter Declaration.

[58] *See* Yecies Decl., Ex. 6 (Generex's Nov. 14, 2018 Announcement).

59.     The November 14, 2018 announcement stated that the record date to participate in the Stock Dividend was extended to November 20, 2018.[59]

**This statement refers to a written document, the terms of which speak for themselves and is for the Court to interpret.  Generex therefore neither admits nor denies this assertion but refers the Court to the document for a complete statement of its terms.**

60.     The November 14, 2018 announcement also stated that the dividend payment date was set for Friday, November 30, 2018.[60]

**This statement refers to a written document, the terms of which speak for themselves and is for the Court to interpret.  Generex therefore neither admits nor denies this assertion but refers the Court to the document for a complete statement of its terms.**

61.     The November 14, 2018 announcement also stated that the ex-dividend date would be December 3, 2018.[61]

**This statement refers to a written document, the terms of which speak for themselves and is for the Court to interpret.  Generex therefore neither admits nor denies this assertion but refers the Court to the document for a complete statement of its terms.  By way of further response, Generex denies this assertion as stated. The November 14, 2018 announcement stated that Generex "believes" that the ex-**

---

[59] *See* Yecies Decl., Ex. 6 (Generex's Nov. 14, 2018 Announcement).

[60] *See* Yecies Decl., Ex. 6 (Generex's Nov. 14, 2018 Announcement).

[61] *See* Yecies Decl., Ex. 6 (Generex's Nov. 14, 2018 Announcement).  An ex-dividend date is the day a stock starts trading without the value of its next dividend payment.

**dividend date would be Monday, December 3, 2018, by application of FINRA**

**Uniform Practice Code.**

62.     Because the Hearing took place on September 24, 2018, the parties were unable to submit arguments to the Arbitrator at that time as to how this Stock Dividend would affect the arbitration award, should the Arbitrator find in AEXG's favor.[62]

**Admitted.  By way of further response, the parties made numerous post-hearing submissions on the issue.**

63.     On November 2, 2018, AEXG submitted to the Arbitrator via email a letter detailing the terms of the Stock Dividend.[63]

**This statement refers to a written document, the terms of which speak for themselves and is for the Court to interpret.  Generex therefore neither admits nor denies this assertion but refers the Court to the document for a complete statement of its terms.**

64.     This letter included two of Generex's press releases.[64]

**This statement refers to a written document, the terms of which speak for themselves and is for the Court to interpret.  Generex therefore neither admits nor denies this assertion but refers the Court to the document for a complete statement of its terms.**

---

[62] *See* Alter Decl. ¶ 21.

[63] *See* Alter Decl. ¶ 21; November 2, 2018 email from A. Weiner to the Arbitrator ("AEXG's Nov. 2, 2018 Email"), attaching a letter regarding the Stock Dividend, a true and correct copy of which is attached as Exhibit G to the Alter Declaration.

[64] *See* Alter Decl. ¶ 21; Alter Decl., Ex. G (AEXG's Nov. 2, 2018 Email).

65.    In one of the press releases attached to AEXG's letter, dated October 22, 2018, Generex stated, "[a]ll options, warrants, and convertible securities of the Company outstanding on the record date will be proportionally adjusted to reflect the dividend."[65]

**This statement refers to a written document, the terms of which speak for themselves and is for the Court to interpret.  Generex therefore neither admits nor denies this assertion but refers the Court to the document for a complete statement of its terms.**

66.    In the November 2, 2018 letter, AEXG requested that any arbitration award consider the Stock Dividend.[66]

**This statement refers to a written document, the terms of which speak for themselves and is for the Court to interpret.  Generex therefore neither admits nor denies this assertion but refers the Court to the document for a complete statement of its terms.**

67.    The letter stated that if the award did not take into account the dividend, AEXG would not be placed in the position it would have been had the breach not occurred, as contracted for by the parties.[67]

**This statement refers to a written document, the terms of which speak for themselves and is for the Court to interpret.  Generex therefore neither admits nor denies this assertion but refers the Court to the document for a complete statement of its terms.**

---

[65] *See* Alter Decl. ¶ 20; Alter Decl., Ex. G (AEXG's Nov. 2, 2018 Email); Yecies Decl., Ex. 2 (Generex's Oct. 22, 2018 Announcement Re Stock Dividend).

[66] *See* Alter Decl. ¶ 22; Alter Decl., Ex. G (AEXG's Nov. 2, 2018 Email).

[67] *See* Alter Decl. ¶ 22; Alter Decl., Ex. G (AEXG's Nov. 2, 2018 Email).

68.     Both parties sent the Arbitrator several other submissions related to the Stock Dividend.[68]

**Admitted.**

69.     In it submissions, Generex contended that no warrants should be awarded.[69]

**This statement refers to a written document, the terms of which speak for themselves and is for the Court to interpret.  Generex therefore neither admits nor denies this assertion but refers the Court to the document for a complete statement of its terms.**

70.     Generex also contended that if warrants were awarded, the Arbitrator should not adjust them based on the Stock Dividend.[70]

**This statement refers to a written document, the terms of which speak for themselves and is for the Court to interpret.  Generex therefore neither admits nor denies this assertion but refers the Court to the document for a complete statement of its terms.**

71.     Thus, prior to issuing his award, the Arbitrator had multiple submissions from the parties regarding the Stock Dividend and the parties' respective positions on how the Stock Dividend should affect the award.[71]

**Admitted.**

---

[68] *See* Alter Decl. ¶ 23; Generex's November 2, 2018 email, attaching its response letter ("Generex's Nov. 2, 2018 Email"), a true and correct copy of which is attached as Exhibit H to the Alter Declaration; AEXG's November 5, 2018 email, attaching its reply ("AEXG's Nov. 5, 2018 Email"), a true and correct copy of which is attached as Exhibit I to the Alter Declaration; Generex's November 5, 2018 email, attaching its response ("Generex's Nov. 5, 2018 Email"), a true and correct copy of which is attached as Exhibit J to the Alter Declaration.

[69] *See* Alter Decl. ¶ 23; Alter Decl., Ex. H (Generex's Nov. 2, 2018 Email); Alter Decl., Ex. J (Generex's Nov. 5, 2018 Email).

[70] *See* Alter Decl. ¶ 23; Alter Decl., Ex. H (Generex's Nov. 2, 2018 Email); Alter Decl., Ex. J (Generex's Nov. 5, 2018 Email).

[71] *See* Alter Decl. ¶ 23.

72.     On Friday, November 30, 2018, Generex filed a  Form 8-K.[72]

**Admitted.**

73.     Generex's November 30, 2018 Form 8-K states that Generex "paid its previously announced common stock dividend on its shares of common stock . . . at a ratio of 20 for 1."[73]

**This statement refers to a written document, the terms of which speak for themselves and is for the Court to interpret.  Generex therefore neither admits nor denies this assertion but refers the Court to the document for a complete statement of its terms.**

74.     Thus, the owner of a single share of Generex's common stock on November 20, 2018, would own twenty-one shares post-dividend.[74]

**Admitted.**

75.     The owner of a warrant to purchase a single share of Generex stock would thus have a warrant to purchase twenty-one shares of Generex stock.[75]

**Generex denies this assertion, as it concerns a question of law, not fact.  By way of further response, no warrants were issued by Generex prior to December 3, 2018.[76]**

76.     This proportional adjustment would also require a corresponding reduction to the warrants' strike price.[77]

---

[72] *See* Generex's November 30, 2018 Form 8-K, a true and correct copy of which is attached as Exhibit 7 to the Yecies Declaration and as Exhibit K to the Alter Declaration.

[73] *See* Yecies Decl., Ex. 7 (Generex's Form 8-K).

[74] *See* Alter Decl. ¶ 19; Yecies Decl., Ex. 1 (Oct. 10, 2018 Announcement)

[75] *See* Alter Decl. ¶ 20; Yecies Decl., Ex. 7 (Generex's Form 8-K).

[76] *See* Moscato Decl. ¶ 18; Yecies Decl., Ex. 7 (Generex's Form 8-K), Doc. 21-7.

[77] *See* Alter Decl. ¶ 20.

**Generex denies this assertion, as it concerns a question of law, not fact. By way of further response, no warrants were issued by Generex prior to December 3, 2018.**[78]

77.     The warrants' strike price would be reduced by dividing the strike price by twenty-one.[79]

**Generex denies this assertion, as it concerns a question of law, not fact. By way of further response, no warrants were issued by Generex prior to December 3, 2018.**[80]

78.     The twenty-one fold increase in the number of outstanding shares of stock would result in a corresponding reduction in the value of each Generex share, equivalent to dividing the pre-dividend share price by twenty-one.[81]

**Generex denies this assertion, as it concerns a question of law, not fact. By way of further response, no warrants were issued by Generex prior to December 3, 2018.**[82]

79.     This dividend was first reflected in the stock market when the market opened on Monday, December 3, 2018.[83]

**Generex denies this assertion as unsupported by the record in this case, unduly speculative, and without foundation, and demands strict proof thereof.**

80.     If Generex had complied with the Contract, AEXG would have had in its possession 84,000 warrants at the time of the Stock Dividend.[84]

---

[78] *See* Moscato Decl. ¶ 18; Yecies Decl., Ex. 7 (Generex's Form 8-K), Doc. 21-7.

[79] *See* Alter Decl. ¶ 20.

[80] *See* Moscato Decl. ¶ 18; Yecies Decl., Ex. 7 (Generex's Form 8-K), Doc. 21-7.

[81] *See* Alter Decl. ¶ 19.

[82] *See Moscato Decl. ¶ 18; Yecies Decl., Ex. 7 (Generex's Form 8-K), Doc. 21-7.*

[83] *See* Alter Decl. ¶ 24; Yecies Decl., Ex 6 (Generex's Nov. 14, 2018 Announcement) (noting the ex-dividend date as December 3, 2018).

[84] *See* Alter Decl. ¶ 22.

**Generex denies this assertion, as it concerns a question of law, not fact.  By way of further response, no warrants were issued by Generex prior to December 3, 2018.[85]  By way of further response, Generex denies this assertion as unsupported by the record in this case, unduly speculative, and without foundation, and demands strict proof thereof.**

81.     Thus, AEXG would have benefited from the proportional adjustment Generex offered to holders of warrants.[86]

**Generex denies this assertion, as it concerns a question of law, not fact.  By way of further response, no warrants were issued by Generex prior to December 3, 2018.[87]  By way of further response, Generex denies this assertion as unsupported by the record in this case, unduly speculative, and without foundation, and demands strict proof thereof.**

82.     The strike price for these warrants would have been proportionally adjusted to $0.119 ($2.50 / 21).[88]

**Generex denies this assertion, as it concerns a question of law, not fact.  By way of further response, no warrants were issued by Generex prior to December 3, 2018.[89]  By way of further response, Generex denies this assertion as unsupported by the record in this case, unduly speculative, and without foundation, and demands strict proof thereof.**

---

[85] *See Moscato Decl. ¶ 18; Yecies Decl., Ex. 7 (Generex's Form 8-K), Doc. 21-7.*

[86] *See* Alter Decl. ¶ 22.

[87] *See Moscato Decl. ¶ 18; Yecies Decl., Ex. 7 (Generex's Form 8-K), Doc. 21-7.*

[88] *See* Alter Decl. ¶ 22; Alter Decl., Ex. G (AEXG's Nov. 2, 2018 Email).

[89] *See Moscato Decl. ¶ 18; Yecies Decl., Ex. 7 (Generex's Form 8-K), Doc. 21-7.*

83.     This would have resulted in AEXG holding 1,764,000 warrants (84,000 x 21).[90] **Generex denies this assertion, as it concerns a question of law, not fact.  By way of further response, no warrants were issued by Generex prior to December 3, 2018.[91] By way of further response, Generex denies this assertion as unsupported by the record in this case, unduly speculative, and without foundation, and demands strict proof thereof.**

### E.  Attorneys' Fees

84.     On September 28, 2018, AEXG sent Generex a statement of its fees incurred to date.[92]

**Admitted.**

85.     On October 19, 2018, in its post-hearing submission, AEXG provided the Arbitrator a summary of its fees.[93]

**Admitted.**

86.     Generex complained to the Arbitrator about the reasonableness of AEXG's fees.[94] **Generex admits that it objected that no testimony or affidavit was submitted that the attorneys' fees incurred by 3 Brothers were reasonable and necessary.  To the extent that this contention is inconsistent with the above admission, Generex denies same and demands strict proof thereof.**

---

[90] *See* Alter Decl. ¶ 22; Alter Decl., Ex. G (AEXG's Nov. 2, 2018 Email).

[91] *See Moscato Decl. ¶ 18; Yecies Decl., Ex. 7 (Generex's Form 8-K), Doc. 21-7.*

[92] *See* Alter Decl. ¶ 26; AEXG's September 28, 2018 letter to Generex ("AEXG's Sept. 28, 2018 Letter"), a true and correct copy of which is attached as Exhibit M to the Alter Declaration.

[93] *See* Alter Decl. ¶ 26; Alter Decl., Ex. E (AEXG's Post-Hearing Brief) at 7.

[94] *See* Alter Decl. ¶ 27.

87.     On October 22, 2018, the Arbitrator requested that AEXG justify its fees.[95]

**This statement refers to a written document, the terms of which speak for themselves and is for the Court to interpret. Generex therefore neither admits nor denies this assertion but refers the Court to the document for a complete statement of its terms.**

88.     On October 29, 2018, AEXG responded to the Arbitrator's request.[96]

**Admitted.**

89.     This response attached a letter explaining the fees AEXG had incurred.[97]

**This statement refers to a written document, the terms of which speak for themselves and is for the Court to interpret. Generex therefore neither admits nor denies this assertion but refers the Court to the document for a complete statement of its terms.**

90.     This response also attached a second letter.[98]

**Admitted.**

91.     This second letter included an invoice for the attorneys' fees AEXG had incurred since September 28, 2018.[99]

**This statement refers to a written document, the terms of which speak for themselves and is for the Court to interpret. Generex therefore neither admits nor**

---

[95] *See* Alter Decl. ¶ 27; October 2018 email exchange between the Arbitrator and AEXG regarding attorneys' fees ("Attorneys' Fees Correspondence"), a true and correct copy of which is attached as Exhibit N to the Alter Declaration.

[96] *See* Alter Decl. ¶ 27; Alter Decl., Ex. N (Attorneys' Fees Correspondence).

[97] *See* Alter Decl. ¶ 27; Alter Decl., Ex. N (Attorneys' Fees Correspondence).

[98] *See* Alter Decl. ¶ 27; Alter Decl., Ex. N (Attorneys' Fees Correspondence).

[99] *See* Alter Decl. ¶ 27; Alter Decl., Ex. N (Attorneys' Fees Correspondence).

denies this assertion but refers the Court to the document for a complete statement
of its terms.

F.   The Arbitration Award

92.     On December 3, 2018, the Arbitrator issued a three-page decision detailing his
award.[100]

Admitted.

93.     In the Arbitration Award, the Arbitrator determined that it was "clear that
Respondent [Generex] breached the agreement."[101]

This statement refers to a written document, the terms of which speak for
themselves and is for the Court to interpret.  Generex therefore neither admits nor
denies this assertion but refers the Court to the document for a complete statement
of its terms.

94.     The Arbitrator found that the liquidated damages provision of the Contract
"makes evident good sense given the difficulty of estimating damages."[102]

This statement refers to a written document, the terms of which speak for
themselves and is for the Court to interpret.  Generex therefore neither admits nor
denies this assertion but refers the Court to the document for a complete statement
of its terms.

---

[100] See Alter Decl. ¶ 28; Award of Arbitrator ("Award"), a true and correct copy of which is attached as
Exhibit O to the Alter Declaration.

[101] See Alter Decl., Ex. O (Award) at 2.

[102] See Alter Decl., Ex. O (Award) at 3.

95.     The Arbitrator awarded AEXG "210,000 in liquidated damages and the economic value today of 84,000 warrants convertible to Respondent's stock exercisable at $2.50 per share as of September 24, 2018."[103]

**This statement refers to a written document, the terms of which speak for themselves and is for the Court to interpret.  Generex therefore neither admits nor denies this assertion but refers the Court to the document for a complete statement of its terms.**

96.     The award of the "economic value of 84,000 warrants convertible to Respondent's stock exercisable at $2.50 per share as of September 24, 2018" made evident sense given the information the Arbitrator had before him.[104]

**Paragraph 96 does not constitute a factual assertion, and thus Generex need not admit or deny the contentions stated therein.  To the extent a response is required, Generex denies same and further states that the materials cited do not establish, and 3 Brothers cannot produce admissible evidence to support, this assertion**

97.     The Arbitrator heard testimony from Mr. Moscato that he could not register new warrants.[105]

**Paragraph 97 does not constitute a factual assertion, and thus Generex need not admit or deny the contentions stated therein.  To the extent a response is required,Generex denies same and further states that the materials cited do not establish, and 3 Brothers cannot produce admissible evidence to support, this assertion.**

---

[103] *See* Alter Decl., Ex. O (Award) at 3.
[104] *See* Alter Decl. ¶ 29.
[105] *See* Alter Decl. ¶¶ 17, 29.

98.     The Arbitrator received submissions from both parties regarding the Stock Dividend.[106]

**Admitted.**

99.     The "economic value today of 84,000 warrants convertible to Respondent's stock exercisable at $2.50 per share as of September 24, 2018" is $3,300,360.[107]

**Generex denies this assertion, as it concerns a question of law, not fact. By way of further response, the economic value today of 84,000 warrants as found by the arbitrator is zero.**

100.    The Arbitrator awarded the economic value of the warrants as of September 24, 2018.[108]

**This statement refers to a written document, the terms of which speak for themselves and is for the Court to interpret. By way of further response, Generex refers the Court to the document for a complete statement of its terms, including the specific language of the Award stating the economic value of the warrants was to be measured as of "today," on December 3, 2018.**

101.    The Arbitration Award intended for AEXG to benefit from the adjustment that Generex provided to all holders of outstanding warrants.[109]

**This statement refers to a written document, the terms of which speak for themselves and is for the Court to interpret. Generex refers the Court to the document for a complete statement of its terms. Generex objects to this assertion as**

---

[106] *See* Alter Decl. ¶¶ 21-23, 29; Alter Decl., Ex. G (AEXG's Nov. 2, 2018 Email); Alter Decl., Ex. H (Generex's Nov. 2, 2018 Email); Alter Decl., Ex. I (AEXG's Nov. 5, 2018 Email); Alter Decl., Ex. J (Generex's Nov. 5, 2018 Email).

[107] *See* Alter Decl. ¶¶ 29-30.

[108] *See* Alter Decl. ¶ 30; Alter Decl., Ex. O (Award).

[109] *See* Alter Decl. ¶ 30; Alter Decl., Ex. G (AEXG's Nov. 2, 2018 Email).

not a statement of material fact, and as an intentional mischaracterization of the **Award. To the extent further response is required, Generex denies this assertion.**

102.    AEXG's award of 84,000 warrants would be proportionally adjusted to 1,764,000 warrants (84,000 x 21).[110]

**This statement refers to a written document, the terms of which speak for themselves and is for the Court to interpret. Generex refers the Court to the document for a complete statement of its terms. Generex objects to this assertion as not a statement of material fact, and as an intentional mischaracterization of the Award. Generex further objects to this assertion as vague, ambiguous, and not capable of response. To the extent further response is required, Generex denies this assertion.**

103.    "[T]he economic value today" means that the value of AEXG's warrants should be calculated based on Generex's share price on the day the Arbitrator issued the award, December 3, 2018.[111]

**This statement refers to a written document, the terms of which speak for themselves and is for the Court to interpret. Generex refers the Court to the document for a complete statement of its terms.**

104.    The closing value of Generex's shares (GNBT) on December 3, 2018, was $1.99.[112]

**Admitted.**

---

[110] *See* Alter Decl. ¶ 30; Alter Decl., Ex. G (AEXG's Nov. 2, 2018 Email).

[111] *See* Alter Decl. ¶ 30.

[112] *See* Alter Decl. ¶ 30; Webpage from Bigcharts.com showing the value of Generex's share price on December 3, 2018, a true and correct copy of which is attached as Exhibit 8 to the Yecies Declaration.

105.    The warrants Generex was required to give for breaching the Contract were exercisable for $2.50 per share.[113]

**This statement refers to a written document, the terms of which speak for themselves and is for the Court to interpret.  By way of further response, Generex refers the Court to the document for a complete statement of its terms, including the specific language of the Award which does not require Generex to give warrants to anyone.**

106.    To calculate the "economic value" of the warrants, the price AEXG would have had to pay to exercise the warrants should be considered.[114]

**Paragraph 106 constitutes legal conclusion, not a factual assertion, and thus Generex need not admit or deny the contentions stated therein.  To the extent a response is required, this statement refers to a written document, the terms of which speak for themselves and is for the Court to interpret.  Generex refers the Court to the document for a complete statement of its terms.**

107.    Exercising this right pre-Stock Dividend would have cost AEXG $210,000 (84,000 shares x $2.50).[115]

**Paragraph 107 constitutes legal conclusion, not a factual assertion, and thus Generex need not admit or deny the contentions stated therein, as they do not constitute material facts of record.**

---

[113] *See* Alter Decl. ¶ 30; Alter Decl., Ex. B (Demand to Arbitrate) at 13 n.3.

[114] *See* Alter Decl. ¶ 30.

[115] *See* Alter Decl. ¶ 30.

108.    Exercising this right post-Stock Dividend would also have cost AEXG

$210,000.[116]

**Paragraph 108 constitutes legal conclusion, not a factual assertion, and thus**

**Generex need not admit or deny the contentions stated therein, as they do not**

**constitute material facts of record.**

109.    According to the Stock Dividend there was a twenty-one fold increase in the

number of outstanding shares.[117]

**This statement refers to a written document, the terms of which speak for**

**themselves and is for the Court to interpret.  Generex refers the Court to the**

**document for a complete statement of its terms.**

110.    The Arbitration Award thus required a commensurate twenty-one times increase

in the number of warrants awarded to AEXG (84,000 warrants x 21 = 1,764,000 warrants).[118]

**Paragraph 110 constitutes legal conclusion, not a factual assertion, and thus**

**Generex need not admit or deny the contentions stated therein, as they do not**

**constitute material facts of record.  By way of further response, this statement refers**

**to a written document, the terms of which speak for themselves and is for the Court**

**to interpret.  Generex refers the Court to the document for a complete statement of**

**its terms.  Generex objects to this assertion as not a statement of material fact, and**

**as an intentional mischaracterization of the Award.  To the extent further response is**

**required, Generex denies this assertion.**

---

[116] *See* Alter Decl. ¶ 30.

[117] *See* Alter Decl. ¶ 30 n.49.

[118] *See* Alter Decl. ¶ 30 n.49.

111.    The requested adjustment in the number of warrants would require a corresponding adjustment in the exercise price to $0.119048 per warrant. ($2.50 / 21).[119]

**Paragraph 111 constitutes legal conclusion, not a factual assertion, and thus Generex need not admit or deny the contentions stated therein, as they do not constitute material facts of record.  By way of further response, this statement refers to a written document, the terms of which speak for themselves and is for the Court to interpret.  Generex refers the Court to the document for a complete statement of its terms.  Generex objects to this assertion as not a statement of material fact, and as an intentional mischaracterization of the Award.  To the extent further response is required, Generex denies this assertion.**

112.    Thus, the adjustment preserves AEXG's full exercise price ($0.119048 x 1,764,000 = $210,000).[120]

**Paragraph 112 constitutes legal conclusion, not a factual assertion, and thus Generex need not admit or deny the contentions stated therein, as they do not constitute material facts of record.  By way of further response, this statement refers to a written document, the terms of which speak for themselves and is for the Court to interpret.  Generex refers the Court to the document for a complete statement of its terms.  Generex objects to this assertion as not a statement of material fact, and as an intentional mischaracterization of the Award.  To the extent further response is required, Generex denies this assertion.**

113.    The Arbitrator valued the warrants that Generex failed to deliver as $3,300,360.[121]

---

[119] *See* Alter Decl. ¶ 30 n.49.

[120] *See* Alter Decl. ¶¶ 30 n.49.

[121] *See* Alter Decl. ¶ 30.

**This statement refers to a written document, the terms of which speak for themselves and is for the Court to interpret. Generex refers the Court to the document for a complete statement of its terms. Generex objects to this assertion as not a statement of material fact, and as an intentional mischaracterization and blatant misrepersentation of the Award. To the extent further response is required, Generex denies this assertion.**

114.   The $3,300,360 is determined by using the following calculation: 1,764,000 (number of shares taking into account the stock dividend) x $1.99 (closing price of GNBT on December 3, 2018) - $210,000 (the price AEXG would have paid on September 24, 2018).[122]

**Paragraph 114 constitutes legal conclusion, not a factual assertion, and thus Generex need not admit or deny the contentions stated therein, as they do not constitute material facts of record. By way of further response, this statement refers to a written document, the terms of which speak for themselves and is for the Court to interpret. Generex refers the Court to the document for a complete statement of its terms. Generex objects to this assertion as not a statement of material fact, and as an intentional mischaracterization of the Award. To the extent further response is required, Generex denies this assertion.**

115.   The Arbitrator also concluded that AEXG was "the prevailing party entitled to legal fees in the amount of $93,304.06, plus costs of $12,392.50."[123]

**This statement refers to a written document, the terms of which speak for themselves and is for the Court to interpret. Generex therefore neither admits nor**

---

[122] *See* Alter Decl. ¶ 30.
[123] *See* Alter Decl., Ex. O (Award) at 3.

**denies this assertion but refers the Court to the document for a complete statement of its terms.**

116.     The Arbitrator directed Generex to reimburse AEXG $3,312.50 for fees and expenses associated with the arbitration.[124]

**This statement refers to a written document, the terms of which speak for themselves and is for the Court to interpret.  Generex therefore neither admits nor denies this assertion but refers the Court to the document for a complete statement of its terms.**

117.     The Arbitrator also awarded AEXG "accrued simple interest running at 9% from March 28, 2017."[125]

**This statement refers to a written document, the terms of which speak for themselves and is for the Court to interpret.  Generex therefore neither admits nor denies this assertion but refers the Court to the document for a complete statement of its terms.**

118.     The interest on the pre-award amount of $210,000 is $31,844.70.[126]

**Paragraph 118 constitutes legal conclusion, not a factual assertion, and thus Generex need not admit or deny the contentions stated therein, as they do not constitute material facts of record.  By way of further response, this statement refers to a written document, the terms of which speak for themselves and is for the Court to interpret.  Generex refers the Court to the document for a complete statement of its terms.  Generex objects to this assertion as not a statement of material fact, and**

---

[124] *See* Alter Decl., Ex. O (Award) at 3.
[125] *See* Alter Decl., Ex. O (Award) at 3.
[126] *See* Alter Decl. ¶ 31.

**as an intentional mischaracterization of the Award. To the extent further response is required, Generex denies this assertion.**

119.    The interest on the full post-award amount accrues daily at $900.30.[127]

**Paragraph 119 constitutes legal conclusion, not a factual assertion, and thus Generex need not admit or deny the contentions stated therein, as they do not constitute material facts of record. By way of further response, this statement refers to a written document, the terms of which speak for themselves and is for the Court to interpret. Generex refers the Court to the document for a complete statement of its terms. Generex objects to this assertion as not a statement of material fact, and as an intentional mischaracterization of the Award. To the extent further response is required, Generex denies this assertion.**

120.    The per diem interest of $900.30 started running on December 3, 2018, the day the Arbitrator issued the Arbitration Award.[128]

**Paragraph 120 constitutes legal conclusion, not a factual assertion, and thus Generex need not admit or deny the contentions stated therein, as they do not constitute material facts of record. By way of further response, this statement refers to a written document, the terms of which speak for themselves and is for the Court to interpret. Generex refers the Court to the document for a complete statement of its terms. Generex objects to this assertion as not a statement of material fact, and as an intentional mischaracterization of the Award. To the extent further response is required, Generex denies this assertion.**

---

[127] *See* Alter Decl. ¶ 31.
[128] *See* Alter Decl. ¶ 31; Alter Decl., Ex. O (Award) at 3.

121.    Generex has not complied with the Arbitration Award.[129]

**Paragraph 121 constitutes legal conclusion, not a factual assertion, and thus**

**Generex need not admit or deny the contentions stated therein, as they do not**

**constitute material facts of record.  By way of further response, this statement refers**

**to a written document, the terms of which speak for themselves and is for the Court**

**to interpret.  Generex refers the Court to the document for a complete statement of**

**its terms.  Generex objects to this assertion as not a statement of material fact, and**

**as an intentional mischaracterization of the Award.  To the extent further response is**

**required, Generex denies this assertion, and further asserts that the Award is not**

**enforceable until the Court enters judgment..**

122.    Generex argues that the value of the warrants that the Arbitrator awarded is
zero.[130]

**This statement refers to a written document, the terms of which speak for**

**themselves and is for the Court to interpret.  Generex therefore neither admits nor**

**denies this assertion but refers the Court to the document for a complete statement**

**of its terms.**

123.    Generex did not argue during the Hearing that awarding the warrants would be
futile because their strike price was above Generex's share price.[131]

**Generex objects to this assertion on the grounds that it is irrelevant and immaterial,**

**as the value of the warrants was not at issue in the hearing and did not become at**

**issue until after the issuance of the Award on December 3, 2018.**

---

[129] *See* Alter Decl. ¶ 32.

[130] *See* Alter Decl. ¶ 33; Cross-Petition ¶ 11.

[131] *See* Alter Decl. ¶ 33.

124.   Generex did not argue in its post-hearing submissions that awarding the warrants would be futile because their strike price was above Generex's share price.[132]

**This statement refers to a written document, the terms of which speak for themselves and is for the Court to interpret. Generex therefore neither admits nor denies this assertion but refers the Court to the document for a complete statement of its terms.**

125.   On November 5, 2018, the value of Generex's shares at closing was $19.60.[133]

**Generex objects to this assertion on the grounds that it is irrelevant and immaterial. To the extent further response is required, Generex admits the truth of the value of its shares at closing on November 5, 2018 and no more.**

126.   The AAA's Commercial Arbitration Rules state: "The arbitrator may grant any remedy or relief that the arbitrator deems just and equitable and within the scope of the agreement of the parties . . . ."[134]

**This statement refers to a written document, the terms of which speak for themselves and is for the Court to interpret. Generex therefore neither admits nor denies this assertion but refers the Court to the document for a complete statement of its terms.**

127.   The AAA's Commercial Arbitration Rules also state: "The parties shall be deemed to have made these rules a part of their arbitration agreement whenever they have provided for arbitration by the [AAA]".[135]

---

[132] *See* Alter Decl. ¶ 33.

[133] *See* Webpage from Bigcharts.com that shows the value of Generex's share price on November 5, 2018, a true and correct copy of which is attached as Exhibit 9 to the Yecies Declaration.

[134] *See* AAA Commercial Arbitration Rules and Mediation Procedures, a true and correct copy of which is attached as Exhibit 10 to the Yecies Declaration, at R-47.

[135] *See* Yecies Decl., Ex. 10 (AAA Commercial Arbitration Rules).

This statement refers to a written document, the terms of which speak for

themselves and is for the Court to interpret. Generex therefore neither admits nor

denies this assertion but refers the Court to the document for a complete statement

of its terms.

Dated: White Plains, New York
February 19, 2019

Respectfully submitted,

ECKERT SEAMANS CHERIN & MELLOTT, LLC

By: *Thomas M. Smith*
Thomas M. Smith, Esq.
10 Bank Street, Suite 700
White Plains, New York 10606
(914) 286-2807
*tsmith@eckertseamans.com*
*Attorneys for Respondent*
*Generex Biotechnology Corporation*