UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| THREE BROTHERS TRADING, LLC, | |
|---|---|
| Petitioner, | |
| -v.- | 18 Civ. 11585 (KPF) |
| GENEREX BIOTECHNOLOGY CORP., | **OPINION AND ORDER** |
| Respondent. | |

KATHERINE POLK FAILLA, District Judge:

  Three Brothers Trading, LLC d/b/a Alternative Execution Group ("AEXG" or "Petitioner") and Generex Biotechnology Corporation ("Generex" or "Respondent") participated in an arbitration proceeding, after which arbitrator Daniel F. Kolb (the "Arbitrator") issued an award in favor of AEXG (the "Award"). AEXG then filed a petition in this Court to confirm the Award under the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-14, while Generex moved to vacate, modify, or remand the Award back to the Arbitrator for clarification.

  Pursuant to this Court's order, the parties filed cross-motions for summary judgment reiterating their earlier requests for relief. For the reasons set forth below, Generex's motion to remand the Award back to the Arbitrator for clarification is granted, and the parties' cross-motions for summary judgment are denied.

## BACKGROUND[1]

### A. Factual History

This case arises from Generex's alleged breach of a Memorandum of Understanding with AEXG (the "Contract") entered into in February 2017. (Resp. 56.1 ¶ 33). In brief, the Contract provided that AEXG would secure investors for Generex's business and, in exchange, Generex would pay AEXG a percentage of the funds received by any investor AEXG had referred. (*Id.* at ¶¶ 8-9).

The Contract included a "sixty-day 'No Shop' exclusivity provision" (the "No Shop Provision"), which barred Generex from entering "into any financing transaction other than with existing shareholders" or with investors referred by AEXG. (Resp. 56.1 ¶¶ 14-15). The exclusivity period ran from February 8, 2017, to April 9, 2017. (*Id.*). If Generex breached the No Shop Provision, the Contract obligated Generex "to compensate [AEXG] as if [AEXG] had sourced the financing" itself. (*Id.* at ¶¶ 17-18). In that instance, Generex was required

---

[1] The facts stated herein are drawn from Petitioner's Local Rule 56.1 Statement of Material Facts Not in Dispute ("Pet. 56.1" (Dkt. #22)), and Respondent's Statement of Material Facts Pursuant to Local Civil Rule 56.1 ("Resp. 56.1" (Dkt. #26)), the latter of which comprises both responses to Petitioner's assertions of material facts not in dispute and material facts ostensibly in dispute. The Opinion also draws from the final arbitration award Petitioner seeks to confirm (the "Award" (Dkt. #1-1)).

Citations to the parties' Rule 56.1 Statements incorporate by reference the documents and deposition testimony cited therein. *See* Local Rule 56.1(d). Generally speaking, where facts stated in a party's Local Rule 56.1 Statement are supported by testimonial or documentary evidence, and denied with only a conclusory statement by the other party, the Court finds such facts to be true. *See* Local Rule 56.1(c), (d); *Biberaj* v. *Pritchard Indus., Inc.*, 859 F. Supp. 2d 549, 553 n.3 (S.D.N.Y. 2012) ("A nonmoving party's failure to respond to a Rule 56.1 statement permits the court to conclude that the facts asserted in the statement are uncontested and admissible." (internal quotation mark omitted) (quoting *T.Y.* v. *N.Y.C. Dep't of Educ.*, 584 F.3d 412, 418 (2d Cir. 2009))).

to pay AEXG damages, to include warrants for Generex stock in an amount "determined based on the amount of financing [Generex] received." (*Id.* at ¶¶ 17-21). The Contract also required the parties to resolve any disputes through arbitration. (*Id.* at ¶¶ 23, 24).

In March 2017, Generex allegedly breached the Contract by entering into a financial transaction with a party not referred to them by AEXG. (Resp. 56.1 ¶¶ 30-33). In consequence, on November 27, 2017, AEXG sent a Demand for Arbitration Letter to Generex, demanding that the parties submit their dispute to arbitration before the American Arbitration Association (the "AAA"). (*Id.* at ¶ 36). The AAA's International Centre for Dispute Resolution managed the arbitration proceedings, and the parties agreed that arbitrator Daniel F. Kolb would preside over the case. (Resp. 56.1 ¶¶ 39-40). An arbitration hearing was held on September 24, 2018 (the "Hearing"). (*Id.* at ¶ 47).

A few weeks after the Hearing, Generex announced that the company would issue a Stock Dividend (the "Dividend"). (Resp. 56.1 ¶ 52). The Dividend would result in the issuance of twenty shares of common stock for every one share of either issued or outstanding common stock. (*Id.*). The announcement included a statement explaining that any "options, warrants, and convertible securities" would be "proportionally adjusted to reflect the dividend." (*Id.* at ¶¶ 53-54). Generex did not include a price floor that options, warrants, or convertible securities had to be "at or above" in order to "receive the benefit of the proportional adjustment" of the Dividend. (*Id.* at ¶ 55).

On November 14, 2018, Generex announced that the "record date to participate in the Stock Dividend was extended to November 20, 2018 and the dividend payment date was set for Friday, November 30, 2018." (Resp. 56.1 ¶ 59). The stock market reflected the Dividend for the first time on December 3, 2018. (*Id.* at ¶ 79).

Since the Dividend announcement occurred after September 24, 2018, the parties were unable to introduce arguments at the Hearing concerning how the Dividend might impact the value of stock warrants owed to AEXG. (Resp. 56.1 ¶ 62). Instead, on November 2, 2018, AEXG submitted a letter to the Arbitrator that included Generex's announcements about the Dividend. *(Id.* at ¶¶ 63-64, 66). AEXG requested that the Arbitrator take the Dividend into account when determining the amount of warrants to issue in the Award. (*Id.*). It reasoned that had Generex not breached the Contract, AEXG would have been able to participate in the Dividend, and thus that the Award should account for the Dividend. (*Id.* at ¶ 67). Generex also submitted documents regarding the Dividend to the Arbitrator. (*Id.* at ¶ 68). Unsurprisingly, Generex opposed AEXG's position that any warrants owed should be increased according to the terms of the Dividend. (*Id.* at ¶¶ 69-70).

On December 3, 2018, the Arbitrator issued the Award. (Resp. 56.1 ¶ 92). He determined that Generex had violated the No Shop Provision by taking money from an investor not referred to it by AEXG. (Award 1-4). As a result, the Arbitrator issued four separate awards to AEXG, listed here for convenience:

4

- *First*, AEXG was awarded "$210,000 in liquidated damages." (*Id.* at 3).

- *Second*, AEXG was awarded "the economic value of 84,000 warrants convertible to [Generex]'s stock exercisable at $2.50 per share as of September 24, 2018." (*Id.*).

- *Third*, the Arbitrator determined that AEXG was "entitled to legal fees ... plus costs" under the terms of the Contract. (*Id.*).

- *Fourth*, AEXG was awarded "accrued simple interest running at 9% from March 28, 2017." (*Id.*).

### B. Procedural History

AEXG brought the instant petition to confirm the Award on December 11, 2018. (Dkt. #1). On January 7, 2019, Generex filed a motion to vacate, modify, or remand the Award. (Dkt. #15). AEXG filed papers in opposition to Generex's motion on January 22, 2019. (Dkt. #16).

In response to this Court's January 2, 2019 Order (Dkt. #12), AEXG filed a motion for summary judgment and supporting papers on February 4, 2019. (Dkt. #17-22). Generex filed papers in opposition to AEXG's motion for summary judgment, as well as its own cross-motion for summary judgment, on February 19, 2019. (Dkt. #24-26). AEXG filed papers in further support of its motion for summary judgment and in opposition to Generex's cross-motion for summary judgment on February 25, 2019. (Dkt. #27).

## DISCUSSION

### A. Judicial Review of Arbitration Awards

"Arbitration awards are not self-enforcing"; "they must be given force and effect by being converted to judicial orders by courts[.]" *Power Partners MasTec, LLC* v. *Premier Power Renewable Energy, Inc.*, No. 14 Civ. 8420 (WHP), 2015 WL 774714, at *1 (S.D.N.Y. Feb. 20, 2015) (quoting *D.H. Blair & Co.* v. *Gottdiener*, 462 F.3d 95, 104 (2d Cir. 2006)) (internal quotation marks omitted). The FAA "provides a streamlined process for a party seeking" to confirm, vacate, or modify an arbitration award. *Mason Tenders Dist. Council of Greater N.Y. & Long Island* v. *Adalex Grp., Inc.*, No. 13 Civ. 764 (PAE), 2013 WL 5322371, at *2 (S.D.N.Y. Sept. 23, 2013) (internal quotation marks and citation omitted). The Second Circuit has "repeatedly recognized the strong deference appropriately due arbitral awards and the arbitral process, and has limited its review of arbitration awards in obeisance to that process[.]" *Porzig* v. *Dresdner, Kleinwort, Benson, North Am. LLC*, 497 F.3d 133, 138 (2d Cir. 2007). This accords with the notion that "[t]he value of arbitration lies in its efficiency and cost-effectiveness as a process for resolving disputes outside the courts, and its tendency to foster a less acrimonious process." *Id.* at 139.

"To encourage and support the use of arbitration by consenting parties," the Court "uses an extremely deferential standard of review for arbitral awards." *Porzig*, 497 F.3d at 139. Indeed, "[n]ormally, confirmation of an arbitration award is 'a summary proceeding that merely makes what is already a final arbitration award a judgment of the court,'" and under the

Federal Arbitration Act, "the court 'must grant' the award 'unless the award is vacated, modified, or corrected.'" *D.H. Blair & Co., Inc.*, 462 F.3d at 110 (quoting *Florasynth, Inc.* v. *Pickholz*, 750 F.2d 171, 176 (2d Cir. 1984); 9 U.S.C. § 9).

An arbitration award may be remanded back to the Arbitrator for clarification if the "award is incomplete or ambiguous" and the court "is unable to discern how to enforce it." *Ottley* v. *Schwartzberg*, 819 F.2d 373, 376 (2d Cir. 1987) (citing *United Steel Workers* v. *Adbill Mgmt. Corp.*, 754 F.2d 138, 141 (3d Cir. 1985)); *Telenor Mobile Commc'ns AS* v. *Storm LLC*, 351 F. App'x 467, 469 (2d Cir. 2009) (summary order). An award is ambiguous "when the award is susceptible to more than one interpretation." *Gen. Re Life Corp.* v. *Lincoln Nat'l Life Ins. Co.*, 909 F.3d 544, 548-49 (2d Cir. 2018) (quoting *Sterling China Co.* v. *Glass, Molders, Pottery, Plastics & Allied Workers Local No. 24*, 357 F.3d 546, 554 (6th Cir. 2004); citing *Brown* v. *Witco Corp.*, 340 F.3d 209, 219 (5th Cir. 2003) ("An arbitrator can ... clarify or construe an arbitration award that seems complete but proves to be ambiguous in its scope and implementation.")).

Remand should not be granted where the court can resolve any alleged ambiguities in the award by modification. 9 U.S.C. § 11. In those circumstances, § 11(c) authorizes a district court to modify or correct an arbitration award "[w]here the award is imperfect in matter of form not affecting the merits of the controversy." *Fischer* v. *CGA Computer Assocs., Inc.*, 612 F. Supp. 1038, 1041 (S.D.N.Y. 1985) (internal quotation marks omitted).

7

**B. Analysis**

    **1. The Terms of the Second Award Are Ambiguous**

The Court's focus in this Opinion is on the Arbitrator's second award to AEXG (the "Second Award"), which granted AEXG "the economic value today [i.e., December 3, 2018] of 84,000 warrants convertible to [Generex]'s stock exercisable at $2.50 per share as of September 24, 2018." (Award 3). It is clear that the Arbitrator determined that Generex had violated the Contract, entitling AEXG to the economic value of 84,000 warrants. But the terms of the Second Award are ambiguous concerning how those warrants should be valued; three interpretations of the Arbitrator's statement can be discerned as a result of the Award's arguable imprecision in two respects. *First*, the Second Award does not make clear whether AEXG's warrants were meant to have been subject to the November 2018 Dividend. If the warrants were subject to the Dividend, the 84,000 warrants would become 1,764,000 warrants before the December 3, 2018 valuation date. *Second*, it is not obvious when, if ever, the Arbitrator intended that AEXG's warrants would have been converted to common stock before the December 3, 2018 valuation date; the Arbitrator only stated that the warrants were "convertible," not that they had been *converted*, on September 24, 2018. (*Id.*).

        **a. The First Interpretation Results in an Award with No Value**

The first possible interpretation of the Second Award assumes: (i) the Arbitrator did not intend for AEXG's 84,000 warrants to be subject to the November 2018 stock dividend; and (ii) the Arbitrator did not intend that the

8

84,000 warrants had been converted to stock before the December 3, 2018 valuation date. Thus, on December 3, 2018, the date the warrants' economic value was to be determined, AEXG would have held 84,000 warrants for Generex stock, exercisable at $2.50 per share. The value of the Generex common stock on December 3, 2018 was $1.99. (Resp. 56.1 ¶ 104). Since the stock price on December 3, 2018, was below the exercisable price, the economic value of the warrants would be zero. *See Remsen Funding Corp. of N.Y.* v. *Ocean W. Holding Corp.*, No. 06 Civ. 15265 (DLC), 2009 WL 874212, at *1 (S.D.N.Y. Mar. 31, 2009) (Under New York law, "it is appropriate to assess damages for breach of contract based on a failure to issue a warrant or a failure to honor a warrant by comparing the warrant's [exercisable] price to the market price of the stock on the date of attempted exercise." (citing *Hermanowski* v. *Acton Corp.*, 729 F.2d 921, 922 (2d Cir. 1984)). If the Arbitrator intended this interpretation, the economic value of the warrants would be zero dollars.

### b. The Second Interpretation Results in an Award with No Value

Alternatively, if the Second Award were to be interpreted as giving AEXG the benefit of the Dividend, it is unclear whether the Arbitrator intended for the warrants to have been converted to stock before the valuation date, and if so, when. The Award might reasonably be read to provide that the warrants, while "convertible" on September 24, 2018, were not actually converted. (Award 3). Under this second interpretation, AEXG would have had 84,000 unexercised warrants before the Dividend, and a total of 1,764,000 unexercised warrants

9

after the Dividend. But those 1,746,000 warrants, convertible to stock at $2.50, would still have been worthless on December 3, 2018, when the stock price was $1.99. Thus, this interpretation of the Second Award would yield a value of zero dollars.

### c. The Third Interpretation Results in an Award Worth $3,300,360

A third interpretation of the Second Award is also possible. By this interpretation, the Arbitrator intended for the warrants, which were "convertible" on September 24, 2018, to have actually been converted on that date. Converting the warrants on that date would have cost AEXG $210,000 (or 84,000 warrants multiplied by the $2.50 exercise price). AEXG would have possessed stock, not warrants, at the time of the Dividend and would have been granted twenty-one times as much stock as it had initially purchased on September 24, 2018, for a total of 1,764,000 shares. The value of that stock on December 3, 2018, would have totaled $3,300,360 (1,764,000 shares multiplied by the December 3, 2018 stock price of $1.99, less the initial exercise price of $210,000). Thus, the Second Award might have had an economic value of $3,300,360.

AEXG argues that this third interpretation of the Second Award is the only possible reading, and thus that a remand is unnecessary. (*See* Pet. Reply 3-4). According to AEXG, any other interpretation of the Second Award would render meaningless words within the award: "the economic value today [i.e. December 3, 2018] of 84,000 warrants convertible to [Generex]'s stock *exercisable at $2.50 per share as of September 24, 2018.*" (Award 3 (emphasis

10

added)). Had the warrants not actually been converted or exercised on September 24, 2018, AEXG posits, there would have been no reason to include the phrase "exercisable ... as of September 24, 2018." (Pet. Reply 3-4).

The Court is not persuaded that this is the only possible interpretation of the Arbitrator's words. Any argument that the Arbitrator included "September 24, 2018" to set the date on which the warrants had been converted is undermined by the fact that the Arbitrator said the warrants were "convertible" and "exercisable" as of that date, rather than "converted" or "exercised." Nor would it be necessarily unreasonable for the Arbitrator to determine that the warrants were without economic value. The Contract entitled AEXG to warrants in the event of a breach, but warrants do not have inherent value. *See Remsen Funding Corp. of N.Y.*, 2009 WL 874212, at *1 (providing a formula by which to value warrants that allows for valueless warrants). If the exercise price were higher than the stock price on a given exercise date, a warrant will be worthless. Due to conflicting indications of which exercise date the Arbitrator intended to use to value the warrants, the Court is unable to resolve the ambiguity present in the Second Award.

### 2. Generex's Motion to Remand the Case Back to the Arbitrator for Clarification Is Granted

As just explained, there are several possible interpretations of the Second Award, and these interpretations yield very different outcomes for the parties. The Court is thus unable to modify the Second Award pursuant to 9 U.S.C. § 11 to resolve its ambiguity; doing so would certainly "affect[ ] the merits of the controversy," since one interpretation would grant AEXG a substantial

11

monetary award and the other two would give it nothing. *Fischer* v. *CGA Computer Assocs., Inc.*, 612 F. Supp. 1038, 1041 (S.D.N.Y. 1985) (internal quotations and citation omitted). Therefore, "[t]he more prudent course" is for the Court to remand the case back to the Arbitrator to clarify the terms of the Award. *Hyle* v. *Doctor's Assocs., Inc.*, 198 F.3d 368, 371 (2d Cir. 1999).

The Court requests that the Arbitrator limit his clarification to the terms of the Second Award only — that is, to the dollar amount the Arbitrator intended to award AEXG when he stated: "I award Claimant … the economic value today of 84,000 warrants convertible to [Generex]'s stock exercisable at $2.50 per share as of September 24, 2018."[2] Once the Arbitrator provides clarification, the parties may re-file their respective motions in this Court to confirm, vacate, or modify the terms of the Award.

## CONCLUSION

For the foregoing reasons, AEXG's motion and Generex's cross-motion for summary judgment are each DENIED. Generex's motion to vacate, modify, or remand is GRANTED to the extent it sought remand of the arbitration award to the Arbitrator for clarification.

The Clerk of Court is directed to terminate the motions at docket entries 15, 17, and 25. The case shall remain stayed pending receipt of clarification

---

[2] For the sake of clarity, the Court notes that the Arbitrator is not required to "state [his] reasons" for clarification, "but only to explain [his] indefinite, incomplete, and ambiguous award in a way sufficient to allow effective judicial review." *Rich* v. *Spartis*, 516 F.3d 75, 83 (2d Cir. 2008). The "arbitrator is 'limited in his review to the specific matter remanded for clarification and may not rehear or redetermine those matters not in question.'" *LLT Int'l, Inc.* v. *MCI Telecommunications Corp.*, 69 F. Supp. 2d 510, 515 (S.D.N.Y. 1999) (citing *La Reunion Francaise* v. *Martin*, No. 93 Civ. 7165 (MBM), 1995 WL 338291, at *2 (S.D.N.Y. May 31, 1995)).

12

from the Arbitrator. The parties are ORDERED to submit a joint letter within two weeks of any substantive decision of the Arbitrator.

SO ORDERED.

Dated: July 31, 2019
New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge