UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

THREE BROTHERS TRADING, LLC,

                              Petitioner,

                  -v.-

GENEREX BIOTECHNOLOGY CORP.,

                              Respondent.

18 Civ. 11585 (KPF)

**OPINION AND ORDER**

---

KATHERINE POLK FAILLA, District Judge:

As a wise man once remarked, it's like déjà vu all over again.  Less than
two years ago, Three Brothers Trading, LLC d/b/a Alternative Execution Group
("AEXG" or "Petitioner") and Generex Biotechnology Corporation ("Generex" or
"Respondent") participated in an arbitration proceeding, after which the
arbitrator (the "Arbitrator") issued an award in favor of AEXG (the "Award").
AEXG and Generex filed cross-petitions under the Federal Arbitration Act (the
"FAA"), 9 U.S.C. §§ 1-14, asking this Court to confirm the Award and to vacate,
modify, or remand the Award for clarification, respectively.  In an Opinion
issued on July 31, 2019, the Court remanded the Award to the Arbitrator for
clarification.  *See Three Brothers Trading, LLC* v. *Generex Biotechnology Corp.*,
No. 18 Civ. 11585 (KPF), 2019 WL 3456631, at *4 (S.D.N.Y. July 31, 2019)
("*AEXG I*").

On August 28, 2019, the Arbitrator issued his clarification.  In response,
AEXG filed an amended petition, asking the Court to confirm in part and
vacate in part the Award.  Generex filed a cross-petition, seeking to have the
Award vacated and/or modified.  The parties then filed cross-motions for

summary judgment reiterating these requests for relief.  For the reasons set forth below, AEXG's motion to confirm in part and vacate in part is granted, and Generex's cross-motion is denied.

### BACKGROUND[1]

#### A.   Factual Background

##### 1.   The Parties' Contract, Dispute, Arbitration, and Award

For the sake of completeness, the Court first reviews the factual background that led to *AEXG I*, before discussing what has transpired since that decision was issued.  This case arose from Generex's alleged breach of a Memorandum of Understanding with AEXG (the "Contract") entered into in February 2017.  (Resp. 56.1 ¶ 7).  In brief, the Contract provided that AEXG

---

[1]     The facts stated herein are drawn from Petitioner's Local Rule 56.1 Statement of Material Facts Not in Dispute ("Pet. 56.1" (Dkt. #54)), and Respondent's Statement of Material Facts Pursuant to Local Civil Rule 56.1 ("Resp. 56.1" (Dkt. #57)), the latter of which comprises both responses to Petitioner's assertions of material facts not in dispute and material facts ostensibly in dispute.  The Opinion also draws from the final arbitration award issued on December 3, 2018 (the "Award" (Dkt. #1-1)), and from the clarification of the Award issued on August 28, 2019 (the "Clarification" (Dkt. #30-1)).

For ease of reference, AEXG's Amended Petition is referred to as "Am. Pet." (Dkt. #36); Generex's Amended Cross-Petition as "Am. Cross-Pet." (Dkt. #45); AEXG's Memorandum of Law in Support of Its Second Motion for Summary Judgment as "Pet. Br." (Dkt. #50); Generex's Memorandum of Law in Opposition to AEXG's Second Motion for Summary Judgment and in Support of Its Second Motion for Summary Judgment as "Resp. Br." (Dkt. #58); AEXG's Memorandum of Law in in Opposition to Generex's Second Motion for Summary Judgment and in Further Support of Its Second Motion for Summary Judgment as "Pet. Reply;" (Dkt. #63); and Generex's Memorandum of Law in Further Support of Its Second Motion for Summary Judgment as "Resp. Reply" (Dkt. #66).

Citations to the parties' Rule 56.1 Statements incorporate by reference the documents and deposition testimony cited therein.  *See* Local Rule 56.1(d).  Generally speaking, where facts stated in a party's Local Rule 56.1 Statement are supported by testimonial or documentary evidence, and denied with only a conclusory statement by the other party, the Court finds such facts to be true.  *See* Local Rule 56.1(c), (d); *Biberaj* v. *Pritchard Indus., Inc.*, 859 F. Supp. 2d 549, 553 n.3 (S.D.N.Y. 2012) ("A nonmoving party's failure to respond to a Rule 56.1 statement permits the court to conclude that the facts asserted in the statement are uncontested and admissible." (internal quotation mark omitted) (quoting *T.Y.* v. *N.Y.C. Dep't of Educ.*, 584 F.3d 412, 418 (2d Cir. 2009))).

would secure investors for Generex's business and, in exchange, Generex would pay AEXG a percentage of the funds received by any investor AEXG had referred.  (*Id.* at ¶¶ 8-9).

The Contract included a "sixty-day 'No Shop' exclusivity provision" (the "No Shop Provision"), which barred Generex from entering "into any financing transaction other than with existing shareholders" or with investors referred by AEXG.  (Resp. 56.1 ¶¶ 14-15).  The exclusivity period ran from February 8, 2017, to April 9, 2017.  (*Id.*).  If Generex breached the No Shop Provision, the Contract obligated Generex "to compensate [AEXG] as if [AEXG] had sourced the financing" itself.  (*Id.* at ¶¶ 17-18).  In that instance, Generex was required to pay AEXG damages, to include warrants for Generex stock in an amount "determined based on the amount of financing [Generex] received."  (*Id.* at ¶¶ 17-21).  The Contract also required the parties to resolve any disputes through arbitration.  (*Id.* at ¶¶ 23, 24).

In March 2017, Generex allegedly breached the Contract by entering into a financial transaction with a party not referred to them by AEXG.  (Resp. 56.1 ¶¶ 30-33).  In consequence, on November 27, 2017, AEXG sent a Demand for Arbitration Letter to Generex, demanding that the parties submit their dispute to arbitration before the American Arbitration Association (the "AAA").  (*Id.* at ¶ 36).  In the demand, AEXG requested "$210,000, along with 84,000 warrants convertible to Generex common stock, exercisable at $2.50 per share, plus accrued simple interest running at New York's statutory rate of 9% from March 28, 2017, along with attorneys' fees, costs, and expenses.  (*Id.* at ¶ 37).

The AAA's International Centre for Dispute Resolution managed the arbitration proceedings, and the parties agreed that arbitrator Daniel F. Kolb would preside over the case. (*Id.* at ¶¶ 39-40). An arbitration hearing was held on September 24, 2018 (the "Hearing"). (*Id.* at ¶ 47).

A few weeks after the Hearing, Generex announced that the company would issue a stock dividend (the "Dividend"). (Resp. 56.1 ¶ 52). The Dividend would result in the issuance of twenty shares of common stock for every one share of either issued or outstanding common stock. (*Id.*). The announcement included a statement explaining that any "options, warrants, and convertible securities" would be "proportionally adjusted to reflect the dividend." (*Id.* at ¶¶ 53-54). Generex did not include a price floor that options, warrants, or convertible securities had to be "at or above" in order to "receive the benefit of the proportional adjustment" of the Dividend. (*Id.* at ¶ 55).

On November 14, 2018, Generex announced that the "record date to participate in the Stock Dividend was extended to November 20, 2018 and the dividend payment date was set for Friday, November 30, 2018." (Resp. 56.1 ¶¶ 59, 60). The stock market reflected the Dividend for the first time on December 3, 2018. (*Id.* at ¶ 79).

Since the announcement of the Dividend occurred after September 24, 2018, the parties were unable to introduce arguments at the Hearing concerning how the Dividend might impact the value of stock warrants owed to AEXG. (Resp. 56.1 ¶ 62). Instead, on November 2, 2018, AEXG submitted a letter to the Arbitrator that included Generex's announcements about the

Dividend.  (*Id.* at ¶¶ 63-64, 66).  AEXG requested that the Arbitrator take the Dividend into account when determining the amount of warrants to issue in the Award.  (*Id.*).  It reasoned that had Generex not breached the Contract, AEXG would have been able to participate in the Dividend, and thus that the Award should account for the Dividend.  (*Id.* at ¶ 67).  Generex also submitted documents regarding the Dividend to the Arbitrator.  (*Id.* at ¶ 68).  Unsurprisingly, Generex opposed AEXG's position that any warrants owed should be increased according to the terms of the Dividend.  (*Id.* at ¶¶ 69-70).

On December 3, 2018, the Arbitrator issued the Award.  (Resp. 56.1 ¶ 92).  He determined that Generex had violated the No Shop Provision by taking money from an investor not referred to it by AEXG.  (Award 1-4).  As a result, the Arbitrator issued four separate awards to AEXG, listed here for convenience along with the costs assessed on the parties:

- *First*, AEXG was awarded "$210,000 in liquidated damages." (*Id.* at 3).

- *Second*, AEXG was awarded "the economic value today of 84,000 warrants convertible to [Generex]'s stock exercisable at $2.50 per share as of September 24, 2018 [hereinafter, the 'Second Award']." (*Id.*).

- *Third*, AEXG was awarded "accrued simple interest running at 9% from March 28, 2017" on the liquidated damages and the economic value of the warrants awarded. (*Id.*).

- *Fourth*, the Arbitrator determined that AEXG was "entitled to legal fees … plus costs" under the terms of the Contract. (*Id.*).

- *Fifth*, the Arbitrator determined that AEXG and Generex would share the administrative costs of the arbitration,

which would require Generex to reimburse AEXG $3,312.50.

## 2.   The July 31, 2019 Opinion and the Arbitrator's Clarification

To resolve the parties' first set of cross-motions, the Court issued *AEXG I* on July 31, 2019, wherein it determined that the Second Award, which granted AEXG "the economic value today of 84,000 warrants convertible to [Generex]'s stock exercisable at $2.50 per share as of September 24, 2018," was ambiguous and susceptible to multiple reasonable interpretations:

> [T]he terms of the Second Award are ambiguous concerning how those warrants should be valued; three interpretations of the Arbitrator's statement can be discerned as a result of the Award's arguable imprecision in two respects.  *First*, the Second Award does not make clear whether AEXG's warrants were meant to have been subject to the November 2018 Dividend.  If the warrants were subject to the Dividend, the 84,000 warrants would become 1,764,000 warrants before the December 3, 2018 valuation date.  *Second*, it is not obvious when, if ever, the Arbitrator intended that AEXG's warrants would have been converted to common stock before the December 3, 2018 valuation date; the Arbitrator only stated that the warrants were "convertible," not that they had been converted, on September 24, 2018.

*AEXG I*, 2019 WL 3456631, at *4.  In consequence, the Court remanded the case to the Arbitrator to clarify the dollar amount he intended to grant AEXG in the Second Award.

On August 28, 2019, the Arbitrator issued a response to the Court's Opinion that clarified, in relevant part:

> Especially because the announcement of the dividend came after the Arbitration Hearing and before the date of the Award, the evidence in the Arbitration record that could bear on calculation of the value of the warrants

> was not complete. Because the evidence was not complete, I entered no findings as to the value of the warrants as of the December 3 date....
>
> Because I in fact reached no conclusions as to those matters due to the lack of evidence, I intended no more than that [AEXG] be paid the economic value of the warrants with the determination of the value to be made, if at all, on a more complete record than I had.
>
> While I did not consider the evidence provided in the Arbitration record to be sufficient because events that could affect the value of the warrants occurred after the Hearing but before I issued the Award, I did not know whether post hearing evidence would exist from which their value could be determined. I, therefore, did not think it would be appropriate to conclude as to their value as of December 3 simply based on lack of evidence in the Arbitration record.

(Clarification 1-2). The Arbitrator specifically did not reach a conclusion as to whether the warrants were subject to the Dividend or when they would have been converted to stock. (*Id.*).

## B.   Procedural Background

As noted, AEXG brought its initial petition to confirm the Award on December 11, 2018. (Dkt. #1). On January 7, 2019, Generex filed a motion to vacate, modify, or remand the Award. (Dkt. #15). AEXG filed papers in opposition to Generex's motion on January 22, 2019. (Dkt. #16). The Court ordered the parties to file cross-motions for summary judgment on January 2, 2019 (Dkt. #12), and those motions were fully briefed on February 25, 2019. (Dkt. #17-22, 24-26, 27).

The Court issued *AEXG I* remanding the case to the Arbitrator for clarification on July 31, 2019. (Dkt. #29). The Arbitrator issued the

Clarification on August 28, 2019, and the parties notified the Court of the Clarification on September 11, 2019.  (Dkt. #30).  The Court granted AEXG permission to file an amended petition on October 22, 2019 (Dkt. #42 (transcript of proceedings)), and set a briefing schedule concerning the parties' anticipated cross-petitions and cross-motions for summary judgment on October 30, 2019 (Dkt. #40).

On October 22, AEXG filed its Amended Petition to confirm in part and vacate in part the Award.  (Dkt. #36).  Generex filed its opposition to AEXG's Amended Petition, as well as its own petition to vacate and/or modify the Award on November 13, 2019.  (Dkt. #44, 45).  AEXG filed its motion for summary judgment and supporting papers on December 13, 2019.  (Dkt. #48-55).  Generex filed papers in opposition to AEXG's motion for summary judgment, as well as its own cross-motion for summary judgment, on January 13, 2020.  (Dkt. #57-60).  AEXG filed papers in further support of its motion for summary judgment and in opposition to Generex's cross-motion for summary judgment on January 27, 2020.  (Dkt. #62, 63).  The motions were fully briefed when Generex filed a brief in further support of its cross-motion for summary judgment on February 7, 2020.  (Dkt. #66).

## DISCUSSION

### A.   Applicable Law

"Arbitration awards are not self-enforcing"; "they must be given force and effect by being converted to judicial orders by courts[.]"  *Power Partners MasTec, LLC* v. *Premier Power Renewable Energy, Inc.*, No. 14 Civ. 8420 (WHP),

2015 WL 774714, at *1 (S.D.N.Y. Feb. 20, 2015) (quoting *D.H. Blair & Co.* v. *Gottdiener*, 462 F.3d 95, 104 (2d Cir. 2006)) (internal quotation marks omitted). The FAA "provides a streamlined process for a party seeking" to confirm, vacate, or modify an arbitration award. *Mason Tenders Dist. Council of Greater N.Y. & Long Island* v. *Adalex Grp., Inc.*, No. 13 Civ. 764 (PAE), 2013 WL 5322371, at *2 (S.D.N.Y. Sept. 23, 2013) (internal quotation marks and citation omitted). The Second Circuit has "repeatedly recognized the strong deference appropriately due arbitral awards and the arbitral process, and has limited its review of arbitration awards in obeisance to that process[.]" *Porzig* v. *Dresdner, Kleinwort, Benson, North Am. LLC*, 497 F.3d 133, 138 (2d Cir. 2007). This accords with the notion that "[t]he value of arbitration lies in its efficiency and cost-effectiveness as a process for resolving disputes outside the courts, and its tendency to foster a less acrimonious process." *Id.* at 139; *see also Duferco Int'l Steel Trading* v. *T. Klaveness Shipping A/S*, 333 F.3d 383, 388 (2d Cir. 2003) ("It is well established that courts must grant an arbitration panel's decision great deference."); *Folkways Music Publishers, Inc.* v. *Weiss*, 989 F.2d 108, 111 (2d Cir. 1993) ("Arbitration awards are subject to very limited review in order to avoid undermining the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation.").

"To encourage and support the use of arbitration by consenting parties," the Court "uses an extremely deferential standard of review for arbitral awards." *Porzig*, 497 F.3d at 139. In reviewing arbitration awards under § 10(a) of the FAA, a court "will uphold an award so long as the arbitrator

'offers a barely colorable justification for the outcome reached.'" *Jock* v. *Sterling Jewelers Inc.*, 646 F.3d 113, 122 (2d Cir. 2011) (quoting *ReliaStar Life Ins. Co. of N.Y.* v. *EMC Nat. Life Co.*, 564 F.3d 81, 86 (2d Cir. 2009)). "It is not enough ... to show that the panel committed an error — or even a serious error. It is only when an arbitrator strays from interpretation and application of the agreement and effectively dispenses his own brand of industrial justice that his decision may be unenforceable." *Stolt-Nielsen S.A.* v. *AnimalFeeds Int'l Corp.*, 559 U.S. 662, 671 (2010) (internal citations and quotation marks omitted). "In other words, as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, a court's conviction that the arbitrator has committed serious error in resolving the disputed issue does not suffice to overturn his decision." *Jock,* 646 F.3d at 122 (quoting *ReliaStar,* 564 F.3d at 86).

"Normally, confirmation of an arbitration award is 'a summary proceeding that merely makes what is already a final arbitration award a judgment of the court,'" and under the FAA, "the court 'must grant' the award 'unless the award is vacated, modified, or corrected.'" *D.H. Blair & Co., Inc.*, 462 F.3d at 110 (quoting *Florasynth, Inc.* v. *Pickholz*, 750 F.2d 171, 176 (2d Cir. 1984); 9 U.S.C. § 9). Section 10 of the FAA provides four grounds for vacating an arbitration award:

> [i] where the award was procured by corruption, fraud, or undue means;
>
> [ii] where there was evident partiality or corruption in the arbitrators, or either of them;

> [iii] where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
>
> [iv] where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a)(1)-(4).  In addition to its power under 9 U.S.C. § 10, a federal court may also vacate an arbitration award that was issued in manifest disregard of the law.  *Halligan* v. *Piper Jaffray, Inc.,* 148 F.3d 197, 202 (2d Cir. 1998); *see also Weiss* v. *Sallie Mae, Inc.*, 939 F.3d 105, 109 (2d Cir. 2019) (discussing but not resolving whether the "manifest disregard" paradigm is an independent ground for judicial review or a "judicial gloss" on the enumerated grounds in § 10(a)).  The party moving to vacate an award "bears the heavy burden of showing that the award falls within a very narrow set of circumstances delineated by statute and case law."  *Wallace* v. *Buttar*, 378 F.3d 182, 189 (2d Cir. 2004) (citation omitted); *see also Kolel Beth Yechiel Mechil of Tartikov, Inc.* v. *YLL Irrevocable Tr.*, 729 F.3d 99, 103-04 (2d Cir. 2013) ("[T]he burden of proof necessary to avoid confirmation of an arbitration award is very high, and a district court will enforce the award as long as 'there is a barely colorable justification for the outcome reached.'" (quoting *Rich* v. *Spartis*, 516 F.3d 75, 81 (2d Cir. 2008))).

Following a whole or partial vacatur, the Court may remand the case to the arbitrator.  *See* 9 U.S.C. § 10(b) ("If an award is vacated and the time within

which the agreement required the award to be made has not expired, the court may, in its discretion, direct a rehearing by the arbitrators."); *see also Tully Const. Co./A.J. Pegno Const. Co., J.V.* v. *Canam Steel Corp.*, No. 13 Civ. 3037 (PGG), 2015 WL 906128, at *19 (S.D.N.Y. Mar. 2, 2015) (remanding award to arbitrator after vacatur); *see also Cannelton Industries, Inc.* v. *District 17, United Mine Workers,* 951 F.2d 591, 594 (4th Cir. 1991) ("A court's power to vacate an award because of an arbitrator's failure to address a crucial issue necessarily includes a lesser power to remand the case to the same arbitrator for a determination of that issue.").

## B.    Analysis

In its current motion, AEXG argues that the Second Award must be vacated pursuant to § 10(a)(4), because it is not a mutual, final, and definite award addressing the issue of warrants.  But AEXG urges the Court to confirm the other provisions of the Award.  In its current cross-motion, Generex argues against vacatur of the Second Award, and instead urges the Court to find that the Second Award is worth zero dollars.  Generex also argues that: (i) the interest awarded to AEXG by the Arbitrator was excessive and should be modified; and (ii) AEXG has failed to establish the reasonableness of the attorneys' fees and costs sought.

The Court begins with the issue that is at once the most complicated and the most disputed:  whether the Second Award should be vacated and remanded to the Arbitrator.  For the reasons that follow, the Court concludes that this portion of the Award must be vacated and remanded.  But because

the other portions of the Award are severable, independent — and, indeed,
reasonable — the Court confirms the remainder of the Award.

### 1. The Second Award Is Not a Mutual, Final, and Definite Resolution of an Issue Submitted to the Arbitrator and Must Be Vacated and Remanded

Courts in this District have long held that an award "is mutual, definite
and final if it resolves all issues submitted to arbitration and determines each
issue fully so that no further litigation is necessary to finalize the obligations of
the parties." *Clarendon Nat'l Ins. Co.* v. *TIG Reins. Co.*, 990 F. Supp. 304, 311
(S.D.N.Y. 1998) (quoting *ConnTech Dev. Co.* v. *Univ. of Conn. Educ. Props., Inc.*,
102 F.3d 677, 686 (2d Cir. 1996)); *see also Pasha* v. *Janseshki*, 597 F. App'x
25, 26 (2d Cir. 2015) (summary order) (acknowledging that "an arbitration
award is final if it resolves all issues submitted to arbitration, and determines
each issue fully so that no further litigation is necessary to finalize the
obligations of the parties," but cautioning that this principle does not apply to
issues that might arise in subsequent litigation that were not submitted to the
arbitrator).

By this well-accepted metric, and when read through the lens of the
Clarification, the Second Award lacks finality.[2]  The issue of warrants was

---

[2]     Generex argues that AEXG should be estopped from arguing that the Award is not final,
because it had previously sought to confirm the Award.  (Resp. Br. 8-9 (*citing Kubin* v.
*Muller*, 801 F. Supp. 1101, 1111 (S.D.N.Y. 1992) ("[T]he doctrine of estoppel against
inconsistent pleadings precludes a party from framing his pleadings in a manner
inconsistent with a position taken in a prior proceeding))).  The Court does not find
AEXG's positions in its first and amended petitions to be inconsistent.  In its first
petition, AEXG argued that the Arbitrator had issued a final decision that decided the
economic value of the warrants awarded.  It was only after the Arbitrator issued the
Clarification, announcing that he had not intended to assign a dollar value to the
economic value of the warrants, that AEXG argued that the Award was not final.  The
Clarification thus changed the circumstances in a way that neither the parties nor the

squarely before the Arbitrator.  And the Arbitrator plainly determined that
(i) Generex was liable for having violated the Contract; and (ii) AEXG was
entitled to damages in the form of "the economic value today of 84,000
warrants convertible to [Generex]'s stock exercisable at $2.50 per share as of
September 24, 2018."  (Award 3).  But when given the opportunity to clarify the
economic value of the warrants awarded to Generex, the Arbitrator expressly
stated that he did not reach any conclusion as to that issue, principally
because of the post-hearing announcement of the Dividend.  (*See generally*
Clarification).[3]  If the Court were to affirm the Second Award as it stands, it
would undoubtedly result in further litigation to determine the economic value
of the warrants as described.

     While the specific facts of this case — in which the Arbitrator effectively
confirmed that he did not intend to impose a full and final award — may be
unique, analogous cases have been addressed in this District.  In *Clarendon
National Insurance Co.* v. *TIG Reinsurance Co.*, the court found that a portion of
an award had to be vacated and remanded to an arbitration panel because,
though the panel had found one party to be liable, it had not decided the
amount of damages owed.  994 F. Supp. at 311.  Similarly in *Tully*, a court in
this District found that an award had to be vacated and remanded pursuant to

---

     Court had anticipated.  (*See generally* Dkt. #42 (transcript of proceedings) (expressing
surprise that the Arbitrator intended not to decide the economic value of the warrants)).
AEXG is not estopped from changing its position in response to the change in
circumstances.

[3]    The Arbitrator's clarity on this point — that he "entered no findings as to the value of
the warrants" — belies Generex's easily dismissed argument that the Second Award is
final and awarded AEXG zero dollars.  (Resp. Br. 9; Resp. Reply 5).

§ 10(a)(4) because an arbitrator had exceeded his powers.  2015 WL 906128, at *11-20.  Adopting the analyses employed in these cases, AEXG moves to have the Second Award vacated and remanded to the Arbitrator, so that a final award may be issued.

Generex presents a host of arguments against vacatur and remand of the Second Award, which arguments fall into one of three general categories: (i) the Second Award should not be vacated because it is final; (ii) the case cannot be remanded; (iii) if the Second Award is not final, it should be modified such that it sets the economic value of the warrants at zero dollars.  (Resp. Br. 8-20).  The Court addresses each of these categories in turn, and finds that each lacks merit.

### a.    The Second Award Is Not Final

*First*, Generex claims that the award is, in fact, final, and thus is not a candidate for vacatur pursuant to § 10(a)(4).  (Resp. Br. 11-12).  In support of this argument, Generex cites to *Smart* v. *International Brotherhood of Electrical Workers, Local 702*, 315 F.3d 721 (7th Cir. 2002), for the proposition that an award need not set exact damages in order to be final.  (*Id.*).  The Court does not disagree with that premise, so far as it goes.  It is well established that the parties can choose which issues to submit to arbitration, and that an arbitrator need not decide issues not submitted.  *See Trade & Transport, Inc.* v. *Nat'l Petroleum Charterers, Inc.*, 931 F.2d 191, 195 (2d Cir. 1991) ("[T]he submission by the parties determines the scope of the arbitrators' authority.  Thus, if the parties agree that the panel is to make a final decision as to part of the dispute,

15

the arbitrators have the authority and responsibility to do so." (internal citation omitted)).  Indeed, where parties elect to bifurcate the arbitral proceedings such that liability is determined before damages are addressed, a decision by the arbitrator deciding liability alone is final as to that issue.  *See Andrea Doreen, Ltd.* v. *Bldg. Material Local Union 282*, 250 F. Supp. 2d 107, 112, 115 (E.D.N.Y. 2003) (finding an award that determined liability, but not the appropriate remedy, was final, where the parties had agreed to bifurcate the proceedings). This is precisely the situation that was addressed in *Smart*:  The parties had submitted to the arbitration panel the issue of whether the respondent owed the petitioner money, and did not ask the panel to determine how much was owed.  315 F.3d at 726.  Thus, the panel "had finished [its] assignment … even if all it did was determine liability, leaving thorny remedial issues for future determination."  *Id.*[4]

Here, however, the parties did not request that their dispute be bifurcated, nor did they submit to arbitration the limited question of whether Generex violated the Contract.  AEXG's demand for arbitration alleged not only that Generex violated the Contract, but also that AEXG was entitled to certain damages, including warrants, as a result of Generex's breach of contract.

---

[4]    Generex also quotes *Smart* v. *International Brotherhood of Electrical Workers, Local 702*, for the proposition that "[o]ne thing is clear, however: if the arbitrator himself thinks he's through with the case, then his award is final and appealable."  315 F.3d 721, 725 (7th Cir. 2002).  That sentence of *Smart* addressed when an award is final for purposes of appellate jurisdiction, and not when an award is final pursuant to 9 U.S.C. § 10(a)(4).  *Smart* fully embraces the idea that an "arbitration award [may be] incomplete in the sense that the arbitrators did not complete their assignment (though they thought they had)[.]"  *Id.*

(Resp. 56.1 ¶¶ 30-33).[5]  Given this, the Arbitrator had the "authority and responsibility" to decide fully the issue of AEXG's entitlement to warrants. *Trade & Transp., Inc.*, 931 F.2d at 195.  The Arbitrator, in turn, understood that he was tasked with resolving liability and damages; he found both that Generex violated the Contract and that Generex was entitled to, amongst other relief, $210,000 in liquidated damages.  (Award 3).  But, because of post-hearing evidentiary developments, the Arbitrator did not fully and finally determine the amount of damages owed to AEXG in the form of the economic value of the warrants.[6]  Thus, this case is not similar to *Smart* or to those cases

---

[5]     The Arbitrator decided to award AEXG the "economic value" of the warrants, rather than the warrants themselves.  (*See generally* Award).  There "is no [] *per se* rule that it is beyond the authority of the arbitrators to issue a remedy directed to an issue squarely before them unless it was requested by one of the parties."  *Harper Ins. Ltd.* v. *Century Indem. Co.*, 819 F. Supp. 2d 270, 277 (S.D.N.Y. 2011); *see also Chelsea Grand, LLC* v. *N.Y. Hotel & Motel Trades Council*, 729 F. App'x 33, 39 (2d Cir. 2018) (summary order).  However, in deciding to grant a remedy other than the one requested by the petitioner, an arbitrator does not escape the requirement that the remedy be sufficiently final such that "no further litigation is necessary to finalize the obligations of the parties.'"  *Clarendon Nat'l Ins. Co.* v. *TIG Reins. Co.*, 990 F. Supp. 304, 311 (S.D.N.Y. 1998) (quoting *ConnTech Dev. Co.* v. *Univ. of Conn. Educ. Props., Inc.*, 102 F.3d 677, 686 (2d Cir. 1996)).

[6]     Certain arguments advanced by Generex address what the economic value of the warrants *should* be set at, rather than whether the Second Award itself conclusively determined that issue.  For instance, Generex argues that, because "no warrants were issued pursuant to the [D]ividend," AEXG's warrants would not have been subject to the Dividend.  (Resp. Br. 14).  But this argument fails to grapple with the fact that, when announcing the Dividend, Generex stated that any "options, warrants, and convertible securities" would be "proportionally adjusted to reflect the dividend."  (Resp. 56.1 ¶¶ 53-54).  Nor does it address the Arbitrator's statement that he "reached no conclusion one way or the other as to whether the Warrants were subject to the November 2018 dividend."  (Clarification 2).  The Court is not in a position to determine the proper valuation of the warrants.  Rather, the Court may determine only whether the Arbitrator decided that issue.  Accordingly, the Court does not address Generex's arguments concerning the appropriate valuation of the warrants.  By this same token, the Court does not address AEXG's arguments that the Dividend was a scheme developed by Generex with the express purpose of lowering the value of the warrants owed to AEXG.  (Pet. Br. 11-13).

addressing bifurcated arbitration.  Given this, the Second Award is not mutual, final, and definite.

### b.    The Second Award Can Be Remanded

*Second*, Generex claims that, whether the Second Award is final or not, it cannot be remanded to the Arbitrator.  Generex's chief argument on this point sounds in waiver:  Because AEXG did not submit sufficient evidence to the Arbitrator to determine the economic value of the warrants, failed to move for an additional hearing after the Dividend was announced, and failed to request that the Arbitrator correct the Award immediately after it was issued, AEXG has waived its right to ask for a rehearing now.  (Resp. Br. 17-19).  In support, Generex relies principally on two cases:  *Ace American Insurance Co.* v. *Christiana Insurance LLC*, No. 11 Civ. 8862 (ALC), 2012 WL 1232972 (S.D.N.Y. Apr. 12, 2012), and *In re Arbitration between Carina International Shipping Corp. and Adam Maritime Corp.*, 961 F. Supp. 559 (S.D.N.Y. 1997).

The fact patterns of *Ace American Insurance* and *Carina International Shipping* bear some superficial similarities to the one at issue here.  In *Ace American Insurance*, an arbitration panel had issued a decision leaving "the parties where they found them, since [the petitioner] failed to sustain its burden of proof that its losses from Hurricane Ike exceeded $250 million and the [respondents] failed to sustain their burden of proving the amount of the loss was less than $250 million."  2012 WL 1232972, at *2.  The petitioner moved the court to vacate that portion of the award because it applied "an unspecified and improper burden of proof standard."  *Id.* at *4.  The court

declined to do so, finding that the arbitration panel was arguably acting within the scope of its authority. *Id.* Generex argues that the court in *Ace American Insurance* concluded that "the [panel] had decided all matters presented to it and was within its authority to render a decision to that did not award a specific amount of damages," and that this Court should reach the same conclusion here. (Resp. Br. 18).

In *Carina International Shipping,* the petitioner made a last-minute amendment to add a new claim to the arbitration proceeding. 961 F. Supp. at 564-65. The respondent did not enter any evidence as to the new claim, instead arguing that it was untimely. *Id.* The arbitration panel entered an award for the petitioner, which included damages on the late-added claim. *Id.* The respondent moved to vacate and remand that portion of the award, arguing that the panel's decision to permit the new claim without re-opening hearings for further discovery constituted misconduct under 9 U.S.C. § 10(a)(3). *Id.* at 566-67. The court found that respondent could have sought further hearings and discovery at the time the new claim was added, and "waived the right to argue that the awarding panel committed misconduct under § 10(a)(3) by not re-opening the evidentiary hearings." *Id.* at 567.

Had the Arbitrator here determined that the economic value of the warrants was zero dollars because AEXG had either (i) failed to meet its burden of proof to establish the value of the warrants or (ii) failed to move for a rehearing and the reopening of evidence after the Dividend was announced, the decisions in *Ace American Insurance* and *Carina International Shipping* would

have greater relevance.[7]  In either of those factual situations, Generex would have a strong argument that AEXG had waived its right to challenge such findings and should be precluded from seeking a rehearing.[8]

But the Arbitrator did not make either of those findings.  Instead, he found that AEXG was entitled to the economic value of the warrants without determining the value of those warrants and, crucially, without stating that AEXG had failed in some important respect at arbitration that made necessary a zero-dollar valuation of the warrants.  (Clarification 1-2).[9]  Thus, AEXG is not

---

[7]     Indeed, AEXG acknowledged in its moving papers that *In re Arbitration between Carina International Shipping Corp. and Adam Maritime Corp.*, 961 F. Supp. 559 (S.D.N.Y. 1997), would be an analogous case if the Arbitrator had awarded AEXG zero dollars for the warrants.  (Pet. Reply 19).

[8]     The Court reiterates that AEXG's demand for arbitration requested that it be awarded the warrants to which it was entitled under the Contract, rather than the economic value of the warrants.  (Resp. 56.1 ¶ 37).  Thus, it is questionable whether AEXG should have known that it needed to introduce evidence into the record of the economic value of the warrants.  Put somewhat differently, had the Arbitrator found that AEXG was entitled to zero dollars for the warrants, AEXG could oppose a waiver argument by noting that it had been denied the opportunity to introduce evidence of the economic value of the warrants.  *Cf. Buhannic* v. *Tradingscreen, Inc.*, No. 17 Civ. 7993 (ER), 2018 WL 3611985, at *4 (S.D.N.Y. July 27, 2018) ("[P]ermitting a party to oppose confirmation of an award based on a claim that it did not assert — but easily could have asserted — at the arbitration, would offend the general principle that 'a party cannot remain silent, raising no objection during the course of the arbitration proceeding, and when an award adverse to him has been handed down complain of a situation of which he had knowledge from the first.'" (quoting *Mandarin Oriental Mgmt., (USA) Inc.* v. *N.Y. Hotel & Motel Trades Council, AFL-CIO*, No. 13 Civ. 3984 (RMB), 2014 WL 345211, at *5 (S.D.N.Y. Jan. 31, 2014))), *affirmed*, 779 F. App'x 52 (2d Cir. 2019) (summary order).

[9]     According to the Clarification, the Arbitrator found that the record provided during the Hearing was insufficient to determine that value.  (Clarification 1-2).  In isolation, this might suggest that AEXG had failed to meet its burden of proof.  But the Arbitrator did not blame AEXG for the incomplete record, as did the panel in *Ace American Insurance Co.* v. *Christiana Insurance LLC*, No. 11 Civ. 8862 (ALC), 2012 WL 1232972 (S.D.N.Y. Apr. 12, 2012).  To the contrary, the full text of the Clarification suggests that the Arbitrator believed the lack of evidentiary record was occasioned not by any failure on AEXG's part, but by the timing of the Dividend, which Generex announced only after the Hearing had concluded.  (*Id.*).  Similarly, the Arbitrator could have found that AEXG should be faulted for not moving to reopen discovery to address the impacts of the Dividend, but neither the Award nor the Clarification contains such a finding.

challenging a decision by the Arbitrator that AEXG is not entitled to economic damages relating to the warrants because it failed to adduce sufficient evidence; AEXG is instead challenging an Award that failed fully, finally, and definitively to decide whether AEXG was entitled to economic damages relating to the warrants, and if so, how much it was entitled to. Courts in this District have found that arguments brought under § 10(a) may be waived where the argument could have been raised during arbitration but was only raised for the first time after the arbitration award was issued. *See LGC Holdings, Inc.* v. *Julius Klein Diamonds, LLC*, 238 F. Supp. 3d 452 (S.D.N.Y. 2017) (collecting cases). By this logic, a § 10(a) argument cannot be waived where it could not have been raised in arbitration. Because AEXG could not have been expected to know that the Second Award would not be final before the Award was issued, AEXG could not have waived its § 10(a)(4) argument for vacatur by failing to raise it during the course of arbitration.

Nor did AEXG waive its § 10(a)(4) argument by failing to ask the Arbitrator to reconsider the Award immediately after it was issued. While the rules governing the arbitration are clear that either of the parties could have moved to reopen evidence at any time before an award is issued, the parties were limited after issuance to requesting that the Arbitrator "correct any clerical, typographical, or computational errors in the award." Commercial

---

The Court does not express any opinion as to whether the Arbitrator could or should set the economic value of the warrants at zero dollars, due to AEXG's failure to introduce sufficient evidence during the initial hearing and failure to move to reopen the hearing after the Dividend was announced.

Arbitration Rules R-40, R-50.  AEXG does not now allege that the Second Award contains a clerical, typographical, or computational error; rather, it claims that the Second Award is not final — a substantive issue.  The Commercial Rules of Arbitration would not have permitted AEXG to ask the Arbitrator to reconsider his decision on that basis, and thus AEXG cannot be penalized now for not having attempted to do so.  Furthermore, it was unclear to the parties and the Court alike that the Second Award was not final until the Arbitrator issued the Clarification on August 28, 2019.  (Clarification; Dkt. #42 (transcript of proceedings)).  Thereafter, AEXG promptly challenged the finality of the Second Award and moved for vacatur.  (Am. Pet.).

Generex's second argument against remand is grounded in the principle of *functus officio*.  (Resp. Br. 13-14).  "[O]nce arbitrators have finally decided the submitted issues, they are ... '*functus officio*,' meaning that their authority over those questions is ended."  *Trade & Transp., Inc.*, 931 F.2d at 195.  On the other hand, "'where the award does not adjudicate an issue which has been submitted, then as to such issue the arbitrator has not exhausted his function and it remains open to him for subsequent determination.'"  *Lovelace* v. *Showroom Auto, LLC*, No. 16 Civ. 4978 (ERK) (CLP), 2019 WL 3254949, at *7 (E.D.N.Y. June 24, 2019) (quoting *Colonial Penn Ins. Co.* v. *Omaha Indem. Co.*, 943 F.2d 327, 332 (3d Cir. 1991)).  Although Generex's *functus officio* points are packaged as a separate argument, they are in essence a rehash of Generex's argument that the Second Award was final.  For the reasons stated above, the Court concludes that the Arbitrator has not yet finally decided all

22

issues submitted to him, and therefore the doctrine of *functus officio* would not deprive him of authority over the Second Award.[10]

### c.     The Second Award Cannot Be Modified

In the event that the Court finds the Second Award is not final — which indeed it has so found — Generex urges the Court to correct or modify, rather than remand, the Second Award.  (Resp. Br. 16-17).  As Generex correctly notes, remand of an arbitral award should not be granted where the court can resolve any alleged ambiguities in the award by modification.  *See* 9 U.S.C. § 11.  Rather, in those circumstances, § 11(c) authorizes a district court to modify or correct an arbitration award "[w]here the award is imperfect in matter of form not affecting the merits of the controversy."  *Fischer* v. *CGA Computer Assocs., Inc.*, 612 F. Supp. 1038, 1041 (S.D.N.Y. 1985) (internal quotation marks omitted).  Generex argues that, if the Second Award is ambiguous, it must be read to assign a zero-dollar valuation to the warrants, because to do anything else would be to grant AEXG a windfall and render the Contract illegal and unenforceable.  (Resp. Br. 16).

The Court does not interpret the Contract as requiring that the warrants AEXG would be awarded in the event of a breach have no economic value.

---

[10]     In its answer to the Amended Petition, Generex stated that the Second Award could not be remanded under 9 U.S.C. § 10(b), because the time within which the Contract required an award to be entered had expired.  (Dkt. #44 at ¶ 10).  AEXG countered this claim in its brief in support of its motion for summary judgment, arguing that the Contract did not dictate a time within which an arbitral award had to be entered, and Generex failed to present this argument against remand in its own moving papers.  (Pet. Br. 17-23).  Therefore, the Court concludes that Generex has waived any argument that the Contract required an award to be entered within a specific time frame, and has further waived any argument against remand under § 10(b).

Indeed, because the value of the warrants is tied to the value of the underlying Generex shares, the Contract plainly intended that the warrants would have a value that could rise or fall.  Further, the Court has already determined that it is

> unable to modify the Second Award pursuant to 9 U.S.C. § 11 to resolve its ambiguity; doing so would certainly 'affect[ ] the merits of the controversy,' since one interpretation would grant AEXG a substantial monetary award and the other two would give them nothing.  *Fischer* v. *CGA Computer Assocs., Inc.*, 612 F. Supp. 1038, 1041 (S.D.N.Y. 1985) (internal quotations and citation omitted).  Therefore, "[t]he more prudent course" is for the Court to remand the case back to the Arbitrator to clarify the terms of the Award.  *Hyle* v. *Doctor's Assocs., Inc.*, 198 F.3d 368, 371 (2d Cir. 1999).

*AEXG I*, 2019 WL 3456631, at *5.  Generex has presented no compelling reason for the Court to revisit this finding.  Because the Court may not resolve the Second Award's ambiguity without affecting the merits of the controversy, it may not modify the Second Award to set the economic value of the warrants at zero dollars.

### d.    AEXG's Motion to Vacate and Remand the Second Award Is Granted

Because the Second Award is not final and definite, it must be vacated pursuant to § 10(a)(4), and remanded to the Arbitrator for issuance of a final and definite award.  The Court requests that the Arbitrator limit his decision to the terms of the Second Award — that is, to the dollar amount to which AEXG is entitled that reflects "the economic value today of 84,000 warrants

convertible to [Generex]'s stock exercisable at $2.50 per share as of September 24, 2018." (Award 3).[11]

### 2. The Remainder of the Award Is Confirmed

The remaining portions of the Award granted AEXG: (i) "$210,000 in liquidated damages"; (ii) "accrued simple interest running at 9% from March 28, 2017"; (iii) legal fees in the amount of $93,304.06 plus costs of $12,392.50"; and (iv) $3,312.50 as reimbursement for administrative fees and expenses for the arbitration. (Award 3). AEXG petitions for these portions of the Award to be confirmed. (Am. Pet.). In its cross-petition, Generex argues that that the fees and interest awarded by the Arbitrator are excessive, and should be modified by the Court. (Am. Cross-Pet.).[12]

"It is well-settled that an arbitration award disposing of a separate and independent claim may be deemed final and subject to confirmation although it does not dispose of all the claims that were submitted to arbitration." *Clarendon Nat. Ins. Co.*, 990 F. Supp. at 309; *Zeiler* v. *Deitsch,* 500 F.3d 157, 169 (2d Cir. 2007) (concluding that where an arbitrator's "decision [ ] require[s] specific action and do[es] not serve as a preparation or a basis for further

---

[11]    The Court denies Generex's request that it instruct the Arbitrator to consider only the value of 84,000 warrants as of December 3, 2018. (Resp. Reply 8-9). In the Clarification, the Arbitrator stated that he had not decided whether the warrants were subject to the Dividend, or whether they would have been converted to stock in advance of the Dividend. (Clarification 2). If they were, then AEXG could conceivably be entitled to the value of 1,764,000 shares on December 3, 2018. *See AEXG I,* 2019 WL 3456631, at *4.

[12]    AEXG argues that these arguments must fail because they were already rejected by the Court in *AEXG I,* which constitutes the law of the case. (Pet. Reply 4-6). But the Court's prior opinion was limited to the issue of the Second Award; it did not decide whether the other portions of the Award should be confirmed. The Court makes this determination for the first time in this Opinion.

decisions by the arbitrator[ ]," the decision has "'finally and conclusively disposed of a separate and independent claim' and therefore 'may be confirmed although [the order does] not dispose of all the claims that were submitted to arbitration" (quoting *Metallgesellschaft A.G.* v. *M/V Capitan Constante,* 790 F.2d 280, 283 (2d Cir. 1986)).  Because the portions of the Award granting AEXG liquidated damages, interest, attorneys' fees, and reimbursement for administrative fees are separate and independent from the Second Award, they may be confirmed even as the Second Award is remanded for further consideration.

### a.    The Award of Liquidated Damages Is Confirmed

AEXG was awarded "$210,000 in liquidated damages." (Award 3).  The Contract expressly states that AEXG is entitled to 7% of the total funds paid to Generex by any party that AEXG referred to them.  (Contract 2).  The Contract also states that upon breach, Generex must pay AEXG any compensation AEXG would have received if it had referred the investor to Generex.  (*Id.*).  It follows then that AEXG was entitled to 7% of the $3 million investment Respondent received, which totals $210,000.  The Arbitrator properly construed and applied the Contract when it awarded $210,000 in liquidated damages.  This portion of the Award is confirmed.[13]

---

[13]    Generex does not challenge the award of $210,000 in liquidated damages.  (*See generally* Am. Cross-Pet.).

### b. The Award of Interest on the Liquidated Damages Is Confirmed

The Court confirms the Arbitrator's post-award, pre-judgment interest up to the date of the entry of the judgment in this case. "[P]ost-award prejudgment interest is a matter left with the district court." *Moran* v. *Arcano*, No. 89 Civ. 6717 (CSH), 1990 WL 113121, at *3 (S.D.N.Y. July 27, 1990). Conversely, federal law controls post-judgment interest by statute. *See* 28 U.S.C. § 1961.

AEXG was awarded "accrued simple interest running at 9% from March 28, 2017" for the award of $210,000 in liquidated damages.[14]  The Court confirms the Arbitrator's calculation of post-award interest for the liquidated damages from March 28, 2017, to the date of the entry of judgment in this case, at an annual rate of 9%. "Post-award, prejudgment interest is generally awarded at the discretion of the district court, and there is a presumption in favor of awarding such interest." *In re Arbitration Between Westchester Fire Ins. Co.* v. *Massamont Ins. Agency, Inc.*, 420 F. Supp. 2d 223, 226 (S.D.N.Y. 2005) (citing *In re Waterside Ocean Navigation Co.* v. *Int'l Navigation, Ltd.*, 737 F.2d 150, 153-54 (2d Cir. 1984); *Irving R. Boody & Co.* v. *Win Holdings Int'l, Inc.*, 213 F. Supp. 2d 378, 383 (S.D.N.Y. 2002)).  A district court bestowed with federal-question jurisdiction assesses the rate of post-

---

[14]    The Award also grants AEXG accrued simple interest running at 9% from March 28, 2017, on "the economic value today of 84,000 warrants convertible to [Generex]'s stock exercisable at $2.50 per share as of September 24, 2018." (Award 3). Because the Court has vacated and remanded the portion of the Award granting AEXG the economic value of the warrants, it need not address the interest that would apply to that economic value.

award, pre-judgment interest as a matter of federal law despite the lack of a federal statute controlling pre-judgment interest. *See Sarhank Grp.* v. *Oracle Corp.*, No. 01 Civ. 1285 (DAB), 2004 WL 324881, at *4 (S.D.N.Y. Feb. 19, 2004) (quoting *Jones* v. *UNUM Life Ins. Co. of Am.*, 223 F.3d 130, 139 (2d Cir. 2000)); *In Matter of Arbitration Between P.M.I. Trading Ltd.* v. *Farstad Oil, Inc.*, No. 00 Civ. 7120 (RLC), 2001 WL 38282, at *1 (S.D.N.Y. Jan. 16, 2001).

A district court considering an award of pre-judgment interest must select a rate that compensates for the award's diminution in value over time while not overcompensating the petitioner. *See Sarhank Grp.*, 2004 WL 324881, at *4. Overall, courts should award prejudgment interest if doing so would be "fair, equitable and necessary to compensate the wronged party fully." *Wickham Contracting Co.* v. *Local Union No. 3, Int'l Bhd. of Elec. Workers, AFL-CIO*, 955 F.2d 831, 835 (2d Cir. 1992) (collecting cases). In New York, interest accrues at 9% per year, absent alternative statutory directives. N.Y. C.P.L.R. § 5004. The Court finds that the Arbitrator's calculation of post-award, pre-judgment interest at a rate of 9% satisfies these considerations, given the parties' selection of New York law as controlling the rights and liabilities arising from their contract. (Contract 3). The Court thus confirms the arbitrator's selection of a 9% interest rate for the post-award, pre-judgment period from March 28, 2017.[15]

---

[15]    In its answer to AEXG's amended petition and in its own amended cross-petition, Generex argued that the interest rate awarded was excessive. (*See generally* Dkt. #44; Am. Cross-Pet. 7). But Generex's briefing in support of its cross-motion for summary judgment and in opposition to AEXG's motion for summary judgment does not contain any arguments concerning the alleged excessiveness of the interest rate. (*See generally*

28

AEXG is entitled to post-judgment interest as defined by federal statute. "Section 1961 of Title 28 establishes the rate of interest that is to be paid 'on any money judgment in a civil case recovered in a district court,' linking that rate to the rate of interest the government pays on money it borrows by means of Treasury bills." *Jones*, 223 F.3d at 139 (quoting 28 U.S.C. § 1961(a)). Therefore, § 1961 controls the interest rate applicable to any unpaid amounts after the entry of judgment in this case.

### c.    The Award of Attorneys' Fees and Costs Is Confirmed

The Arbitrator found that AEXG had "made appropriate efforts to keep its attorney's fees reasonable" and was thus "entitled to legal fees in the amount of $93,304.06 plus costs of $12,392.50." (Award 3).  Generex argues that this portion of the Award should be vacated for two reasons: (i) AEXG failed to meet its burden of establishing the reasonableness of the fees and costs it was awarded; and (ii) AEXG is not the prevailing party and thus is not entitled to attorneys' fees and costs.  (Resp. Br. 20-22).  Both arguments fail.

First, the Court notes that, in issuing its award of attorneys' fees and costs, the Arbitrator expressly found that AEXG had "made appropriate efforts to keep its attorneys' fees reasonable." (Award 3).  While district courts are generally required to show their methodology in analyzing reasonable attorneys' fees owed, arbitrators "may, but are not required to, explain their reasoning." *Porzig*, 497 F.3d at 141.  Thus, the Court may not infer from the

---

Resp. Br.; Resp. Reply).  Thus, Generex has waived any argument that the interest rate awarded was excessive.

concision of the Arbitrator's decision that he failed to engage in an appropriate analysis of attorneys' fees owed.

Generex also alleges certain deficiencies in the record concerning AEXG's attorneys' fees, including: (i) a lack of testimony demonstrating that the billing records were accurate; (ii) a lack of testimony establishing the value of AEXG's attorneys' services; and (iii) Generex's inability to cross-examine counsel with regard to the reasonableness of the attorneys' fees.  (Resp. Br. 20-22).  But these pieces of evidence are not required to determine that the proposed attorneys' fees are reasonable.  And an arbitrator's finding that AEXG "made appropriate efforts to keep its attorneys' fees reasonable" establishes that the attorneys' fees and costs that arbitrator awarded were reasonable.  Given the "extremely deferential standard of review for arbitral awards," *Porzig*, 497 F.3d at 139, the Court must uphold the award of attorneys' fees and costs "so long as the arbitrator 'offers a barely colorable justification for the outcome reached,'" *Jock*, 646 F.3d at 122 (quoting *ReliaStar*, 564 F.3d at 86).  The Court finds that the Arbitrator here offered a colorable justification for the outcome he reached.  Further, to the extent that Generex now argues that AEXG is not entitled to attorneys' fees because the Arbitrator "refused to hear evidence pertinent and material to the controversy," or "exceeded [his] powers" in granting attorneys' fees, Generex could have made these evidentiary arguments during the course of the arbitration, when the issue of attorneys' fees was squarely before the Arbitrator.  In failing to do so, Generex has waived these arguments.  *See Carina Int'l Shipping Corp.*, 961 F. Supp. at 664-67.

30

Generex also argues that AEXG is not entitled to attorneys' fees because it was not the prevailing party. (Resp. Br. 21-22). This argument conflicts with the Arbitrator's express finding that "[AEXG] is the prevailing party entitled to legal fees … plus costs." (Award 3). To counter this, Generex claims that the Court's prior decision to remand for clarification — an outcome that Generex had urged in its first motion for summary judgment — means that it is the prevailing party. (Resp. Br. 21-22). In so doing, however, Generex misconstrues the import of the Court's Opinion remanding the case for clarification to the Arbitrator. Neither that decision nor this decision alters the fact that AEXG is the prevailing party; the case was remanded then, and is remanded now, only to determine the extent of damages to which AEXG is entitled as the prevailing party.

Because the Arbitrator provided a colorable justification for his decision to award $93,304.06 in attorneys' fees and $12,392.50 in costs, this portion of the Award is confirmed.

### d.    The Portion of the Award Splitting Administrative Fees and Expenses of the Arbitration Is Confirmed

Finally, the Arbitrator determined that the administrative fees and expenses for the arbitration totaled $6,625.00; that the Arbitrator's compensation expenses totaled $7,600.00; and that both categories of expenses would be "borne equally" by the parties. (Award 3). The Arbitrator provided that Generex would reimburse AEXG $3,312.50, "representing the portion of said fees and expenses in excess of the apportioned costs previously incurred by [AEXG]." (*Id.*). Generex has not opposed the confirmation of this

portion of the Award.  The Court therefore confirms the portion of the Award splitting the administrative fees and expenses for the arbitration.

## CONCLUSION

For the foregoing reasons, AEXG's motion for summary judgment is GRANTED and Generex's cross-motion for summary judgment is DENIED. AEXG's motion to vacate and remand is GRANTED to the extent it seeks remand of the Second Award to the Arbitrator.

The Clerk of Court is directed to terminate the motions at docket entries 48 and 59.  This case shall be stayed pending a mutual, final, and definite award concerning the issue remanded to the Arbitrator.  The parties are ORDERED to submit a joint letter within two weeks of the issuance of any substantive decision by the Arbitrator.

SO ORDERED.

Dated:     April 24, 2020
           New York, New York

_____
       KATHERINE POLK FAILLA
       United States District Judge

32