**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

THREE BROTHERS TRADING LLC d/b/a ALTERNATIVE EXECUTION GROUP,

Petitioner,

v.

GENEREX BIOTECHNOLOGY CORP.,

Respondent.

Civil Action No. 18-CV-11585 (KPF)

**RESPONDENT'S MEMORANDUM OF LAW**
**IN OPPOSITION TO PETITIONER'S MOTION FOR RECONSIDERATION**

# TABLE OF CONTENTS

**Page**


TABLE OF AUTHORITIES ..... ii

I. INTRODUCTION ..... 1

II. LEGAL STANDARDS ..... 2

III. ARGUMENT ..... 3

A. AEXG's Motion Should Be Denied Because It Fails to Satisfy the Strict Standard Applied to Motions for Reconsideration. ..... 3

B. The "Going Concern" Language Relied Upon by AEXG Does Not Support Lifting the Stay and Entering a Partial Final Judgment. ..... 5

C. The Court's Decision to Continue the Stay Was Appropriate. ..... 9

1. AEXG's Entitlement to Damages in the Form of Warrants is Inextricably Intertwined With Its Other Claims for Damages ..... 9

2. The Court's Stay Pending Arbitration Also Was An Appropriate Exercise of the Court's Discretionary Power to Control Its Own Docket. ..... 10

IV. CONCLUSION ..... 12

# TABLE OF AUTHORITIES

**Cases**

*Abraham v. Leigh*,
No. 17 Civ 5429(KPF), 2018 WL 3632520 (S.D.N.Y. Jul. 30, 2018) ..................................... 2

*Am. Shipping Line, Inc. v. Massan Shipping Indus., Inc.*,
885 F. Supp. 499 (S.D.N.Y. 1995)........................................................................................ 11

*Analytical Surveys, Inc. v. Tonga Partners, L.P.*,
684 F.3d 36 (2d Cir. 2012)...................................................................................................... 2

*Citrus Mktg. Bd. of Israel v. J. Lauritzen A/S*,
943 F.2d 220 (2d Cir. 1991).................................................................................................. 10

*Curtiss-Wright Corp. v. General Electric Co.*,
446 U.S. 1 (1980).................................................................................................................. 11

*Davidson v. Scully,*
172 F. Supp. 2d 458, 461 (S.D.N.Y. 2001)............................................................................. 2

*In re Hagerstown Fiber Ltd. P'ship*,
277 B.R. 181 (Bankr. S.D.N.Y. 2002).................................................................................. 11

*In re TexStyle, LLC, Bankr.*,
No. 11-11686, 2012 WL 1345646 (Bankr. S.D.N.Y. Apr. 17, 2012).................................... 11

*In Re: North American Acceptance Corp. Securities Cases*,
513 F. Supp. 608 (N.D. Ga. 1981) .......................................................................................... 6

*Info. Res., Inc. v. Dun & Bradstreet Corp.*,
294 F.3d 447 (2d Cir. 2002).................................................................................................... 9

*Johnson Bank v. George Korbakes & Co., LLP*,
472 F.3d 439 (7th Cir. 2006) ............................................................................................. 6, 7

*Landis v. N. Am. Co.*,
299 U.S. 248 (1936)......................................................................................................... 10, 11

*Lucas v. Armtech Ins. Servs.*, No. 2:13cv249-KS-MTP, 2015 WL 11120542 (S.D. Miss.
Mar. 6, 2015)......................................................................................................................... 10

*Montauk Oil Transp. Corp. v. Steamship Mut. Underwriting Ass'n (Bermuda)*,
Ltd., 859 F. Supp. 669 (S.D.N.Y. 1994) ................................................................................ 11

*Nederlandse Erts-Tankersmaatschappij, N.V. v. Isbrandtsen Co.*,
339 F.2d 440 (2d Cir. 1964).................................................................................................. 11

*Novick v. AXA Network, LLC*,
642 F.3d 304 (2d Cir. 2011).................................................................................................. 11

*Petty v. City of New York*,
No. 10 Civ. 8581(KPF), 2014 WL 7250945 (S.D.N.Y. Dec. 22, 2014)............................... 2, 3

*Sears, Roebuck & Co. v. Mackey*,
351 U.S. 427 (1956).............................................................................................................. 11

*Sequa Corp. v. GBJ Corp.*,
156 F.3d 136 (2d Cir. 1998).................................................................................................... 2

*Shrader v. CSX Transp., Inc.,*
70 F.3d 255, 257 (2d Cir. 1995)........................................................................................... 2, 3

*Sierra Rutile Ltd. v. Katz*,
937 F.2d 743 (2d Cir. 1991).................................................................................................. 11

*Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*,
956 F.2d 1245 (2d Cir. 1992)........................................................................................ 2

**Rules and Regulations**

Fed. R. Civ. P. 60(b) ................................................................................................. 2
Local Civil Rule 6.3 ................................................................................................... 2

## I. INTRODUCTION

The motion for reconsideration filed by Petitioner, Three Brothers Trading, LLC, d/b/a Alternative Execution Group ("AEXG") is nothing more than a bare attempt at taking the proverbial – and judicially impermissible – "second bite at the apple" after failing to convince the Court to lift the stay in this matter and direct the entry of a partial final judgment in its favor. AEXG does not point to controlling decisions or data that the court overlooked; does not argue that there has been an intervening change of controlling law; does not introduce any evidence that was previously unavailable; and does not suggest that the Court needs to correct a clear error or prevent manifest injustice. As such, AEXG's motion fails to satisfy the strict standard applied to motions for reconsideration in this Court.

Moreover, even if the Court considered the "going concern" language contained in the March 20, 2020, SEC filing made by Respondent, Generex Biotechnology Corp. ("Generex"), as new evidence (which it is not), it would not alter the Court's conclusion in denying AEXG's prior motion. That language does not portend Generex's imminent demise, as AEXG suggests, such that AEXG needs a partial final judgment so that it can commence collections against Generex. Put simply, Generex is not failing. It is conducting business with its sights set on the future, with exciting projects in the pipeline, and with every intention of remaining a viable company through the completion of the underlying arbitration proceeding and beyond.

The Court's decision to maintain the stay and to deny AEXG's motion for the entry of a partial final judgment was appropriate, and AEXG's motion for reconsideration fails to present any valid reason for revising that ruling. As such, AEXG's motion for reconsideration should be denied.

## II. LEGAL STANDARDS

The decisions of this Court applying Federal Rule of Civil Procedure 60(b) and Local Civil Rule 6.3 make clear that the standard for granting motions for reconsideration is strict, such that those motions may be granted only in very limited circumstances. Indeed, "[m]otions for reconsideration ***are to be denied except*** where 'the moving party can point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court.'" *Abraham v. Leigh*, No. 17 Civ 5429 (KPF), 2018 WL 3632520, at *1 (S.D.N.Y. Jul. 30, 2018) (Failla, J.) (*quoting Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)) (emphasis added). "Compelling reasons for granting a motion for reconsideration are limited to 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Id.* (*quoting Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992)).

"A motion for reconsideration is, of course, 'not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple[.]'"" *Id.* (*quoting Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (*quoting Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998)). *See also Ricatto v. M3 Innovations Unlimited, Inc.*, No. 18 Civ. 8404 (KPF), 2020 WL 2306480 (S.D.N.Y. May 8, 2020) (Failla, J.) (reciting same standard).

"'A motion for reconsideration may not be used to advance new facts, issues or arguments not previously presented to the Court, nor may it be used as a vehicle for relitigating issues already decided by the Court.'" *Petty v. City of New York*, No. 10 Civ. 8581 (KPF), 2014 WL 7250945, at *1 (S.D.N.Y. Dec. 22, 2014) (Failla, J.) (*quoting Davidson v. Scully*, 172 F. Supp. 2d 458, 461 (S.D.N.Y. 2001) (*citing Shrader*, 70 F.3d at 257)). "Such a motion should not

be made to 'reflexively [ ] reargue those issues already considered when a party does not like the way the original motion was resolved.'" *Id.* (citations omitted). "Above all, '[r]econsideration of a court's previous order is an 'extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources.'" *Id.* (citations omitted).

## III. ARGUMENT

### A. AEXG's Motion Should Be Denied Because It Fails to Satisfy the Strict Standard Applied to Motions for Reconsideration.

AEXG's motion fails to satisfy the strict standard applicable to motions for reconsideration. It does not purport to "point to controlling decisions or data that the court overlooked." Nor does it present any of the "compelling reasons" that this Court has identified for granting a motion for reconsideration. *Abraham* 2018 WL 3632520, at *1. Those three "compelling reasons" "***are limited*** to 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Id.* (emphasis added). As further explained below, AEXG's motion fails to meet the "strict standard" warranting the "extraordinary remedy" of reconsideration of this Court's prior decision. *See Shrader*, 70 F.3d at 257; *Petty*, 2014 WL 7250945, at *1.

Out of the three "compelling reasons" that merit granting a motion for reconsideration, AEXG does not even suggest that there has been "an intervening change of controlling law" or that the Court needs "to correct a clear error or prevent manifest injustice." Instead, AEXG relies upon the alleged "availability of new evidence" as grounds for granting its motion for reconsideration. Yet there is nothing "new" about the "evidence" cited by AEXG.

The sole basis for AEXG's motion for reconsideration is the "going concern" language contained in Generex's 10-Q filing dated March 20, 2020. As explained in Section III.B., AEXG misstates the significance of that language, but, more importantly, it is not "new evidence." That

filing was made nearly two months before AEXG submitted its motion for reconsideration, and, as such, plainly was available to AEXG to submit to the Court in connection with its motion.[1] Moreover, as AEXG admits in its brief, that "going concern" language has been present in Generex's public filings since at least the start of 2017. (Doc No. 71-1 at 14-15.) Information that has been included in Generex's public filings ***for the past three years*** hardly qualifies as "new" evidence warranting reconsideration of the Court's ruling. AEXG has never raised this language until now.

AEXG attempts to excuse its delay in bringing this "evidence" to the Court by arguing that "Generex's financial condition only became relevant to the motion sequence upon Generex's assertion, in its opposition, that the 9% prejudgment interest adequately offset any prejudice to AEXG stemming from delay in entering a judgment" and that AEXG had no right to reply. (Doc. No. 71-1 at 7-8.) Even if AEXG's relevance argument were true, AEXG could have asked the Court for leave to file a reply, but it did not. Further, during the telephonic hearing on its motion, AEXG could have sought leave to file a supplemental brief or material in support of its motion. Again, it did not. Instead, AEXG chose to wait until the Court issued its decision, and when that decision did not go in AEXG's favor, AEXG finally decided to try to get Generex's March 2020 10-Q filing before the Court through a motion for reconsideration. AEXG's motion is nothing more than an improper attempt at taking a "second bite at the apple" after having missed on its first one.

AEXG's motion is a rehashing of its first motion and does not comply with the strict standards for granting reconsideration – there is nothing that the Court "overlooked"; there has

---

[1] AEXG has in fact been monitoring Generex's SEC filings, announcements, and news releases since the September 24, 2018, hearing, as can be seen by the exhibits of record to AEXG's post-hearing arbitration submissions and pleadings filed with this Court including the Declarations of Richard Alter (Doc. Nos. 20 and 51) and John Watkins (Doc. No. 53).

been no change in controlling law; there are no new facts of which AEXG was unaware when it made its motion; and there is no clear error in the Court's decision that would subject AEXG to a "manifest injustice." AEXG's motion can, and should, be denied for failing to satisfy the standard for granting a motion for reconsideration.

### B. The "Going Concern" Language Relied Upon by AEXG Does Not Support Lifting the Stay and Entering a Partial Final Judgment.

Even if the Court were inclined to consider the "going concern" language contained in Generex's publicly-filed financial statements for the past three years as "evidence" relevant to AEXG's original motion to lift the stay and enter a partial final judgment, that language does not establish that Generex is in "financial jeopardy," as AEXG suggests. To the contrary, Generex continues to do business today, and intends to continue doing business for the long-term. *See* Declaration of Joseph Moscato in Support of Respondent's Memorandum in Opposition to Petitioner's Motion for Reconsideration ("Moscato Decl.") attached hereto as Exhibit 1 at ¶ 5.

The "going concern" language in Generex's Form 10-Q cited by AEXG is based on an auditor's report and reflects professional auditing standards. As AEXG acknowledges, for the past few years, Generex's auditor has made a going concern disclosure on Generex's financial statements opining doubt about the company's ability to continue as a going concern. Even though this disclosure has been made for multiple years, Generex continues its business operations year after year and has not had to file for bankruptcy or terminate its business and liquidate its assets. Accountants and auditors are conservative in nature, and given that Generex is a publicly traded company, Generex's auditor likely is going to favor making a "going concern" disclosure to avoid any risk to itself when issuing its audit reports. Moreover, since Generex's financial statements are comparative in nature (meaning they compare the current period to the prior period), inertia makes it easier for the auditor to continue to make a "going

concern" disclosure than not. As evidenced by the placement of this "going concern" language in Generex's publicly-filed financial statements for the past several years and Generex's continued existence notwithstanding that auditor's disclosure, such language is not indicative of Generex's imminent collapse, as AEXG would like the Court to believe.[2]

Even the cases cited by AEXG do not support its "sky is falling" argument that a "going concern" disclaimer warns of Generex's impending demise, but, instead reflect AEXG's troubling tendency to take arguments made by a party and misleadingly attribute those statements to the court itself. For example, AEXG claims that the court in *In Re: North American Acceptance Corp. Securities Cases*, 513 F. Supp. 608 (N.D. Ga. 1981), "call[ed] a 'going concern' disclaimer 'about the most conspicuous 'red flag' than an auditor can waive with respect to a company's financial affairs.'" (Doc. No. 71-1 at 12.) The full quote in that case, however, states: "***According to plaintiffs***, about the most conspicuous 'red flag' that an auditor can wave with respect to a company's financial situation is to write a report on the corporate statements expressing reservations as to the company's ability to continue as a going concern." *In Re: N. Am. Acceptance Corp. Sec. Cases*, 513 F. Supp. at 636 n.15 (emphasis added). This is the plaintiff's statement, not the court's, as AEXG seems to represent.

Similarly, AEXG suggested to this Court that Judge Posner "characteriz[ed] a 'going concern' statement as 'a warning that the audited firm was teetering on the brink of bankruptcy" in *Johnson Bank v. George Korbakes & Co., LLP*, 472 F.3d 439 (7th Cir. 2006). (Doc. No. 71-1 at 12.) In fact, that was not the Court's statement, but rather was Judge Posner's recitation of the

---

[2] Indeed, Generex just filed another Form 10-Q with the SEC on June 22, 2020, with "going concern" language, yet Generex continues to operate. Generex noted in that filing that the COVID-19 pandemic had affected sales of certain wound care and surgical products due to delays and rescheduling of surgeries and outpatient procedures. Generex noted that as the VA and other hospital systems re-open, product sales should increase. The Form 10-Q is available at https://www.sec.gov/Archives/edgar/data/1059784/000160706220000184/gnbt043020form10q.htm.

plaintiff bank's argument, as is evident from the full quote: "***The bank argues that*** by the end of 1998, when the audit was completed, Brandon's financial situation was so lousy that the audit should have included a 'going concern qualification,' that is, a warning that the audited firm was teetering on the brink of bankruptcy." *Johnson Bank*, 472 F.3d at 443 (emphasis added). Again, AEXG cherry-picked a quote, then deleted the prefatory language identifying the maker of the argument, and characterized it as a statement of the court. In short, these cases, and the others cited by AEXG, do not stand for the proposition that a company whose financial statements contain "going concern" language is about to collapse.

In fact, rather than "teetering on the brink of bankruptcy" as AEXG suggests, Generex continues to do business as a going concern and recently initiated the process for raising additional capital in support of Generex's current and future projects. On June 15, 2020, Generex filed an S-1 registration statement with the SEC seeking to raise additional capital through the sale of a new issue of preferred stock, as well as an S-1/A statement. *See* Moscato Decl. at ¶ 6 and Ex. A thereto.[3] Preparing and filing the new S-1 took significant effort and expense on behalf of Generex and its staff, securities law firms, and accountants. Generex would not have undertaken that investment if it were preparing to close its doors.

Among Generex's most exciting ongoing projects are its efforts to develop a SARS-CoV-2 vaccine, with the goal of beginning mass vaccination in the Fall of 2020. On March 3, 2020, Generex entered into a Master Services Agreement and Statement of Work Agreement with EpiVax, Inc. ("EpiVax") relating to that project. The Agreement provides for EpiVax to use its proprietary epitope prediction software in the identification, development, and transfer of a

---

[3] The Form S-1 is available at https://www.sec.gov/Archives/edgar/data/1059784/000160706220000161/0001607062-20-000161-index.htm.

potential vaccine for COVID-19 based upon Nugenerex Immuno-Oncology's ("NGIO") Ii-Key vaccine technology. Generex and NGIO, which is a majority owned subsidiary of Generex, will own the intellectual property generated by EpiVax's work.[4]

In connection with Generex's efforts to develop a COVID-19 vaccine, numerous highly-respected health care institutions sent letters of support over the past few months to the Office of the Assistant Secretary for Preparedness and Response (ASPR) and Biomedical Advanced Research and Development Authority (BARDA) at the U.S. Department of Health and Human Services expressing that they "are committed to partnering with Generex Biotechnology and BARDA" to make a COVID-19 vaccine a reality. A sampling of these letters of support are the following:

- On April 15, The Brooklyn Hospital Center – which is a clinical affiliate of The Mount Sinai Hospital and is the oldest hospital in Brooklyn – sent a letter supporting Generex's efforts to ASPR and BARDA. The letter states that the hospital is "eager to provide clinical and laboratory expertise" to Generex and that, as resources permit, it is "willing to assume Principal Investigator roles, assist in the collection of convalescent plasma, and serve as a research site for the immunogenicity, healthcare workers, and special population clinical trials." The letter was attached to Generex's 8-K filed with the SEC on June 18, 2020.[5]

- Also on April 15, Generex received a similar letter of support from Wake Forest Baptist Health, which includes Wake Forest School of Medicine. The letter was attached to Generex's 8-K filed with the SEC on June 11, 2020.[6]

- On April 24, Generex received another letter of support for its Co-V-2 vaccine from Tufts Medical Center indicating that it is "willing to assume a Principal Investigator role for all pediatric trials, assist in the collection of convalescent plasma, and serve as a research site for the immunogenicity, healthcare workers,

[4] See Form 8-K of Generex Biotechnology Corporation, dated March 17, 2020, available at https://www.sec.gov/Archives/edgar/data/1059784/000160706220000063/gnbt031720form8k.htm.

[5] The publicly-available copy of the 8-K is available at https://www.sec.gov/Archives/edgar/data/1059784/000160706220000176/gnbt061820form8k.htm.

[6] The publicly-available copy of the 8-K is available at https://www.sec.gov/Archives/edgar/data/1059784/000160706220000153/gnbt061220form8k.htm.

and special population clinical trials." The letter was attached to Generex's 8-K filed with the SEC on June 15, 2020.[7]

- On April 24, Generex received a similar letter of support from the UC San Diego School of Medicine, also offering to provide clinical and laboratory experience, as well as "to assist in providing convalescent plasma and providing laboratory analysis for vaccine formulation and evaluation of efficacy endpoints for the clinical trials." The letter was attached to Generex's 8-K filed with the SEC on June 17, 2020.[8]

These letters of support reflect a company whose efforts to fight the COVID-19 pandemic have garnered recognition and support from some of this country's top medical institutions. Those institutions, who have partnered with Generex, have put their own reputations on the line by sending these letters to the federal government. Generex's COVID-19 program, which is just one of the company's initiatives, illustrates that Generex and its partners are looking forward to a bright future – and continued operations – for Generex.

### C. The Court's Decision to Continue the Stay Was Appropriate.

#### 1. AEXG's Entitlement to Damages in the Form of Warrants is Inextricably Intertwined With Its Other Claims for Damages.

The Court properly entered a stay in this case because the portion of the Award granting AEXG damages, interest, legal fees, and administrative fee reimbursements, which this Court has confirmed, and the portion of the Award vacating and remanding to the arbitrator to determine whether AEXG is entitled to damages in the form of warrants, which the Court vacated and remanded to the arbitrator, are inextricably intertwined. While the Court treated the Award of the arbitrator as a "First Award" and a "Second Award," they are all part of a single claim for AEXG's fee that will be decided by the arbitrator. *See Info. Res., Inc. v. Dun &*

[7] The publicly-available copy of the 8-K is available at https://www.sec.gov/Archives/edgar/data/1059784/000160706220000158/gnbt061520form8k.htm.

[8] The publicly-available copy of the 8-K is available at https://www.sec.gov/Archives/edgar/data/1059784/000160706220000171/gnbt061720form8k.htm.

*Bradstreet Corp.*, 294 F.3d 447, 453 (2d Cir. 2002) (opinion by then-Judge Sotomayor holding that the district court's entry of a partial final judgment was improper because the district court's determination did not have the necessary elements of finality where there was still something left to be determined). Indeed, as this Court recognized in its April 24 Order, AEXG's entitlement to the economic value of the warrants today, as well as all of its other claims for damages, rely upon AEXG's assertion that Generex violated the Contract. (Doc. No. 67.) Furthermore, it is not Generex's fault that the December 2018 Award contained an ambiguity as part of the Award. As this Court found in its initial decision directing the arbitrator to clarify the Award, the part of the Award not attributing a value to the 84,000 warrants was, in fact, ambiguous. Any delay in finalizing the Award was caused by the parties' efforts to obtain clarity.

The undisputed intertwined and inextricable nature of AEXG'S claims militates in favor of a stay pending the arbitrator's entry of an Award following a hearing on remand, and, for this reason, the Court's decision to stay this litigation pending arbitration was appropriate. *See Lucas v. Armtech Ins. Servs.*, No. 2:13cv249-KS-MTP, 2015 WL 11120542, at *9 (S.D. Miss. Mar. 6, 2015).[9]

**2. <u>The Court's Stay Pending Arbitration Also Was An Appropriate Exercise of the Court's Discretionary Power to Control Its Own Docket.</u>**

The Court's decision to stay further proceedings in this matter pending arbitration also is supported by the Court's discretionary power to control its own docket. The power to stay is part of a court's authority to control its own docket with the economy of time and effort for the court, for counsel, and for litigants. *See Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936); *Citrus Mktg.*

[9] Generex also incorporates by reference its letter brief of May 14, 2020, (Doc. No. 69), to AEXG's pre-motion submission of May 12, 2020.

*Bd. of Israel v. J. Lauritzen A/S*, 943 F.2d 220, 225 (2d Cir. 1991); *see also Montauk Oil Transp. Corp. v. Steamship Mut. Underwriting Ass'n (Bermuda) Ltd.*, 859 F. Supp. 669, 677 (S.D.N.Y. 1994) ("[E]ven if the FAA does not entitle a party to a stay [of the nonarbitrable claim] as a matter of law, this court has discretion to grant a stay pursuant to 'the power inherent in every court to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants.'") (*quoting Nederlandse Erts-Tankersmaatschappij, N.V. v. Isbrandtsen Co.*, 339 F.2d 440, 441 (2d Cir. 1964) (*quoting Landis*, 299 U.S. at 254)). Such discretion to grant a stay is "appropriate . . . where the pending proceeding is an arbitration in which issues involved in the case may be determined." *Sierra Rutile Ltd. v. Katz*, 937 F.2d 743, 750 (2d Cir. 1991) (*quoting Nederlandse*, 339 F.2d at 441); *In re TexStyle, LLC*, Bankr. No. 11-11686, 2012 WL 1345646 (Bankr. S.D.N.Y. Apr. 17, 2012); *Am. Shipping Line, Inc. v. Massan Shipping Indus., Inc.*, 885 F. Supp. 499, 502 (S.D.N.Y. 1995); *In re Hagerstown Fiber Ltd. P'ship*, 277 B.R. 181, 199 (Bankr. S.D.N.Y. 2002).

Furthermore, the Court's decision to stay was appropriate because it respected the "'historic federal policy against piecemeal appeals.'" *Novick v. AXA Network, LLC*, 642 F.3d 304, 310 (2d Cir. 2011) (*quoting Curtiss-Wright Corp. v. General Electric Co.*, 446 U.S. 1, 8 (1980) (*quoting Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 438 (1956)).

Given that the arbitrator is currently considering the value of the 84,000 warrants – an issue that is inextricably intertwined with those pending before the Court – and that a hearing is scheduled for September 9, 10, and 11, 2020, which is only two and a half months away, a continued stay is appropriate pending the arbitrator's determination on the value or issuance of the warrants. The determination of the value or issuance of the warrants will affect the other issues pending before the Court because the arbitrator's Award, while fashioned by the Court as

a "First Award" and a "Second Award," is really only one Award. In considering the interest of time and effort for the Court, the litigants, and for counsel, the Court properly decided to maintain the stay pending arbitration on the portion of the Award granting the economic value today of the 84,000 warrants to AEXG, which the Court vacated and remanded to the arbitrator.

## IV. CONCLUSION

For the reasons set forth above, Generex respectfully requests that this Court deny AEXG's motion for reconsideration and continue the stay of all proceedings pending completion of the ongoing arbitration between the parties, and grant such other further relief as the Court deems appropriate.

Dated: White Plains, New York
June 24, 2020

*/s/ Timothy P. Coon*
Timothy P. Coon, Esq.
ECKERT SEAMANS
CHERIN & MELLOTT, LLC
10 Bank Street, Suite 700
White Plains, NY 10606
(914) 286-2807
tpcoon@eckertseamans.com

*Attorneys for Respondent Generex Biotechnology*