**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

THREE BROTHERS TRADING, LLC, d/b/a
ALTERNATIVE EXECUTION GROUP,

                 Petitioner,

     v.

GENEREX BIOTECHNOLOGY CORP.

                 Respondent.

Civil Action No. 18-CV-11585
(KPF)

**Oral Argument Requested**

<u>**PETITIONER'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS**</u>
<u>**MOTION FOR RECONSIDERATION**</u>

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................... ii

PRELIMINARY STATEMENT ...............................................................................2

REPLY POINT I

RECONSIDERATION IS WARRANTED BASED ON ANY OF THE SEVERAL
GROUNDS RAISED BY AEXG .................................................................................3

REPLY POINT II

GENEREX'S FINANCIAL CONDITION WARRANTS ENTRY OF A PARTIAL
JUDGMENT WITHOUT FURTHER DELAY................................................................5

    A.  The Financial Facts That Generex Does Not Dispute .............................................5

    B.  The New Quarterly Filing From June 22, 2020 Paints An Even More
        Disturbing Picture ................................................................................................8

CONCLUSION..........................................................................................................11

# TABLE OF AUTHORITIES

Alpha Capital Anstalt v. Generex Biotechnology Corporation and Joseph Moscato,
    0650918/2019 (Sup. Co. N.Y. Co.) ...................................................................6

Copy-Date Systems, Inc. v. Toshiba America, Inc.,
    755 F.2d 293 (2d Cir. 1985)................................................................... 7, 8

Curtiss-Wright Corp. v. Gen. Elec. Co.,
    446 U.S. 1, 100 S. Ct. 1460 (1980).............................................................10

Discover Growth Fund, LLC v. Generex Biotechnology Corp.
    1:20-cv-00233-RGA, Dkt # 37 (D. Del. June 19, 2020)..........................5, 10

Farnum Place, LLC v. Krys,
    690 Fed. Appx. 761 (2d Cir. 2017)................................................................3

Fehribach v. Ernst & Young LLP,
    493 F.3d 905 (7th Cir. 2007) .........................................................................6

Iliad Research & Trading, LP. V. Generex Biotechnology Corp.,
    No. 200903161 (Ut. Dist. Ct. 2020)............................................................5, 9

Johnson Bank v. George Korbakes & Co., LLP,
    472 F.3d 439 (7th Cir. 2006) .........................................................................7

Krome v. Merrill Lynch & Co.,
    110 F.R.D. 693 (S.D.N.Y. 1986) ...................................................................4

Lattanzio v. Deloitte & Touche LLP,
    476 F.3d 147 (2d Cir. 2007).........................................................................8

Mitchell v. Lyons Prof'l Servs.,
    708 F.3d 463 (2d Cir. 2013)..........................................................................3

Mitchell v. Lyons Prof'l Servs.,
    727 F. Supp. 2d 116 (E.D.N.Y. 2010) ........................................................10

United States v. Lo Russo,
    695 F.2d 45 (2d Cir. 1982)............................................................................3

Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.,
    956 F.2d 1245 (2d Cir. 1992)........................................................................3

PRELIMINARY STATEMENT

Three Brothers Trading, LLC, d/b/a Alternative Execution Group ("AEXG") submits this Memorandum of Law in reply and further support of its motion for an order modifying the Court's May 28, 2020 Order to the extent that it denied AEXG's motion for an order directing the entry of a partial final judgment, and granting such other and different relief as the Court deems just and proper.

Despite its bluster and obfuscation, the fact remains, Generex carries a risk of insolvency – it has little cash on hand and relies on loans at almost usurious rates and dilution of its shares through continuous equity financing to operate. Generex does not deny that it is operating in significant deficit, that the overwhelming portion of its assets is just intangible "goodwill", or that even accounting for goodwill, it is still barely positive in net assets. Indeed, Generex's opposition is tellingly silent in its failure to dispute any of its financial weaknesses. The affidavit improperly submitted by Generex's CEO, Mr. Joseph Moscato, limits itself to saying that Generex "has no plans" to go bankrupt. Declaration of Joseph Moscato, Dkt. # 73-1. Few do.

Although Generex touts its fundraising efforts through issuance of new preferred stock, Generex entirely omits from its opposition that it is apparently *enjoined* by court order from issuing any more stock. Similarly, while arguing that it is not a collection risk in this case, Generex also omits that it has an unsatisfied $2.2 million judgment in another federal case heading into collections.

Although Generex may intend to continue operating and avoid bankruptcy, "[l]ife is not governed by will or intention."[1] Given Generex' questionable financial condition, AEXG requests

---

[1] Oscar Wilde, The Picture of Dorian Gray.

an order directing entry of partial judgment so it may collect the Confirmed Award without additional delay.

## REPLY POINT I

## RECONSIDERATION IS WARRANTED BASED ON ANY OF THE SEVERAL GROUNDS RAISED BY AEXG

The Court is empowered to grant reconsideration of its prior interim ruling at any time until a judgment is entered. The applicable law describing the various factors warranting reconsideration was already thoroughly briefed in AEXG's moving papers and AEXG will not take up the Court's time with simple regurgitation. AEXG's Memorandum of Law in Support Of Reconsideration, Dkt. # 71-1, p. 4-5.

Generex devotes a significant portion of its opposition arguing that AEXG has not demonstrated that the March 22, 2020 10-Q filing discussed in the reconsideration papers is newly discovered evidence. Respondent's Memorandum of Law In Opposition To Petitioner's Motion for Reconsideration ("Generex's Opp."), Docket # 73, p. 3-5.  It does not, however, address the other bases for reconsideration.  AEXG identified multiple grounds for reconsideration – a clear error that requires correction, a finding made without full-and-fair litigation, and the interest of justice.  See Dkt. # 71-1, p. 5; see also Farnum Place, LLC v. Krys, 690 Fed. Appx. 761, 767 (2d Cir. 2017) (reconsideration is appropriate if there is a need to correct a clear error or prevent manifest injustice); Mitchell v. Lyons Prof'l Servs., 708 F.3d 463, 468 (2d Cir. 2013) (reconsideration can also provide an "escape hatch", or an opportunity to be heard); Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992) (a court may revise its interlocutory orders at any time before entry of final judgment under Federal Rule of Civil Procedure 54(b) for good reason);  United States v. Lo Russo, 695 F.2d 45, 53 (2d Cir. 1982) (the court has "the inherent power to reconsider and modify its interlocutory orders prior to the entry

01135839.5

of judgment" in the interest of justice).

None of these bases require newly-discovered evidence.  Additionally, Generex artificially elevates the standard for reconsideration by exclusively addressing Federal Rule 60(b) jurisprudence.  AEXG is asking that the Court reconsider an interlocutory order; as such, the request is governed by the Court's inherent power, which is broader than Rule 60(b).  See, e.g., Krome v. Merrill Lynch & Co., 110 F.R.D. 693, 694-95 (S.D.N.Y. 1986).

The matter of Generex's solvency was raised for the first time during oral argument on the motion and only in response to Generex's assertion in the opposition that the 9% prejudgment interest adequate offset any prejudice to AEXG stemming from the delay in entering a judgment.  AEXG had no opportunity to file a reply letter pursuant to the Court's Individual Rules and no evidence was offered on the issue by Generex beyond the representations of Generex's counsel.  On reconsideration, AEXG has offered a plethora of actual documentary evidence to undermine counsel's statements and demonstrate that Generex's ability to satisfy a future judgment is in question, including but not limited to, the "going concern" reservations in Generex's own SEC filings.  To the extent that the Court reached its prior determination in reliance on counsel's representation – which as AEXG has shown, and as Generex does not dispute, lacks all evidentiary value – there is both the opportunity to correct an error and avoid substantial injustice.

Furthermore, even if, *arguendo*, good cause for reconsideration was not satisfied before, Generex's new and worsening financial condition more than justifies it now.  The 10-Q filed on June 22, 2020, referenced in Generex's opposition, discusses new and significantly worrying developments.[2]  Insofar as Generex is attempting to argue that it is creditworthy and that a 9%

---

[2]   Attached   as   Exhibit   A   for   the   Court's   convenience   but   also   available   at https://www.sec.gov/Archives/edgar/data/1059784/000160706220000184/gnbt043020form10q.htm.

4

01135839.5

interest rate more than suffices to secure AEXG's interests, this relies on Generex being capable of paying the judgment. As of this moment, Generex has a $2.2 unsatisfied judgment in the District Court of Delaware with a recently filed application for a writ of attachment – i.e. Generex is about to enter collection. Discover Growth Fund, LLC v. Generex Biotechnology Corp., 1:20-cv-00233-RGA, Dkt # 37 (D. Del. June 19, 2020).[3] Presumably, if Generex had the financial wherewithal to do so, it would have bonded or secured the outstanding judgment under Federal Rule of Civil Procedure 62(b) while pursuing any possible appeal to stay collections – especially if the Discover Growth litigation falls within Mr. Moscato's representation that Generex "believes it has meritorious defenses" to its pending lawsuits. Dkt. # 71-3, ¶8. Generex's failure to do so betrays the truth. In fact, Discover, where plaintiff must now expend further time and money on discovery to locate collectible assets, foreshadows AEXG's future burdens.

REPLY POINT II

GENEREX'S FINANCIAL CONDITION WARRANTS ENTRY OF A PARTIAL
JUDGMENT WITHOUT FURTHER DELAY

A.    The Financial Facts That Generex Does Not Dispute

Generex does not deny the financial reservations and limited cash flow problems. Most notably, in opposition, neither Generex nor its CEO deny the following facts:

1. Generex's 10-Q filings include a "going concern" reservation by independent accountant/auditors because it had an accumulated deficit of approximately $435 million and working capital deficiency of about $35.6 million as of January 31, 2020.

---

[3] A copy of this proposed writ is attached hereto for the Court's convenience as Exhibit B. AEXG learned that a judgment had been entered in Discover and the preliminary injunction in the Utah action, Iliad Research & Trading, LP. V. Generex Biotechnology Corp., No. 200903161 (Ut. Dist. Ct.), discussed infra, from Generex's June 22, 2020 10-Q filing referenced in Generex's opposition.

5

2.  As of January 31, 2020, Generex had only approximately $269,000 in cash and cash equivalents, which is insufficient to pay even the current Confirmed Award.

3.  Generex's net assets, even accounting for its intangible $38 million in "goodwill", were a mere $4 million as of January 1, 2020. This again would be insufficient to satisfy the award should AEXG prevail on remand as Generex would need to pay $315,000 Confirmed Award plus the approximately $3.3 million claimed value of the warrant, additional interest amounting to perhaps $1 million[4], and attorney's fees on that sum.

4.  Generex has recently had to borrow funds at exorbitant rates of 22% and 24% interest, just shy of the New York usury rates.[5]

5.  As of January 2020, Generex was defending against multiple litigations with contingent liability of up to $11 million, to which it assigns a $0.00 valuation on its already strained balance sheets.

Further, Generex does not genuinely dispute that the "going concern" statement is in fact a red flag. Generex makes two arguments with regard to the "going concern" qualification. First, it attempts to pass off the warning as a lazy carryover by overly cautious accountants (Generex's Opp. At 5-6). This is facially implausible, as auditors actually face only *de minimis* risk of liability for the failure to include a "going concern" warning. See Fehribach v. Ernst & Young LLP, 493

---

[4] Interest is conservatively calculated assuming the 9% simple interest from the date of breach, March 27, 2017, until September 2020, when the arbitration hearing is currently scheduled.

[5] Indeed, in the Alpha Capital litigation, Generex's own argument – submitted in support of a cross-motion for summary judgment – is that the terms of its note were so egregious that the transaction was void *ab initio*, entitling Generex to pocket the $550,000 advanced by Alpha Capital and pay nothing back. Dkt. # 71-3, p. 14. Generex explains that it accepted these predatory terms because it was "desperate for cash." "Affirmation in Opposition to Motion to Strike Affirmative Defense", NYSCEF No. 52 in Alpha Capital Anstalt v. Generex Biotechnology Corporation and Joseph Moscato, 0650918/2019 (Sup. Co. N.Y. Co.). A copy of this NYSCEF filing is annexed hereto as Exhibit C for the Court's convenience.

This desperation contrasts sharply with Generex's sanguine assurances in opposition.

6

01135839.5

F.3d 905, 910 (7th Cir. 2007) (Posner, J.) ("Such cases are rare because it is unusual for the audited firm to be able to make a plausible contention that it could not have been expected to recognize its financial peril on its own").  It is also unevidenced:  Generex's counsel merely makes the assertion. Nothing in Moscato's affidavit submitted with Generex's opposition addresses the origin of the "going concern" language or attributes it to overly-cautious auditors.[6]

Generex's second point is to cavil that AEXG's case citations to the effect that "going concern" statements are considered red flags contain court commentary on party argument, rather than holdings (Generex's Opp. at 6).  This argument goes nowhere, insofar as Generex does not genuinely contest that "going concern" statements are red flags – it merely seeks to poke holes in AEXG's case law.

The "holes" themselves are immaterial.  While it is true that the words "red flag' in In Re North American Acceptance Corp. Securities Cases were plaintiffs', the Court went on to deny defendant Touche Ross's summary judgment motion based on exactly that argument, thereby finding that the improper failure to include a "going concern" qualification could constitute a material misstatement.  513 F. Supp. 608, 637 (N.D. Ga. 1981).[7]  In other words, the "argument" that AEXG cited prevailed because the court accepted the significance of the "going concern" qualification.

---

[6] The Local Rules of the United States District Courts for the Southern and Eastern Districts of New York expressly state "No affidavit shall be filed by either party unless directed by the Court."  Local Civil Rule 6.3.  Moscato's affidavit is thus improper and could be completely disregarded.  Given that the affidavit is largely to the detriment of Generex's case, however, AEXG urges that the Court read and consider it.

[7] Generex is flat-out wrong, however, about Johnson Bank v. George Korbakes & Co., LLP, 472 F.3d 439 (7th Cir. 2006).  In that case, just as AEXG said, Judge Posner himself characterized a "going concern" statement as an indication that the company is "teetering on the brink of bankruptcy", and cited as authority for his characterization both Copy-Date Systems, Inc. v. Toshiba America, Inc., 755 F.2d 293, 299 (2d Cir 1985) and American Institute of Certified Public Accountants, "The Auditors Consideration of an Entity's Ability to Continue as a Going Concern," Statement on Auditing Standards, No. 59, P5-6, pp. 3-4 (1988).

01135839.5

More to the point, Generex has found no cases to the contrary, indicating that a "going concern" statement is less than a red flag. This is because it is widely recognized that "going concern" warnings are, in fact, red flags. The Second Circuit has held that the "going concern" warning "generally indicates the auditor's opinion that a company is faced with a serious risk of bankruptcy, and, therefore, that valuation of its assets as part of a going concern may be incorrect." Copy-Date Systems, Inc. v. Toshiba America, Inc., 755 F.2d 293, 299 (2d Cir. 1985). It has also held that the inclusion of a "going concern" warning is an "ominous alarm" that provides "substantial indicia of the risk" that a company will "file for bankruptcy", and thus, provides notice of risk sufficient to interrupt proximate cause under Rule 10b-5. Lattanzio v. Deloitte & Touche LLP, 476 F.3d 147, 158 (2d Cir. 2007). Generex's attempts to trivialize the "going concern" qualification simply fail.

B.     The New Quarterly Filing From June 22, 2020 Paints An Even More Disturbing Picture

Generex points to its most recent quarterly filing, from June 22, 2020, and proudly proclaims that it still has not gone into bankruptcy despite yet another going concern warning (Id. at 6). It's bewildering why Generex touts this new filing as it highlights a worsening financial condition.

The June 22, 2020 10-Q contains the same "going concern" warning pointing to worsening deficit of $440.4 million and working capital deficiency of about $37.6 million while noting that Generex has funded its operations "almost exclusively from debt and equity financings." Ex. A at 9. Furthermore, Generex's sales are significantly down from the COVID-19 crisis. Indeed, the previous net assets of $4 million from its March 2020 quarterly report have shrunk to $1.1 million with $51.9 million in assets (of which $38.9 million is "goodwill") and $50.8 million in liabilities. Id. at 3.

As for Generex's argument that it is raising funds through a new sale of preferred stocks, neither Generex nor its CEO explain exactly how such a sale would even proceed given the

8

injunction entered in Utah state court prohibiting Generex from issuing any more shares absent court permission (Generex Opp. at 7).  Specifically, Generex admits in its SEC filing that "[o]n Friday, May 29, 2020, the Third District Court entered a ruling that Generex may not issue, transfer or otherwise dispose of any shares of stock without receiving court approval from the judge in the Utah Third District Court." Ex. A at 14.  Although the injunction is disclosed in its SEC mandated filing, which Generex's opposition expressly cites, no mention of this significant impediment appears in Generex's opposition.

The plaintiff in the Utah action, Iliad, seems to share some of the same concerns as AEXG. In its motion for a temporary restraining order, Iliad argued that Generex's "financial position appears fairly dire" based on a 63% increase in Generex's outstanding common stock in a short three month period between December 2019 and March 2020, limited cash reserves, low net assets and company's expenditure of $4.6 million in just six months.  Iliad Research & Trading, L.P. v. Generex Biotechnology Corp., No. 200903161, Motion for Temporary Restraining Order, Preliminary Injunction and Prejudgment Writ of Attachment, p. 10 (Ut. Dist. Ct. May 6, 2020) annexed hereto as Exhibit D.[8]  Thus, Iliad requested and apparently obtained a restraining order preventing further dilution of the common stock through additional issuance or sale.

The recent 10-Q also discloses that Generex has an unsatisfied $2.2 million judgment from the District Court of Delaware and is about to enter collection. See Ex. A at 14; Ex. B.  Generex filed a notice of appeal from this judgment but did not bond or secure the judgment as permitted

---

[8] AEXG also urges the Court to note the circumstances that occasion Iliad's motion:  Generex defaulted on a promissory note, entered into – on April 8, 2020 – a Forbearance Agreement so as to stave off collection action on said note, and, less than two weeks later, breached the Forbearance Agreement. Ex. D at ¶¶21-24.  Generex explained its breach by invoking *force majeure* and commercial impracticality caused by the coronavirus. Id. at ¶25.  The Court may take judicial notice that the coronavirus pandemic was a known phenomenon on April 8, 2020.

It is unclear how Generex can represent that the global pandemic is simultaneously both a lifeline to its business and an excuse for not honoring its contracts.

9

under Federal Rule of Civil Procedure 62(b) to prevent enforcement.  On June 19, 2020, plaintiff filed a praecipe for writ of attachment (Ex. B) and noticed a deposition of Moscato to obtain discovery on possible location of collectable assets.[9]

Against this backdrop, Generex attempts to argue that it is financially healthy because it is working on a proverbial "Hail Mary":  a COVID-19 vaccine.  Of course, Generex is one of 153 companies currently working on some version of a vaccine.[10]  Whether Generex will be the one to catch a break and develop a world-saving cure is, obviously, entirely speculative.  Similarly, the declaration of Generex's CEO, Moscato, that the company intends to continue operation is also speculative and constitutes nothing more than aspiration (Generex's Opp., Ex. 1).

The law, however, cautions that entry of partial final judgment is proper "especially [] where the defendant's solvency or ability to pay a judgment in the future is in question." Mitchell v. Lyons Prof'l Servs., 727 F. Supp. 2d 116, 120 (E.D.N.Y. 2010); Curtiss-Wright Corp. v. Gen. Elec. Co., 446 U.S. 1, 12, 100 S. Ct. 1460, 1467 (1980).  Notably, AEXG cited these authorities in its prior memorandum of law, and Generex's opposition ignores them.

Generex does not have to be on the brink of bankruptcy or without all hope for AEXG to be entitled to entry of partial final judgment.  Indeed, this motion would be futile if that were the case, as Generex could simply file and obtain the benefit of the automatic stay.  Rather, the law requires only that the entity's solvency or future ability to pay be *in question*.  The financial disclosures and pending litigation, including recent developments, raise serious questions as to Generex's ability to pay a final judgment.  Generex has put none of these questions to rest.  To the

---

[9] Discover Growth Fund, LLC v. Generex Biotechnology Corp., 1:20-cv-00233-RGA, Dkt # 36 (D. Del. June 19, 2020), a copy of which is attached hereto for the Court's convenience as Exhibit E.  The Court may note that Generex and Moscato are represented by the Delaware office of Eckert Seamans in the Discover Growth matter.

[10] COVID-19 Drug and Vaccine Pipeline Status Report: May 2020 Update, BusinessWire, https://www.businesswire.com/news/home/20200529005207/en/COVID-19-Drug-Vaccine-Pipeline-Status-Report- (last updated May 29, 2020).

10

01135839.5

extent that the Court's prior determination rested on the impression that Generex was not in financial jeopardy, the determination should be modified.

CONCLUSION

For the foregoing reasons, the Court should issue an order modifying the Court's May 28, 2020 Order to the extent that it denied AEXG's motion and granting such other and different relief as the Court deems just and proper.

Dated: Malverne, NY
       July 1, 2020

**SHAUB, AHMUTY, CITRIN & SPRATT, LLP**

/s/John F. Watkins .
John F. Watkins
Jonathan P. Shaub
Sofya Uvaydov
Counsel for Petitioner
Three Brothers Trading Co., d/b/a AEXG
1983 Marcus Avenue, Suite 260
Lake Success, New York 11042
Telephone: (516) 488-3300
Fax: (516) 488-2324
jwatkins@sacslaw.com
jshaub@sacslaw.com
suvaydov@sacslaw.com

TO:   **ECKERT SEAMANS CHERIN & MELLOTT, LLC**
      Timothy P. Coon, Esq.
      Eckert Seamans Cherin & Mellott, LLC
      10 Bank Street, Suite 700
      White Plains, NY 10606
      Tel: (914) 286-6438
      tpcoon@eckertseamans.com

11

01135839.5