# EXHIBIT 14

**INTERNATIONAL CENTRE FOR DISPUTE RESOLUTION**
**International Arbitration Tribunal**

**IN THE MATTER OF THE ARBITRATION BETWEEN**

**THREE BROTHERS TRADING LLC**

**V.**

**GENEREX BIOTECHNOLOGY CORP**

**CASE # 03-17-0007-1894**

**AMENDED AWARD OF ARBITRATOR**

I, THE UNDERSIGNED, was designated as Arbitrator in accordance with an agreement to arbitrate dated February 8, 2017 between Three Brothers Trading, LLC and Generex Biotechnology Corp and was duly sworn. As directed by the United States District Court in an Opinion and Order dated April 23, 2020 remanding a specific matter in connection with my Award dated December 3, 2018, I issue this Amended Award.

After a Hearing in this arbitration on September 24, 2018 I issued the Award dated December 3, 2018, which included a finding of liability in favor of Claimant and a determination that Claimant was the Prevailing Party entitled to payment of specified amounts for fees and costs. Following the issuance of that Award Claimant sought its enforcement in the United States District Court for the Southern District of New York and enforcement was opposed by Respondent. The District Judge decided that the Award should not yet be enforced because it was not definite on a single matter that, as Arbitrator, I had not decided, the economic value as of December 3, 2018 of 84,000 warrants convertible to Generex's stock exercisable as of September 24, 2017. The District Judge held that, to permit the Arbitrator to address that issue, the matter should be remanded for a decision on the value of the warrants on December 3, 2018. In my earlier Award I had not reached a determination on that question due to a lack of sufficient evidence. That evidence had not been included in the then existing record because the Hearing in the Arbitration

had been closed before a significant event, the issuance of a stock dividend, that had effectively and materially reduced the value of individual shares of Respondent's stock.

Pursuant to the District Judge's decision and order a further hearing was held to permit the taking of additional evidence in the Arbitration as to the value of the subject warrants on the appointed date. Also, pursuant to the Judge's Order I am to award fees and costs to be paid to Claimant by the Respondent for the additional proceedings to enforce the Order.

The additional Hearing was held on September 9, 10, 11, 23 and 24, 2020. It was conducted virtually with the consent of the Parties. Respondent has argued that I should determine that for that Hearing, it was in fact the Prevailing Party, but Pursuant to the clear direction of the District Judge that is not a question open for further determination. Instead, Claimant is properly to be considered the Prevailing Party for all purposes.

Although Respondent argues otherwise, based on the plain language of the Parties' agreement, prior Court rulings and the applicable Commercial Arbitration Rules of the American Arbitration Association ("AAA Rules"), the fees and costs to be awarded properly include the charges incurred by Claimant in the Court proceedings to enforce the Award as well as the additional Arbitration proceedings. Contrary to Respondent's arguments those efforts in court by Claimant are all related to and/or an extension of the Arbitration proceeding and, therefore, within the scope of the Parties' agreement to compensate the prevailing Party for its fees and costs.

The underlying facts having been summarized in the previous Award and being well known to the Parties, I will not repeat them here.

As reflected in the expanded record, the stock dividend issued following the previous Hearing provided existing shareholders with a substantial number of new shares of stock for every single share they then held. Had the dividend not been issued following the earlier closing of the record

and before the date of the earlier Award, my Award would, as an appropriate remedy, have included an order of specific performance directing that Respondent issue to Claimant warrants for 84,000 shares of its stock with a five year term; but if warrants for that specific number of shares had then been issued without adjustment for the stock dividend, the 84,000 shares the warrants would have commanded would have had a value far lower than at and before the Hearing and far below their value as contemplated by the Parties' agreement. The Parties' agreement plainly calls for issuance to Claimant of warrants for shares equivalent to 7% of the investment by Pharma Trials, LLC and, in the end, the relief afforded to Claimant should not result in delivery of warrants, or alternative consideration, worth less than the 7% called for by the agreement.

With the more complete record now before me it appears that, consistent with the plain language of the agreement and without resort to parole evidence as to the interpretation of the MOU, the appropriate value of the warrants should, therefore, be adjusted for the stock dividend and, accordingly, be set as of the specified December 3, 2018 date at $3,300,000. In setting that amount I have adjusted for the stock dividend and, consistent with the calculations of the Parties' experts, used the warrants' intrinsic value (the average stock price minus the exercise price of $2.50 times the number of warrants) as the proper measure. By setting that as the value of the shares, the Award provides cash consideration to Claimant essentially equivalent to the warrants it would have received through an order of specific performance as of December 3, 2018, adjusted for the stock dividend. It is, therefore, consistent with the Parties' bargain that Claimant should receive the equivalent of 7% of the Pharma Trials' investment.

Such an award is appropriate because, had the warrants instead been issued to Claimant - as they should have been - on or about the date of breach, Claimant would, for five years from that date, have been free either to exercise the warrants or hold them and thereby benefit from the stock dividend. Holding the warrants during the five-year term, Claimant could have exercised them before the dividend was issued and in that way received the benefit of the dividend. Claimant,

once holding the warrants, could also have benefitted from the adjustment in the value of Respondent's shares afforded in advance to all holders of Derivative Securities, including "outstanding" warrants, to compensate them fairly for the dividend.

Although the warrants in issue were not in fact outstanding as of the date of the stock dividend, had the Respondent lived up to its agreement with Claimant and delivered them to Claimant on or about the date of breach, they would either have been outstanding on the dividend date or they would already have been exercised with the necessary shares and increased in number by the dividend. To disallow the benefit of the dividend to Claimant, as Respondent urges, because the warrants were not yet outstanding at the date when the dividend was issued, would be to permit Respondent to benefit from its breach of the agreement to timely issue the warrants. To fail to adjust for Respondent's unilateral dilution of the value of the shares by issuance of the dividend, while at the same time it failed to issue the warrants to Claimant, would be to permit Respondent to evade the express provisions in the Parties' agreement as to Claimant's compensation.

Contrary to Respondent's argument, the absence of an express price adjustment provision in the warrants has no effect here. The Board's Resolution designed to protect holders of derivative securities, including outstanding warrants, was not dependent on the individual derivative securities containing provisions for price adjustments. Likewise, Claimant's ability to exercise warrants it held properly from the date of breach before the dividend was issued, would in no way have depended on their containing a price adjustment provision. In addition, because there is no evidence in the record that during negotiation of the MOU the Parties contemplated the issuance of a stock dividend, there is no basis upon which I may conclude that the absence of a price adjustment provision reflected an intent by the Parties to allow Respondent to change at will the MOU's provisions for calculating compensation. The express 7% provision is instead controlling as to the Parties' intent.

4

Respondent's argument that, to the extent that it referred to warrants the applicable language of the Board Resolution should be discounted as mere boiler plate is unpersuasive. I know of nothing that says language in a Board resolution may be set aside by a party unilaterally because it is a standard provision.

Respondent argues that it would not be equitable to afford the Claimant the benefit of the stock dividend and the ultimate value of the stock into which the warrants, duly adjusted, could have been converted. It urges that it would be inequitable because it would afford Claimant a fee for services out of proportion to the typical fee for the kind of services it rendered. Rather than being fair, if I did as Respondent asks, my Award would unfairly deprive Claimant of the benefit of the gamble it took in accepting the warrants, rather than a set monetary amount, in partial payment for its services. That Claimant will receive far more than a standard fee is exactly what it sought in return for its running the significant risk that, aside from the limited, separate fixed fee provided, it would receive little or nothing. If it had received little or nothing, as for a time appeared quite likely, that too would have resulted in a fee different from the standard fee, with I expect no complaint from the Respondent. That one party could lose a significant amount and the other get a windfall as a result of the agreed gamble was the essence of the bargain and Claimant is entitled to the benefit of that bargain.

Respondent also urges that I should depart from my initial Award and value the Warrants at the date of breach. It posits that that is necessary because damages for breach of contract under New York law are set at the date of breach. In addition to the binding effect of the District Judge's decision limiting my current finding to the warrants' value on the date set in the initial Award, Respondent's argument fails to take account of the Claimant's right to warrants having a five-year discretionary exercise period. Relief should put Claimant in the approximate position in which it would have been but for the breach and that certainly should include the value of the option to exercise the warrants within the five-year period that Claimant bargained for. It did not just bargain for the right to exercise the warrants on a single day.

#94040240v2

Nor should New York law control as to what may be an appropriate remedy. The Parties agreed to arbitrate under the Commercial Rules of the American Arbitration Association, and it is those Rules that control here as to remedy. Rule 47(a) provides that I may provide for a remedy that is just and equitable and within the scope of the agreement. By choosing to award a monetary amount equivalent to the award of specific performance to which Claimant was entitled I have done that.

Nor, if New York law did control, would it require measuring damages by comparison of the warrant and market prices at the date of breach. Among other considerations, that measure applies where there is the potential for Claimant to mitigate its damage on the date of breach by buying the equivalent security in the market. In this case there was no reasonable option to mitigate in that way. There was no independent source for replacement of the warrants because no such warrants were as yet outstanding; and purchase of an equivalent amount in stock in a thin market, when the warrants were out of the money, would at the time have placed a patently unreasonable burden on Claimant.

Moreover, because the Parties had agreed on a liquidated damage provision providing for specific performance this is not a situation calling for the measure of contract damages Respondent suggests.

Nor is it unduly speculative to afford Claimant the set measure of loss as of December 3, 2018. Due to the breach and Respondent's continued refusal to comply with the agreement by issuing the warrants, as a practical matter the date of my earlier Award would have been the first date at which it was possible for Claimant to have benefitted from the specific performance called for by the agreement.

Before considering fees and costs I would add that I have accepted the testimony of Claimant's expert, Mr. Arnold Katzenbaum, as that of an expert; but I have done so recognizing the limitations on his experience that were the subject of both testimony and argument.

Consistent with the initial Award and the District Judge's ruling, Claimant has submitted its fee request for its efforts to enforce the initial Award both in Court and in the additional Arbitration Hearing. Respondent has challenged the request as including fees for appearances in court not in Arbitration that would, it asserts, extend beyond my jurisdiction as an Arbitrator under New York law. To the contrary, the Parties agreed that a Prevailing Party should be Awarded fees and expenses arising out of an Arbitration and, as already noted, the efforts in Court for which fees have been sought were a direct result and effectively an extension of the Arbitration.

Respondent has also challenged the portion of the fees and expenses submitted for work by the Akin Gump law firm, which I understand to have initially been Claimant's primary firm in this proceeding. While the Akin Gump rates are much higher than those for the other two firms acting in the proceeding, as Claimant has demonstrated, they are within the range of acceptable market rates. Added confirmation that they are within an acceptable market range is to be found in the fact that they have been paid. Respondent's efforts to rely in its briefing on the level of hourly rates approved in other cases was notably incomplete and, in any event, there is at any time a wide band to hourly rates in the market.

To the extent that there is a practical question as to whether a firm like Akin Gump, with such relatively high hourly rates, should have been retained for this type of matter, Claimant's change to counsel with lower rates would appear to have been a deliberate and commendable step to limit its costs.

Respondent adds an argument that a line item in the invoices of the Akin Gump firm for work in connection with the earlier Arbitration proceedings, upon which I ruled in the prior Award, was in

fact improper because it purported to be a charge for work on a deposition when there had been no depositions. Respondent's argument appears to raise a genuine problem but, because the earlier record is closed and consideration of fees from the earlier proceedings is not included within the current remand, I cannot address the issue here. Nor can I conclude that a single possible error in Akin Gump's earlier request for fees is reason to disregard its request overall. Separately, I find no fault with Akin Gump's claims for fees.

AMENDED AWARD

As a result, my award dated December 3, 2018 is Amended as follows:

1. Claimant is awarded US $3,300,000 as the economic value of the warrants at December 3, 2018 plus accrued simple interest running at 9% from December 3, 2018.

2. As the Prevailing Party Claimant is awarded a total of US $550,319.92 as payment of additional attorneys' fees and very limited disbursements in the amount of US $513,133.69 in addition to US $14,520.00 for payment of expert Arnold Katzenbaum, US $8,580.00 for the valuation of warrants by Richard Alter of Alternative Executive Group and US $14,086.23 in costs for Akin Gump. Plaintiff has shown that in a number of ways, including but not limited to change of counsel, it took steps to keep its attorneys' fees reasonable.

3. The compensation of the Arbitrator incurred in connection with these remanded arbitration proceedings totaling $31,112.50 shall be borne equally by the Parties. There were no administrative fees for the International Centre for Dispute Resolution.

4. This award is in full settlement of all claims and requests submitted in these remanded arbitration proceedings.

I hereby certify that for the Purposes of Article I of the New York Convention of 1958, on the recognition of Foreign Arbitral Awards, this Amended Award was made in New York, New York, United States of America.

1/29/21
Date

_____
Daniel F. Kolb

State of NEW YORK       )
                        ) SS:
County of NEW YORK      )

I, Daniel F. Kolb, do hereby affirm upon my oath as Arbitrator that I am the individual described in and who executed this instrument, which is my Amended Award.

1/29/21
Date

_____
Daniel F. Kolb, Arbitrator

State of NEW YORK       )

New York ) SS:

County of NEW YORK )

On this 29th day of January __, 2021, before me personally came and appeared Daniel F. Kolb, to me known and known to me to be the individual described in and who executed the foregoing instrument and he acknowledged to me that he executed the same.

_____
Notary Public

JOHNATHAN URUCHIMA
NOTARY PUBLIC STATE OF NEW YORK
NO. 01UR6381271
Qualified in the County of New York
Commission Expires October 1, 2022