**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| THREE BROTHERS TRADING, LLC, d/b/a ALTERNATIVE EXECUTION GROUP, <br><br> Petitioner, <br><br> v. <br><br> GENEREX BIOTECHNOLOGY CORP. <br><br> Respondent. | Civil Action No. 18-CV-11585 (KPF) |

## PETITIONER'S STATEMENT OF UNDISPUTED MATERIAL FACTS PURSUANT TO LOCAL RULE 56.1

Pursuant to Local Rule 56.1, Petitioner Three Brothers Trading, LLC, d/b/a Alternative Execution Group ("AEXG" or "Petitioner"), by its undersigned counsel, Shaub, Ahmuty, Citrin & Spratt, LLP, respectfully submits the following statement of undisputed facts.[1]

### A. The Parties

1.     AEXG is a limited liability company under the laws of New York.[2]

2.     The members of AEXG are Richard Alter and Caroline Alter.[3]

---

[1] AEXG submits this statement pursuant to Local Rule 56.1, notwithstanding its prior such statements (Dkt. #22 & Dkt. #54), which accompanied its prior summary judgment motions (Dkt. #17 & Dkt. #48). Paragraphs 1-100 of this statement are identical to paragraphs 1-100 of Dkt. #22, and Paragraphs 1-130 are identical to paragraphs 1-130 of Dkt. #54; subsequent paragraphs are original to this statement, reflecting the present posture of the case, which has developed since the first two summary judgment motions. Certain paragraphs that are no longer material to the present motion have been omitted and are labelled "intentionally omitted" without modification of the paragraph numbering for ease of reference of both the parties and the Court. For the avoidance of doubt, insofar as paragraphs 1-130 differ from those of AEXG's prior 56.1 statements, AEXG's factual contentions are unchanged except that AEXG no longer seeks to characterize the Award in any way that is incompatible with the Arbitrator's clarification, and all outstanding issues in this case are now resolved. AEXG is simply putting forth such facts as are material and undisputed to the present motion.

[2] See Declaration of Richard Alter dated February 4, 2019 (the "Alter Decl.") ¶ 3; Petition to Confirm Arbitration Award, Dkt. #1 (the "Petition") ¶ 2; Respondent Generex Biotechnology Corporation's Answer and Affirmative Defenses to Petition to Confirm Arbitration Award, Dkt #14 ("Generex's Answer") ¶ 2.

[3] See Alter Decl. ¶ 4; Petition ¶ 2; Generex's Answer ¶ 2.

3.      Richard and Caroline Alter are residents of Westchester County, New York.[4]

4.      AEXG's principal place of business is located at 708 Third Avenue, New York, New York 10017.[5]

5.      Generex Biotechnology Corp. ("Generex") is a Delaware entity.[6]

6.      Generex's principal place of business is located at 4145 North Service Road, Burlington, Ontario, Canada and 10102 USA Today Way, Miramar, Florida 33025.[7]

**B.  The Contract**

7.      In February 2017, AEXG and Generex entered into a written Memorandum of Understanding (the "Contract").[8]

8.      In the Contract, the parties memorialized the terms whereby AEXG would provide referral services to Generex, which wished to secure financing for its business.[9]

9.      In exchange for AEXG's services, Generex agreed to compensate AEXG as follows:

(i)      Upon receipt of funds from a Referred Party, the Company [Generex] will pay AEXG 7% (Seven Percent) of the funds received.

(ii)     In addition to compensation pursuant to section (i), above, the Company [Generex] will issue to AEXG, or to representatives or agents of AEXG as instructed by AEXG, warrants equivalent to any warrants sold or issued to a Referred Party.  These warrants will have the same substantive terms and conditions, including duration, exercise price, price adjustment provisions, and the like as any warrants issued to the Referred Party.  AEXG will pay the Company [Generex] $100 for these warrants which shall be issued in an amount equivalent to 7% of those issued to the Referred Party.  If no

---

[4] *See* Alter Decl. ¶ 4; Petition ¶ 2; Generex's Answer ¶ 2.

[5] *See* Alter Decl. ¶ 4; Petition ¶ 2; Generex's Answer ¶ 2.

[6] *See* Respondent Generex Biotechnology Corporation's Cross-Petition to Vacate, Modify and or Remand the Arbitration Award, Dkt #15 (the "Cross-Petition") ¶ 1; Petitioner's Answer to Respondent's Cross-Petition to Vacate, Modify and or Remand the Arbitration Award, Dkt #16 ("AEXG's Answer") ¶ 1.

[7] *See* Cross-Petition ¶ 1; AEXG's Answer ¶ 1.

[8] *See* Alter Decl. ¶ 5; Memorandum of Understanding between AEXG and Generex ("Contract"), a true and correct copy of which is attached as Exhibit A to the Alter Declaration.

[9] *See* Alter Decl. ¶ 5; Alter Decl., Ex. A (Contract) at 1.

2

warrants are issued to the Referred Party in a transaction triggering compensation pursuant to this document, the Company [Generex] shall issue to AEXG, or to representatives or agents of AEXG as instructed by AEXG, warrants exercisable at the price paid by the Referred Party for Company [Generex] shares, equivalent in number to 7% of the number of shares purchased by the Referred Party. These warrants shall have a 5-year duration. AEXG, AEXG's representatives, or agents will have piggyback registration rights with respect to the warrants, which will be exercisable for cash only.[10]

10.    The Contract did not put a ceiling on the value of the warrants.[11]

11.    The Contract did not provide an additional payment from Generex to AEXG if the warrants were to expire without AEXG exercising them, i.e., if the warrants' strike price was below Generex's share price.[12]

12.    The parties envisioned that the warrants issued pursuant to the Contract could have either benefited AEXG (i.e., if Generex's stock price went above the warrants' strike price, which it did) or ended up costing Generex nothing (i.e., if AEXG never exercised the warrants), depending on Generex's performance.[13]

13.    Generex did not provide a retainer fee to AEXG.[14]

14.    The parties agreed to a sixty-day "No Shop" exclusivity provision (the "No Shop Provision"), which ran from February 8, 2017 to April 9, 2017 (the "Exclusivity Period").[15]

15.    During the Exclusivity Period, the advisory relationship with AEXG was exclusive.[16]

---

[10] *See* Alter Decl. ¶ 6; Alter Decl., Ex. A (Contract) at 1.

[11] *See* Alter Decl. ¶ 7.

[12] *See* Alter Decl. ¶ 7.

[13] *See* Alter Decl. ¶ 7.

[14] *See* Alter Decl. ¶ 8.

[15] *See* Alter Decl. ¶ 8; Alter Decl., Ex. A (Contract) at 2.

[16] *See* Alter Decl. ¶ 8; Alter Decl., Ex. A (Contract) at 2.

16.     During the Exclusivity Period, Generex agreed that it would not "directly or indirectly discuss, negotiate, consider, or enter into any financing transaction other than with existing shareholders."[17]

17.     The Contract included an explicit remedy for AEXG if Generex breached the No Shop Provision.[18]

18.     In the event that Generex secured any financing from an investor not referred by AEXG during the Exclusivity Period, Generex was to compensate AEXG as if AEXG had sourced the financing.[19]

19.     The Contract states: "Should an investor other than a Referred Party make an investment during the exclusive period, . . . AEXG will be compensated according to the compensation provisions detailed [in the Contract]."[20]

20.     These damages included Generex granting warrants to AEXG.[21]

21.     The amount of warrants granted to AEXG was to be determined based on the amount of financing Generex received.[22]

22.     The price of the warrants was to be determined based on the terms of the arrangement between Generex and the financing party.[23]

23.     The parties agreed to arbitrate any disputes concerning the Contract.[24]

---

[17] *See* Alter Decl. ¶ 8; Alter Decl., Ex. A (Contract) at 2.

[18] *See* Alter Decl. ¶ 9; Alter Decl., Ex. A (Contract) at 2.

[19] *See* Alter Decl. ¶ 9; Alter Decl., Ex. A (Contract) at 2.

[20] *See* Alter Decl., Ex. A (Contract) at 2.

[21] *See* Alter Decl. ¶ 9; Alter Decl., Ex. A (Contract) at 1.

[22] *See* Alter Decl. ¶ 9; Alter Decl., Ex. A (Contract) at 1.

[23] *See* Alter Decl. ¶ 9; Alter Decl., Ex. A (Contract) at 1.

[24] *See* Alter Decl. ¶ 10; Alter Decl., Ex. A (Contract) at 3.

24.     Specifically, the Contract provides: "Any controversy or claim arising out of, or relating to, this Agreement, to the making, performance, or interpretation of it, shall be settled by arbitration in New York, New York unless otherwise mutually agreed upon by the parties."[25]

25.     The Contract also had a cost-shifting provision that required the non-prevailing party to reimburse reasonable attorneys' fees and other costs associated with disputes arising under the Contract.[26]

26.     The Contract states:

> If any legal action or any arbitration or other proceeding is brought for the enforcement of this Agreement, or because of an alleged dispute, breach, default, or misrepresentation in connection with any provisions of this Agreement, the successful or prevailing party or parties shall be entitled to recover reasonable attorney's fees and other costs incurred in that action or proceeding, in addition to any other relief to which it or they may be entitled.[27]

**C.  The Arbitration**

27.     AEXG performed its obligations under the Contract.[28]

28.     In or around March 2017, AEXG presented Generex an appropriate and willing potential investor, Kodiak Capital Group, LLC ("Kodiak"), which was prepared to invest $3 million in Generex.[29]

29.     On March 28, 2017, Generex rejected the Kodiak investment.[30]

30.     On March 28, 2017, Generex agreed to enter into a financing agreement with another investor not referred by AEXG, Pharma Trials, LLC ("Pharma").[31]

---

[25] *See* Alter Decl., Ex. A (Contract) at 3.

[26] *See* Alter Decl. ¶ 24; Alter Decl., Ex. A (Contract) at 3.

[27] *See* Alter Decl., Ex. A (Contract) at 3.

[28] *See* Alter Decl. ¶ 11.

[29] *See* Alter Decl. ¶ 11.

[30] *See* Alter Decl. ¶ 11; AEXG's Demand to Arbitrate ("Demand to Arbitrate"), a true and correct copy of which, including the exhibits, is attached as Exhibit B to the Alter Declaration, at Ex. 2.

[31] *See* Alter Decl. ¶ 11; Alter Decl., Ex. B (Demand to Arbitrate) at Ex. 2.

31.     The financing arrangement with Pharma involved Generex receiving $3 million from Pharma.[32]

32.     In exchange for the $3 million, Pharma received 3,000 preferred shares convertible into 1,200,000 shares of common stock at a conversion price of $2.50 per share.[33]

33.     This was a breach of the Contract's No Shop Provision.[34]

34.     On August 22, 2017, AEXG, through its counsel, sent a letter to Generex.[35]

35.     The letter informed Generex that AEXG considered its conduct on March 28, 2017 a breach of the Contract.[36]

36.     On November 27, 2017, AEXG formally demanded that the parties submit their dispute to arbitration before the AAA.[37]

37.     In the demand, AEXG sought "$210,000, along with 84,000 warrants convertible to Generex common stock, exercisable at $2.50 per share, plus accrued simple interest running at New York's statutory rate of 9% from March 28, 2017, along with attorneys' fees, costs and expenses."[38]

38.     The amount of warrants (84,000) was calculated based on the $3 million investment Generex received from Pharma.[39]

39.     The dispute was referred to AAA's international division, the International Centre for Dispute Resolution.[40]

---

[32] *See* Alter Decl. ¶ 11; Alter Decl., Ex. B (Demand to Arbitrate) at Ex. 2.

[33] *See* Alter Decl. ¶ 11; Alter Decl., Ex. B (Demand to Arbitrate) at 13, Ex. 2.

[34] *See* Alter Decl. ¶ 11; Alter Decl., Ex. A (Contract) at 2; Alter Decl., Ex. B (Demand to Arbitrate) at Ex. 5.

[35] *See* Alter Decl. ¶ 12; Alter Decl., Ex. B (Demand to Arbitrate) at Ex. 5.

[36] *See* Alter Decl. ¶ 12; Alter Decl., Ex. B (Demand to Arbitrate) at Ex. 5.

[37] *See* Alter Decl. ¶ 13; Alter Decl., Ex. B (Demand to Arbitrate).

[38] *See* Alter Decl. ¶ 13; Alter Decl., Ex. B (Demand to Arbitrate) at 17-18.

[39] *See* Alter Decl. ¶ 13; Alter Decl., Ex. B (Demand to Arbitrate) at 13 n.3.

[40] *See* Alter Decl. ¶ 14.

40.     To resolve the dispute, the parties chose Arbitrator Daniel F. Kolb.[41]

41.     Before choosing the Arbitrator, the parties reviewed his experience and qualifications.[42]

42.     The Arbitrator has "[o]ver 45 years experience representing major corporations, accounting firms, law firms, and individuals as a trial lawyer and litigator in matters involving significant damage claims and regulatory and business issues."[43]

43.     The Arbitrator has significant alternative dispute resolution training and experience.[44]

44.     Prior to conducting a hearing, the Arbitrator accepted pre-hearing submissions from the parties.[45]

45.     AEXG submitted its pre-hearing brief to the Arbitrator and Generex.[46]

46.     Generex did not provide a copy of its pre-hearing submission to AEXG.[47]

47.     An arbitration hearing was held on September 24, 2018, in New York, New York (the "Hearing").[48]

48.     During the Hearing, the Arbitrator heard arguments of the parties and took testimony of certain fact witnesses, including Jeff Meyerson, a Senior Managing Director at

---

[41] *See* Alter Decl. ¶ 14.

[42] *See* Alter Decl. ¶ 14; Daniel F. Kolb's AAA Resume ("Arbitrator's Resume"), a true and correct copy of which is attached as Exhibit C to the Alter Declaration.

[43] *See* Alter Decl., Ex. C (Arbitrator's Resume).

[44] *See* Alter Decl., Ex. C (Arbitrator's Resume).

[45] Alter Decl. ¶ 15.

[46] *See* Alter Decl. ¶ 15; AEXG's pre-hearing submission ("AEXG's Pre-Hearing Brief"), a true and correct copy of which is attached as Exhibit D to the Alter Declaration.

[47] *See* Alter Decl. ¶ 15.

[48] *See* Alter Decl. ¶ 16.

AEXG; Joe Moscato, Generex's CEO; and Mark Fletcher, Generex's Executive Vice-President & General Counsel.[49]

49.    During the Hearing, Generex's CEO, Joe Moscato, testified that Generex could not register the warrants promised in the Contract because this would cause Generex to lose the ability to utilize its net operating loss.[50]

50.    Moscato testified that he never intended to issue the warrants to AEXG.[51]

51.    Each party submitted a post-hearing brief summarizing the relevant facts and law on October 19, 2018.[52]

**D.    Generex's Stock Dividend**

52.    On October 10, 2018, Generex announced that its board had approved the issuance of twenty shares of common stock for every one share of issued and outstanding common stock (the "Stock Dividend").[53]

53.    Included in that announcement was a short description of how the Stock Dividend would affect those who held options, warrants, and convertible securities in Generex.[54]

54.    The announcement states, in relevant part:

> All options, warrants, and convertible securities of the Company that are outstanding on the record date and entitle the holders thereof to exercise or convert for shares of the Company's common stock will be proportionally adjusted to reflect the dividend.[55]

---

[49] *See* Alter Decl. ¶ 16.

[50] *See* Alter Decl. ¶ 17.

[51] *See* Alter Decl. ¶ 17.

[52] *See* Alter Decl. ¶ 18; AEXG's post-hearing submission ("AEXG's Post-Hearing Brief"), a true and correct copy of which is attached as Exhibit E to the Alter Declaration; Generex's post-hearing submission ("Generex's Post-Hearing Brief"), a true and correct copy of which is attached as Exhibit F to the Alter Declaration.

[53] *See* Generex's October 10, 2018 Announcement, a true and correct copy of which is attached as Exhibit 1 to the Declaration of John F. Watkins dated December 12, 2019 (the "Watkins Decl.").

[54] *See* Watkins Decl., Ex. 1 (Generex's Oct. 10, 2018 Announcement).

[55] *See* Watkins Decl., Ex. 1 (Generex's Oct. 10, 2018 Announcement).

4827-2964-2459, v. 2

55.   The announcement did not require Generex's stock price to be at or above a certain value for holders of options, warrants, or convertible securities to receive the benefit of the proportional adjustment.[56]

56.   The Stock Dividend would have significantly affected AEXG's award unless the award took into account the proportional adjustment Generex was offering holders of options and warrants.[57]

57.   Following this initial announcement of its Stock Dividend, Generex issued a series of other press releases and made SEC filings specifying the terms of the Stock Dividend.[58]

58.   The final announcement was issued on November 14, 2018.[59]

59.   The November 14, 2018 announcement stated that the record date to participate in the Stock Dividend was extended to November 20, 2018.[60]

60.   The November 14, 2018 announcement also stated that the dividend payment date was set for Friday, November 30, 2018.[61]

61.   The November 14, 2018 announcement also stated that the ex-dividend date would be December 3, 2018.[62]

---

[56] *See* Watkins Decl., Ex. 1 (Generex's Oct. 10, 2018 Announcement).

[57] *See* Alter. Decl. ¶ 21.

[58] *See* Generex's October 22, 2018 Announcement, a true and correct copy of which is attached as Exhibit 2 to the Yecies Declaration; Generex's October 31, 2018 Announcement, a true and correct copy of which is attached as Exhibit 3 to the Yecies Declaration; Generex's November 5, 2018 Announcement, a true and correct copy of which is attached as Exhibit 4 to the Yecies Declaration; Generex's November 13, 2018 Announcement, a true and correct copy of which is attached as Exhibit 5 to the Yecies Declaration; Generex's November 14, 2018 Announcement, a true and correct copy of which is attached as Exhibit 6 to the Yecies Declaration and as Exhibit L to the Alter Declaration.

[59] *See* Watkins Decl., Ex. 6 (Generex's Nov. 14, 2018 Announcement).

[60] *See* Watkins Decl., Ex. 6 (Generex's Nov. 14, 2018 Announcement).

[61] *See* Watkins Decl., Ex. 6 (Generex's Nov. 14, 2018 Announcement).

[62] *See* Watkins Decl., Ex. 6 (Generex's Nov. 14, 2018 Announcement).  An ex-dividend date is the day a stock starts trading without the value of its next dividend payment.

62.     Because the Hearing took place on September 24, 2018, the parties were unable to submit arguments to the Arbitrator at that time as to how this Stock Dividend would affect the arbitration award, should the Arbitrator find in AEXG's favor.[63]

63.     On November 2, 2018, AEXG submitted to the Arbitrator via email a letter detailing the terms of the Stock Dividend.[64]

64.     This letter included two of Generex's press releases.[65]

65.     In one of the press releases attached to AEXG's letter, dated October 22, 2018, Generex stated, "[a]ll options, warrants, and convertible securities of the Company outstanding on the record date will be proportionally adjusted to reflect the dividend."[66]

66.     In the November 2, 2018 letter, AEXG requested that any arbitration award consider the Stock Dividend.[67]

67.     The letter stated that if the award did not take into account the dividend, AEXG would not be placed in the position it would have been had the breach not occurred, as contracted for by the parties.[68]

68.     Both parties sent the Arbitrator several other submissions related to the Stock Dividend.[69]

---

[63] See Alter Decl. ¶ 21.

[64] See Alter Decl. ¶ 21; November 2, 2018 email from A. Weiner to the Arbitrator ("AEXG's Nov. 2, 2018 Email"), attaching a letter regarding the Stock Dividend, a true and correct copy of which is attached as Exhibit G to the Alter Declaration.

[65] See Alter Decl. ¶ 21; Alter Decl., Ex. G (AEXG's Nov. 2, 2018 Email).

[66] See Alter Decl. ¶ 20; Alter Decl., Ex. G (AEXG's Nov. 2, 2018 Email); Watkins Decl., Ex. 2 (Generex's Oct. 22, 2018 Announcement Re Stock Dividend).

[67] See Alter Decl. ¶ 22; Alter Decl., Ex. G (AEXG's Nov. 2, 2018 Email).

[68] See Alter Decl. ¶ 22; Alter Decl., Ex. G (AEXG's Nov. 2, 2018 Email).

[69] See Alter Decl. ¶ 23; Generex's November 2, 2018 email, attaching its response letter ("Generex's Nov. 2, 2018 Email"), a true and correct copy of which is attached as Exhibit H to the Alter Declaration; AEXG's November 5, 2018 email, attaching its reply ("AEXG's Nov. 5, 2018 Email"), a true and correct copy of which is attached as Exhibit I to the Alter Declaration; Generex's November 5, 2018 email, attaching its response ("Generex's Nov. 5, 2018 Email"), a true and correct copy of which is attached as Exhibit J to the Alter Declaration.

69.     In its submissions, Generex contended that no warrants should be awarded.[70]

70.     Generex also contended that if warrants were awarded, the Arbitrator should not adjust them based on the Stock Dividend.[71]

71.     Thus, prior to issuing his award, the Arbitrator had multiple submissions from the parties regarding the Stock Dividend and the parties' respective positions on how the Stock Dividend should affect the award.[72]

72.     On Friday, November 30, 2018, Generex filed a Form 8-K.[73]

73.     Generex's November 30, 2018 Form 8-K states that Generex "paid its previously announced common stock dividend on its shares of common stock . . . at a ratio of 20 for 1."[74]

74.     Thus, the owner of a single share of Generex's common stock on November 20, 2018, would own twenty-one shares post-dividend.[75]

75.     The owner of a warrant to purchase a single share of Generex stock would thus have a warrant to purchase twenty-one shares of Generex stock.[76]

76.     This proportional adjustment would also require a corresponding reduction to the warrants' strike price.[77]

77.     The warrants' strike price would be reduced by dividing the strike price by twenty-one.[78]

---

[70] *See* Alter Decl. ¶ 23; Alter Decl., Ex. H (Generex's Nov. 2, 2018 Email); Alter Decl., Ex. J (Generex's Nov. 5, 2018 Email).

[71] *See* Alter Decl. ¶ 23; Alter Decl., Ex. H (Generex's Nov. 2, 2018 Email); Alter Decl., Ex. J (Generex's Nov. 5, 2018 Email).

[72] *See* Alter Decl. ¶ 23.

[73] *See* Generex's November 30, 2018 Form 8-K, a true and correct copy of which is attached as Exhibit 7 to the Yecies Declaration and as Exhibit K to the Alter Declaration.

[74] *See* Watkins Decl., Ex. 7 (Generex's Form 8-K).

[75] *See* Alter Decl. ¶ 19; Watkins Decl., Ex. 1 (Oct. 10, 2018 Announcement)

[76] *See* Alter Decl. ¶ 20; Watkins Decl., Ex. 7 (Generex's Form 8-K).

[77] *See* Alter Decl. ¶ 20.

[78] *See* Alter Decl. ¶ 20.

4827-2964-2459, v. 2

78.     The twenty-one fold increase in the number of outstanding shares of stock would result in a corresponding reduction in the value of each Generex share, equivalent to dividing the pre-dividend share price by twenty-one.[79]

79.     This dividend was first reflected in the stock market when the market opened on Monday, December 3, 2018.[80]

80.     If Generex had complied with the Contract, AEXG would have had in its possession 84,000 warrants at the time of the Stock Dividend.[81]

81.     Thus, AEXG would have benefited from the proportional adjustment Generex offered to holders of warrants.[82]

82.     The strike price for these warrants would have been proportionally adjusted to $0.119 ($2.50 / 21).[83]

83.     This would have resulted in AEXG holding 1,764,000 warrants (84,000 x 21).[84]

**E.  Attorneys' Fees**

84-91.  *Intentionally Omitted*

**F.  The Arbitration Award**

92.     On December 3, 2018, the Arbitrator issued a three-page decision detailing his award.[85]

---

[79] *See* Alter Decl. ¶ 19.

[80] *See* Alter Decl. ¶ 24; Watkins Decl., Ex 6 (Generex's Nov. 14, 2018 Announcement) (noting the ex-dividend date as December 3, 2018).

[81] *See* Alter Decl. ¶ 22.

[82] *See* Alter Decl. ¶ 22.

[83] *See* Alter Decl. ¶ 22; Alter Decl., Ex. G (AEXG's Nov. 2, 2018 Email).

[84] *See* Alter Decl. ¶ 22; Alter Decl., Ex. G (AEXG's Nov. 2, 2018 Email).

[85] *See* Alter Decl. ¶ 28; Award of Arbitrator ("Award"), a true and correct copy of which is attached as Exhibit O to the Alter Declaration.

93.     In the Arbitration Award, the Arbitrator determined that it was "clear that Respondent [Generex] breached the agreement."[86]

94.     The Arbitrator found that the liquidated damages provision of the Contract "makes evident good sense given the difficulty of estimating damages."[87]

95.     The Arbitrator awarded AEXG "210,000 in liquidated damages and the economic value today of 84,000 warrants convertible to Respondent's stock exercisable at $2.50 per share as of September 24, 2018."[88]

96.     The award of the "economic value of 84,000 warrants convertible to Respondent's stock exercisable at $2.50 per share as of September 24, 2018" made evident sense given the information the Arbitrator had before him.[89]

97.     The Arbitrator heard testimony from Mr. Moscato that he could not register new warrants.[90]

98.     The Arbitrator received submissions from both parties regarding the Stock Dividend.[91]

99.     The "economic value today of 84,000 warrants convertible to Respondent's stock exercisable at $2.50 per share as of September 24, 2018" is $3,300,360.[92]

100.    The Arbitrator awarded the economic value of the warrants as of September 24, 2018.[93]

---

[86] *See* Alter Decl., Ex. O (Award) at 2.

[87] *See* Alter Decl., Ex. O (Award) at 3.

[88] *See* Alter Decl., Ex. O (Award) at 3.

[89] *See* Alter Decl. ¶ 29.

[90] *See* Alter Decl. ¶¶ 17, 29.

[91] *See* Alter Decl. ¶¶ 21-23, 29; Alter Decl., Ex. G (AEXG's Nov. 2, 2018 Email); Alter Decl., Ex. H (Generex's Nov. 2, 2018 Email); Alter Decl., Ex. I (AEXG's Nov. 5, 2018 Email); Alter Decl., Ex. J (Generex's Nov. 5, 2018 Email).

[92] *See* Alter Decl. ¶¶ 29-30.

[93] *See* Alter Decl. ¶ 30; Alter Decl., Ex. O (Award).

101.    The Arbitrator also concluded that AEXG was "the prevailing party entitled to legal fees in the amount of $93,304.06, plus costs of $12,392.50."[94]

102.    The Arbitrator directed Generex to reimburse AEXG $3,312.50 for fees and expenses associated with the arbitration.[95]

103.    The Arbitrator also awarded AEXG "accrued simple interest running at 9% from March 28, 2017."[96]

*104-106.        Intentionally omitted.*

107.    Generex did not comply with the Arbitration Award.[97]

108.    As AEXG interpreted the Arbitration Award of the "economic value" of the warrants to refer to an "economic value" of $3,300,360, AEXG moved to confirm, setting forth its factual basis in a Rule 56.1 Statement and its argument in its memorandum of law.[98]

109.    Generex opposed AEXG's motion and cross-moved to vacate and/or remand the Arbitration Award.[99]  *Inter alia*, Generex argued that the Arbitration Award was "incomplete and indefinite" and not a "material, final, and definite" award, justifying *vacatur* under 9 U.S.C. § 10(a)(4).[100]

110.    In advancing this argument, Generex expressly requested that the Court "remand the case to the arbitrator for further proceedings with regard to the economic valuation of the 84,000 warrants."[101]

---

[94] *See* Alter Decl., Ex. O (Award) at 3.

[95] *See* Alter Decl., Ex. O (Award) at 3.

[96] *See* Alter Decl., Ex. O (Award) at 3.

[97] *See* Alter Decl. ¶ 32.

[98] See Dkt. #22, ¶¶101-14; Dkt. #19, at 13-16.

[99] See Dkt. #24-26.

[100] Dkt. #24, at 18.

[101] Dkt. #24, at 20.

111.    On July 31, 2019, the Court issued an order finding that the Arbitration Award was ambiguous as to the "economic value" of the warrants, partially granting Generex's cross-motion insofar as to remanding to the arbitrator for a clarification on that subject, and otherwise denying both motions.[102]

112.    The Court subsequently[103] stayed proceedings.

113.    On August 28, 2019, the Arbitrator issued a "Response to the Court's Questions", in which the arbitrator stated that "because the announcement of the dividend came after the Arbitration Hearing and before the date of the award, the evidence in the Arbitration record that could bear on the calculation of the warrants was not complete", and that he had therefore "entered no findings as to the value of the warrants".[104]

114.    The Arbitrator went on to explain that he "intended no more than that [AEXG] be paid the economic value of the warrants with the determination of value to be made, if at all, on a more complete record".[105]

115.    The Arbitrator specifically denied having reached any conclusion "simply based on lack of evidence in the Arbitration record."[106]

116.    On September 11, 2019, the parties submitted a joint letter to the Court seeking a status conference.[107]

117.    Also on September 11, 2019, the Court endorsed said joint letter, and directed both parties to submit letters proposing the next steps to be taken in the matter.[108]

---

[102] Dkt. #29.

[103] The stay is effective from July 31, 2019, though entered into the docket as of October 2, 2019.

[104] Dkt. #30-1.

[105] Dkt. #30-1.

[106] Dkt. #30-1.

[107] Dkt. #30.

[108] Dkt. #31.

4827-2964-2459, v. 2

118.    On October 15, 2019, Generex wrote the Court and proposed that no further steps be taken, styling the Award to have concluded that the warrants were without value based on lack of evidence in the arbitration record.[109]

119.    Generex's October 15, 2019 letter also contended that remand would be impossible as the Arbitrator was now *functus officio*, and made no other argument that AEXG had waived its right to seek a remand.[110]

120.    Also on October 15, 2019, AEXG wrote the Court, attaching a proposed Supplemental Amended Petition to Confirm, in Part, and Vacate, in Part, Arbitration Award, setting forth is proposed next steps in the proceeding.[111]

121.    On October 18, 2019, Generex again wrote the Court in order to object to AEXG's October 15, 2019 letter.[112]

122.    In this correspondence, Generex repeated its contention that the Arbitration Award was "final"[113], without acknowledging its own prior position that the award was "incomplete and indefinite" and not a "material, final, and definite" award, justifying *vacatur* under 9 U.S.C. § 10(a)(4).

123.    In this same letter, Generex for the first time contended that the 9 U.S.C. §10(b) "time within which the agreement required the award to be made" had expired, acknowledging that "the Agreement itself provides no specific time for the Award to be made", but arguing that either the 60 day period from the close of the hearing referenced in the AAA International Dispute

---

[109] Dkt. #33.

[110] Dkt. #33.

[111] Dkt. ##34, 34-1.

[112] Dkt. #35.

[113] Dkt. #35, at 3.

Resolution Procedures or the 30-day period from the close of the hearing referenced in the AAA Commercial Rules therefore supplied the relevant deadline.[114]

124.    On October 22, 2019, the Court held the aforementioned status conference, and authorized AEXG to file its Supplemental Amended Petition to Confirm, in Part, and Vacate, in Part, Arbitration Award.[115]

125.    At that same hearing, the Court expressly stated that it was "surprised" that the arbitrator had deliberately left an issue undecided.[116]

126.    Also at that same hearing, the Court rejected on the record Generex's argument that the arbitrator had awarded no value for the warrants based on lack of evidence, and instructed Generex not to make said argument, which, the Court noted, is "not what the record in this case shows."[117]

127.    Finally, at that same hearing, all parties acknowledged that the Court had no power to adjudicate the economic value of the warrants itself.[118]

**G.  Other Subsequent Events**

128.    Generex has not been idle since the Stock Dividend, but in fact announced on January 23, 2019 that a yet further dividend would be paid.[119]

129.    On December 10, 2019, Generex announced yet another dividend, to be paid on January 3, 2020.[120]

---

[114] Dkt. #35, at 3.

[115] Dkt. #42, at 23.

[116] Dkt. #42, at 3.

[117] Dkt. #42, at 3-4.

[118] Dkt. #42, at 20.

[119] *See* Generex's January 23, 2019 Announcement, a true and correct copy of which is attached as Exhibit 12 to the Watkins Decl.

[120] *See* Generex's December 10, 2019 Announcement, a true and correct copy of which is attached as Exhibit 12 to the Watkins Decl.

130.    Each of these dividends constitutes a material event in terms of pricing shares in Generex, and would therefore impact the economic value of any warrants issued convertible at a given price such as $2.50.

**H.  The Second Summary Judgment Motion And Remand For Further Arbitration**

131.    On December 13, 2019, AEXF filed a second motion for summary judgment seeking to confirm portion of the Arbitration Award as it related to the $210,000 in liquidated damages, attorneys' fees and interest pertaining to the same and vacating that portion of the Arbitration Award that was not final and definite, specifically the economic value of the warrants, and remanding the matter to the Arbitrator to determine the appropriate damages to award in respect to the same.[121]

132.    Generex opposed and filed a cross-motion for summary judgment arguing that (1) AEXG was not entitled to any compensation for the value of the 84,000 warrants; (2) AEXG waived any challenge to the Arbitration Award by failing to request reopening of the hearing; and (3) the awarded attorney's fees and interest were excessive.[122]

133.    In an order dated April 20, 2020, the Court granted AEXG's motion and denied Generex's cross-motion.[123]   Specifically, the Court vacated portion of the Arbitration Award pursuant to Section 10(a)(4) finding that it was not mutual, final and definite award and remanded for a determination of "the dollar amount to which AEXG is entitled that reflects 'the economic value today of 84,000 warrants convertible to Generex's stock exercisable at $2.50 per share as of September 24, 2019.'"[124]   The Court confirmed the remainder of the award consisting of $210,000 in liquidated damages and associated attorneys fees, costs and prejudgment interest.[125]

---

[121] ECF Dkt. # 48; see also Dkt. # 50-54.

[122] Dkt. #58.

[123] Dkt. # 67 at 1.

[124] Id. at 24-25.

[125] Id. at 25.

4827-2964-2459, v. 2

134.    On August 7, 2020, due to certain disputes between AEXG and Generex regarding interpretation of the April 2020 remand order, the Court issued an order clarifying that the Arbitrator had the authority under the AAA rules to award attorneys' fees, the remand did not alter the Arbitrator's authority in the remanded proceeding and the Court has already determined that AEXG is the prevailing party.[126]

135.    On September 18, 2020, the Court, pursuant to AEXG's application, entered partial final judgment as to those portions of the Arbitration Award previously confirmed in the April 2020 order.[127]

**I.    September 2020 Arbitration Hearing**

136.    Pursuant to the Court's April 2020 order, a further arbitration hearing (the "Hearing") was held to permit the taking of additional evidence in the arbitration as to the value of the subject warrants on the appointed date.[128]

137.    The Hearing was held virtually, over the course of five days, on September 9, 10, 11, 23 and 24, 2020, wherein additional testimony was given, including expert testimony.[129]

138.    In addition to the Hearing testimony itself, the arbitrator accepted pre-hearing[130] and post-hearing submissions[131] from both parties, in which they laid out their respective arguments.

---

[126] Dkt. #84.

[127] Dkt. #97.

[128] Dkt. #29; *see* The amended award of arbitrator, issued February 4, 2021 (the "Amended Award") that is the subject of the instant motion, a true and correct copy of the same is attached as Exhibit 14 to the Watkins Decl.

[129] *See* Watkins Decl., Ex. 14 (Amended Award).

[130] *See* Generex's Pre-Hearing Submission, undated, a true and correct copy of which is attached as Exhibit 15 to the Watkins Decl.; AEXG's Pre-Hearing Submission, dated August 21, 2020 a true and correct copy of which is attached as Exhibit 16 to the Watkins Decl.

[131] *See* Generex's Post-Hearing Submission, dated November 6, 2020, a true and correct copy of which is attached as Exhibit 17 to the Watkins Decl.; AEXG's Post-Hearing Submission, dated November 5, 2020, a true and correct copy of which is attached as Exhibit 18 to the Watkins Decl.

4827-2964-2459, v. 2

139.    Generex argued primarily that: (1) AEXG was not entitled to benefit from the dividend announced after the September 2018 arbitration hearing; (2) the warrants at issue must be valued as of December 3, 2018 (or, in the alternative, March 28, 2017); and (3) the warrants at issue had no value as of December 3, 2018 (or, in the alternative, that these warrants had value greatly less than what AEXG claims).[132]

140.    Generex also argued that it should be considered the prevailing party for purposes of the Hearing.[133]

141.    AEXG, in turn, argued that: (1) the value of the warrants should reflect the dividend; and (2) the warrants must be valued as of December 3, 2018.[134]

142.    In sum, AEXG asked the arbitrator determine that the economic value of the warrants on December 3, 2018 was $3.46 million, or, in the alternative, $3.3 million.[135]

143.    After the Hearing, as memorialized in the Amended Award, the Arbitrator found in favor of AEXG on all outstanding issues.[136]

144.    The Amended Award specifically provides:

1. [AEXG] is awarded US $3,300,000 as the economic value of the warrants at December 3, 2018 plus accrued simple interest running at 9% from December 3, 2018.

2. As the Prevailing Party [AEXG] is awarded a total of US $550,319.92 as payment of additional attorneys' fees and very limited disbursements in the amount of US $513,133.69 in addition to US $14,520.00 for payment of expert Arnold Katzenbaum, US $8,580.00 for the valuation of warrants by Richard Alter of [ and US $14,086.23 in costs for Akin Gump. Plaintiff has shown that in a number of ways, including but not limited to change of counsel, it took steps to keep its attorneys' fees reasonable.

---

[132] *See* Watkins Decl., Exs. 15 & 17 (Generex's Pre-Hearing Submission and Generex's Post-Hearing Submission).

[133] *See* Watkins Decl., Ex. 17 (Generex's Post-Hearing Submission) at 25.

[134] *See* Watkins Decl., Exs. 16 & 18 (AEXG's Pre-Hearing Submission and AEXG's Post-Hearing Submission).

[135] *See Id.*

[136] *See* Watkins Decl., Ex.14 (Amended Award).

3. The compensation of the Arbitrator incurred in connection with these remanded arbitration proceedings totaling $31,112.50 shall be borne equally by the Parties. There were no administrative fees for the International Centre for Dispute Resolution.

4. This award is in full settlement of all claims and requests submitted in these remanded arbitration proceedings.[137]

145.    AEXG's instant motion for summary judgment seeks confirmation, in its entirety, of the Amended Award.[138]

146.    Pursuant to the Court's March 8, 2021 scheduling order, AEXG filed its Second Supplemental and Amended Petition to Confirm Arbitration Award on March 8, 2021.[139]

---

[137] *Id.*

[138] *See* Notice of Motion, dated March 8, 2021, and Memorandum of Law, dated March 8, 2021.

[139] Dkt. #109, 110.

4827-2964-2459, v. 2

Dated: March 8, 2021

SHAUB, AHMUTY, CITRIN & SPRATT, LLP


/s/John F. Watkins
John F. Watkins
Jonathan P. Shaub
Sofya Uvaydov
1983 Marcus Avenue
Lake Success, New York 11042
(516) 488-3300
(516) 488-2324 (fax)
jwatkins@sacslaw.com
jshaub@sacslaw.com
suvaydov@sacslaw.com