UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THREE BROTHERS TRADING, LLC, d/b/a ALTERNATIVE EXECUTION GROUP,<br><br>Petitioner,<br><br>v.<br><br>GENEREX BIOTECHNOLOGY CORP.,<br><br>Respondent. | Civil Action No. 18-CV-11585 (KPF)<br><br>**MEMORANDUM OF LAW IN SUPPORT OF AEXG'S APPLICATION FOR THE APPOINTMENT OF A RECEIVER** |

Petitioner, THREE BROTHERS TRADING, LLC, d/b/a ALTERNATIVE EXECUTION GROUP ("AEXG"), by its attorneys, Shaub, Ahmuty, Citrin & Spratt, LLP, submits the following Memorandum of Law in support of AEXG's application for the appointment of a receiver to collect assets to satisfy its judgment.

## PRELIMINARY STATEMENT AND RELEVANT FACTS

A statement of relevant facts in this matter is contained in the Declaration of Richard Alter, dated November 5th, 2021 ("Alter Declaration"), filed simultaneously with this memorandum and which is incorporated by reference and to which this Court is also respectfully referred.

As the Alter Declaration conclusively establishes, Generex[1] has not paid the Judgment or its agreed-upon installment payments thereto, has resisted and impeded collection efforts, and has openly stated that, if left to its own devices, it will squander its own remaining assets out of spite, while working to ensure that its insiders profit to the detriment of AEXG and its other creditors. Generex's egregious conduct in efforts to evade satisfaction of the Judgment has left AEXG without adequate remedy. This application for the appointment of a receiver under the Court's

---

[1] Undefined capitalized terms take the definitions assigned in the Alter Declaration.

equitable powers and applicable New York state law is the inevitable consequence of Generex's delinquent and fraudulent behavior, and as explained in the Alter Declaration and below, a proposed remedy of last resort.

## ARGUMENT

### POINT I

### THE CIRCUMSTANCES WARRANT THE APPOINTMENT OF A RECEIVER

A.   Standards of Law

The Federal Rules of Civil Procedure expressly contemplate the appointment of equitable receivers. FED. R. CIV. P. 66. Federal courts have inherent equitable power to appoint receivers to protect other parties' interests in property. Wilmington Trust, Nat'l Ass'n v. Winta Asset Mgmt LLC, 2020 WL 5802365, *1 (S.D.N.Y. Sept. 28, 2020). The party seeking the appointment of a receiver must have more than a "mere claim" to the debtor's property. Wright & Miller, 12 Fed. Prac. & Proc. Civ. § 2983 (3d ed.). See Pittsburgh Equitable Meter Co. v. Paul C. Loeber & Co., 160 F.2d 721, 728 (7th Cir. 1947) (federal common law provides for the appointment of equitable receivers on motion of judgment creditor when other options fail).

Courts have "significant discretion" in determining whether to appoint a receiver. Zyppah, Inc. v. Ace Funding Source, LLC, 2019 WL 6647912, *2 (S.D.N.Y. Nov. 6, 2019), following U.S. Bank Nat'l Ass'n v. Nesbitt Bellevue Prop. LLC, 859 F. Supp. 2d 602, 610 (S.D.N.Y. 2012). The appointment of a receiver in a federal diversity action is governed by federal law. U.S. Bank Nat'l Ass'n v. Nesbitt Bellevue Prop. LLC, 866 F. Supp. 2d 247, 249 (S.D.N.Y. 2012).

Before awarding this extraordinary remedy, courts consider factors including (1) fraudulent conduct on the part of the defendant, (2) the imminent danger of property being lost, concealed, squandered, or diminished in value, (3) the inadequacy or unavailability of legal

remedies, and (4) the probability of the plaintiff's success on the merits. Zyppah, 2019 WL 6647912, *2, following Varsames v. Palazzolo, 96 F. Supp. 2d 361, 365 (S.D.N.Y. 2000).

Furthermore, the Court may appoint a receiver pursuant to Rule 69 of the Federal Rules of Civil Procedure, and CPLR 5228. See N.Y. CPLR 5228 ("Upon motion of a judgment creditor, upon such notice as the court may require, the court may appoint a receiver who may be authorized to administer, collect, improve, lease, repair or sell any real or personal property in which the judgment debtor has an interest or to do any other acts designed to satisfy the judgment"); FED. R. CIV. P. 69 (expressly adopting state-law remedies).

New York courts consider several factors when determining whether to appoint a receiver for a judgment debtor's assets, including: "(1) alternative remedies available to the creditor; (2) the degree to which receivership will increase the likelihood of satisfaction of the judgment; and (3) the risk of fraud or insolvency if a receiver is not appointed." Blue Citi LLC v. 5Barz Int'l Inc., No. 16-CV-9027 (VEC), 2019 WL 6976972, at *2 (S.D.N.Y. Dec. 20, 2019) (quoting Hotel 71 Mezz Lender LLC v. Falor, 14 N.Y.3d 303 (2010). "The appointment of a receiver is particularly warranted when the property is intangible, lacks a ready market, and presents nothing that a sheriff can work with at an auction." Blue Citi LLC, 2019 WL 6976972, at *2 (internal citations and quotations omitted).

    B.    AEXG Clearly Satisfies the Requirements Necessary for the Appointment of a Receiver

First, AEXG clearly has more than a "mere claim" to Generex's property: AEXG is a judgment creditor that has proven unable to collect its Judgement as a result of Generex's misleading and fraudulent actions. Specifically, AEXG has served a restraining notice, served information subpoenas which have been ignored or responded to falsely or incompletely, and

attempted to secure a fiduciary through an involuntary bankruptcy proceeding (but could not satisfy the statutory requirement of doing so with other eligible creditors as required).

Second, all of the factors outlined by the applicable case law weigh heavily in favor of appointing a receiver here, under either standard: (1) Generex has already effectuated actual fraudulent transfers to insiders; (2) Generex's management has indicated a willingness to continue doing so, and is failing to pay its debts as they come due further risking a loss of property and information; (3) as set forth below, an involuntary bankruptcy proceeding proved to be inaccessible, in part due to concerted efforts by Generex's management; (4) AEXG already holds the Judgment, and is entitled to relief which will assist its collection efforts; (5) Generex's prior conduct demonstrates a likelihood of continued fraud deepening insolvency, (6) AEXG is a judgment creditor that has already prevailed on the merits, but has failed in its efforts to secure Generex's property from its insiders' fraudulent actions, and (7) many of the assets at issue (interests in subsidiaries, intellectual property rights, and others), are intangible, lack a ready market, and present nothing that a sheriff can work with at an auction.

With respect to alternative remedies, as noted, AEXG's pursuit of alternative remedies has been frustrated. After failing to pay the Judgment, Generex indicated that it would seek protection of the Bankruptcy Code. AEXG waited for Generex to commence a voluntary bankruptcy proceeding, but Generex instead effectuated fraudulent and preferential transfers to other similarly situated creditors. AEXG then expended its own funds to attempt to commence an involuntary bankruptcy proceeding, only to be intentionally frustrated by Mr. Moscato's false claims to third-parties that the very bankruptcy process that would protect them as creditors was somehow a fraud or scam by AEXG. Although it may be true that there are state law claims available to AEXG as an additional alternative remedy (AEXG could pursue avoidance actions under state law against

4889-5593-5234, v. 1

insider transferees), that relief would take a significant amount of time, and in the interim Generex has proven that it cannot be trusted to safeguard its remaining assets for the benefit of AEXG (or any of its creditors).

With respect to imminent danger of a diminution in value of property, Generex has actively and repeatedly represented that there *is* imminent danger that its property will diminish in value – and Mr. Moscato has in fact boasted of the same, which he evidently believes is simply just deserts for AEXG having dared to seek to hold Generex accountable for its debts.  Further, Mr. Moscato has all-but-openly admitted to fraudulent conduct, including contradicting his own sworn testimony within this very dispute in order to trump up a nakedly false claim to be owed $86 million.

Generex has falsely or, at a bare minimum, incompletely, responded to information subpoenas, defaulted on its settlement obligations while fraudulently transferring funds to insiders and other creditors, given false statements in order to convince AEXG to lift the restraining notice, and actively attacked AEXG's efforts to file an involuntary bankruptcy proceeding against Generex.[2]  During this time, the value of Generex's assets has continued to diminish.  Generex's conduct is demonstrative of its cynical approach to this dispute, its refusal to satisfy its debts,  and stands in stark contrast to its representations to this Court that it was not insolvent, was not a collection risk, and that it would be more than capable of satisfying an eventual judgment.  See generally Docket Nos. 86-94 (AEXG's prior motion for entry of a partial final judgment and the re-arguments of that motion, including Generex's representations to the Court to the effect that no such remedy was warranted).

---

[2] AEXG was attempting to file an involuntary petition against Generex within ninety (90) days of certain preferential transfers effectuated by Generex to other creditors and insiders.

4889-5593-5234, v. 1

C.  Breach of a Settlement Agreement is
<u>Another Factor To Be Considered, And Exists Here</u>

AEXG has attempted to collect upon its Judgment via a settlement agreement, which Generex has not honored. <u>See</u> e.g., <u>Spotnana, Inc. v. Am. Talent Agency, Inc.</u>, No. 09 CIV. 3698 LAP, 2013 WL 227546, at *7 (S.D.N.Y. Jan. 22, 2013) (appointing receiver after defendant failed to honor settlement terms holding "[a] final factor that persuades the Court as to the propriety of appointing a receiver in this case is the fact that judgment was entered due to [defendant']s breach of a settlement agreement that came about in large part due to the Court's active participation. Settlement is an outcome to be lauded, not flouted. [Defendant']s breach of the Settlement, less than ten days after the Judgment Debtors agreed to its terms and warranted that [defendant] was financially capable of complying with its payment obligations, began a disturbing pattern of behavior on [defendant']s part that evidences a disregard for this Court and the judicial process in general.").

The terms of the prior AEXG-Generex settlement agreement remain subject to a confidentiality restriction, but Generex has not paid AEXG the sums owed, nor has Generex demonstrated any serious efforts in doing so.[3]

Given all the foregoing, AEXG respectfully submits that the appointment of a receiver is overwhelmingly justified.

D.  <u>A Receiver With the Appropriate Powers Is Necessary and Appropriate</u>

A federal court may grant an appointed receiver "powers that include the day-to-day management of the business entity, including the authority to liquidate assets, the authority to pursue claims, and the authority to file for bankruptcy." <u>In re Bayou Group, L.L.C.</u>, 363 B.R. 674,

---

[3] AEXG will gladly submit the agreement under seal or for in camera review.

4889-5593-5234, v. 1

683 (S.D.N.Y. 2007). A federal receivership thus reaches across jurisdictional boundaries to wherever the entity's assets are located. 28 U.S.C. § 754.

As set forth in the attached proposed order (Alter Declaration, Ex. BB), AEXG seeks the appointment of a receiver with such broad powers. Ex. BB, or a substantially similar order, would result in the appointment of a receiver with appropriate powers to marshal and liquidate Generex's assets, while stopping its current insiders from pillaging the remaining assets at its creditors' expense. Generex has intangible assets that require attention to detail and an ability to work across state lines. Generex has offices in Florida and New York, and wholly and partially owned subsidiaries with assets in various locations.

A receiver should be appointed to conduct a true audit of Generex's books and records – a fact-finding exercise denied to AEXG by Generex's game-playing and duplicity with its discovery responses – and to then liquidate Generex's assets for the purpose of satisfying AEXG's Judgment. Alternatively, AEXG seeks the appointment of a receiver empowered to marshal and liquidate Generex's assets for the purpose of repaying all of Generex's *bona fide* creditors to the extent this is possible.[4]

AEXG prefers the former: liquidating Generex's assets for the purpose of satisfying AEXG's Judgment. Other creditors have declined to join AEXG's collection efforts and it is AEXG that now makes this motion – accordingly, AEXG's Judgment should be satisfied first and foremost. While Generex has, at a minimum, the theoretical ability to satisfy the Judgment via the

---

[4] This could be accomplished by a slight modification of Ex. BB. Specifically, the Court could simply modify the language at pages 1-2 of Ex. BB "in an amount sufficient to satisfy the Judgment, plus post-judgment interest" to read "in an amount sufficient to satisfy Generex's debts to its bona fide creditors, plus applicable interest". A similar change would then be made at the top and bottom of page 3, rendering "and to take any appropriate actions to satisfy the Judgment" and "in an amount sufficient to satisfy the Judgment, plus post-judgment interest" as "and to take any appropriate actions to satisfy Generex's bona fide debts" and "in an amount sufficient to satisfy Generex's bona fide debts, plus applicable interest." AEXG's counsel is able and willing to submit such a modified proposed order at the Court's request.

divestment of presently-illiquid assets, it has proven either unwilling – in the case of its wholly-owned subsidiaries – or unable, in the case of its failure to effect the NuGenerex IPO – to do so. Generex's halfhearted and ineffective efforts would not be mirrored by a receiver, and thus it is effectively indisputable that a receiver would be able to dispose of Generex's assets so as to satisfy the Judgment. See e.g., Blue Citi LLC., 2019 WL 6976972, at *3 (S.D.N.Y. Dec. 20, 2019) (appointing receiver and noting that "Defendant fails to explain why, given the supposed financial success of its subsidiary companies, the outstanding accounts receivable, and the alleged hardships resulting from receivership, it does not simply pay the judgment.").

The appointment of a receiver also directly avoids a major obstacle to AEXG's *particular* recovery. To wit, Generex is effectively only able to pay its debts in shares of either itself or NuGenerex, but AEXG, as a registered broker-dealer, has no ability to monetize such shares if it accepts them and takes on unwarranted regulatory burdens should it become a material (5-10%) shareholder of Generex. A receiver can circumvent these problems by locating a buyer for NuGenerex in bulk, and then using the proceeds of said sale to satisfy AEXG and other creditors. Generex's managers have proven unwilling or unable to take this step. Other Generex creditors do not share this constraint and may have less need of a receiver's assistance.

But even in the case of the alternative course of a receiver acting for all *bona fide* creditors equally, there is ample reason to believe that Generex's total assets will result in, at a minimum, a significant proportionate recovery to its *bona fide* creditors. This is particularly so as a receiver would also have standing and should be given authority to pursue avoidance actions against transferees of fraudulent and preferential transfers, so that those funds can be recovered for AEXG's benefit, or, again, alternatively, for the benefit of all *bona fide* creditors. Relatedly, a

receiver should also be given authority to reclassify alleged insider debts as capital, if it is appropriate to do so, or to subordinate such claims to those of non-insider *bona fide* creditors.

Should the receiver determine that Generex requires the protection of the Bankruptcy Code, the receiver can, should it be consistent with this Court's order, seek the same, as AEXG proved unable to secure that protection for Generex's creditors.

For all the foregoing reasons, the Court should issue an Order appointing a receiver, as set forth in Exhibit BB, or, in the alternative, in Exhibit BB modified as discussed *supra*.

## POINT II

### AEXG IS ENTITLED TO ADDITIONAL ATTORNEY'S FEES IN PURSUING ENFORCEMENT OF ITS JUDGMENT

This dispute originated from Generex's breach of the parties' Memorandum of Understanding, which explicitly provided for attorney's fees in case of a breach, (Alter Declaration, Exhibit DD):

> If any legal action or arbitration or other proceeding is brought for the enforcement of this Agreement, or because of an alleged dispute, breach, default, or misrepresentation in connection with any of the provisions of this Agreement, the successful or prevailing party shall be entitled to recover reasonable attorneys fees and other costs incurred in that action or proceeding …

This Court has explicitly found on two other occasions that AEXG is entitled to attorney's fees stemming from Generex's breach of the Memorandum of Understanding and litigation of this action. See Order dated April 24, 2020 (Docket No. 67) and Order dated August 7, 2020 (Docket No. 84). Generex has also assented to the same remedy in the settlement agreement in which Generex consented to the entry of the Judgment, which remains confidential but which AEXG will gladly furnish to the Court for in camera inspection should Generex attempt to contest the same.

Thus, AEXG is also entitled to recover the costs and attorney's fees related to the extensive enforcement discovery, negotiation, and making of the present motion. See Blue Citi LLC, 2019

WL 6976972, at *4 (awarding attorney's fees associated with making a motion to appoint receiver).

## CONCLUSION

AEXG is a judgment holder whose efforts to collect amounts justly due from Generex have been unjustly thwarted. Generex's insiders have pillaged the company's cash assets for themselves at the expense of true and valid creditors, including AEXG. Generex has consistently failed to satisfy its obligations under any settlement terms with AEXG, and continuously sought to mislead AEXG and its counsel with false or incomplete responses to information subpoenas. Generex is not paying its debts as they come due. AEXG – and, alternatively, all Generex creditors – requires a fiduciary to take control of Generex's assets for their benefit. An involuntary bankruptcy proved to be impossible at this point and, therefore, a receiver is the last hope to cut-off the imminent loss in value.

Based on the foregoing, Petitioner, AEXG, respectfully requests that this Court enter an Order: (1) granting AEXG's application for the appointment of a receiver with broad powers to liquidate assets for the satisfaction of AEXG's Judgment, or in the alternative to satisfy the claims of all of Generex's *bona fide* creditors; (2) awarding AEXG attorney's fees in pursuing enforcement of its judgment; and (3) for such other and further relief as the Court deems just and proper.

DATED: Lake Success, New York
November 5, 2021

_____
JOHN F. WATKINS

4889-5593-5234, v. 1