# EXHIBIT A



**ArentFox Schiff LLP**
1301 Avenue of the Americas
42nd Floor
New York, NY 10019

212.484.3900 **MAIN**
212.484.3990 **FAX**

afslaw.com

**George Angelich**
Partner
212.457.5423 **DIRECT**
George.Angelich@afslaw.com

March 28, 2022

VIA ECF

Hon. Katherine Polk Failla
District Court Judge
United States District Court for the Southern District of New York
Thurgood Marshall States Courthouse
40 Foley Square
New York, NY 10007

**Re: *Three Brothers Trading, LLC v. Generex Biotechnology Corp.*, Case No. 18-cv-11585 (KPF)**

Dear Judge Failla:

We are counsel to Oasis Capital, LLC ("Oasis") in connection with the above-referenced matter and write in furtherance of the Court's Memo Endorsed letter [ECF No. 144] granting Oasis the opportunity to submit a letter regarding the Petitioner's Proposed Order Appointing Receiver Over Judgment Debtor's Property [ECF No. 139-1] (the "Proposed Receiver Order"). Capitalized terms used but not defined in this letter shall have the meaning ascribed to such terms in the Proposed Receiver Order.

Oasis is the sole secured creditor of Respondent Generex Biotechnology Corporation ("Generex"), a public company, by virtue of: (i) Oasis' loan to Generex made pursuant to that certain Convertible Promissory Note issued on February 17, 2021 (the "February 2021 Note") and that certain Securities Purchase Agreement dated as of February 21, 2021 (the "February 2021 Securities Agreement") in the total amount currently due and owing of $2,872,757.23, and (ii) Oasis' loan to Generex made pursuant to that certain Secured Convertible Promissory Note issued on July 8, 2021 (the "July 2021 Note", and together with the February 2021 Note, collectively, the "Secured Notes") and that certain Securities Purchase Agreement dated as of July 8, 2021 (the "July 2021 Securities Agreement", and together with the February 2021 Securities Agreement, collectively, the "Securities Agreements") in the total amount currently due and owing of $2,591,334.39. The Secured Notes are secured by all asset liens on and security interests in Generex's property (the "First Lien"). Generex is in default of its obligations under the Secured Notes. Oasis holds a validly perfected secured claim against Generex in the aggregate amount of approximately $5,464,091.62 plus interest, fees, costs and other charges which continue to accrue.





Oasis objects to certain extraordinary provisions incorporated into the draft Proposed Receiver Order which (i) preclude the Receiver from recognizing relative priorities of Generex's creditors rights under applicable state law, including the Oasis First Lien; (ii) incorporate superficial and misleading bankruptcy concepts and make attempted end-runs around the Bankruptcy Code itself; and (iii) require the Receiver to undertake actions at the direction of, or designed to specifically benefit Petitioner Three Brothers Trading, LLC d/b/a Alternative Execution Group ("<u>AEXG</u>") and GS Capital Partners (collectively, the "<u>Participating Creditors</u>") or otherwise grant undue control of this Receivership to those Participating Creditors. Such provisions directly contravene the principles and purposes of receivership law and the duties of the Receiver to this Court (not the Participating Creditors) and are without justification.

It is well-established that all property subject to a receivership is held in the custody of the court and a receiver's duties run to the court **<u>not</u>** the creditor that sought the receiver's appointment. Indeed, the Second Circuit has found that a receiver is "an officer of the court and has the duty to preserve and protect the property." *Citibank, N.A. v. Nyland (CF8) Ltd.*, 839 F.2d 93 (2d Cir. 1988) (rejecting creditor's argument that receiver lacked right to manage property after breach of debtor's contract giving rise to receivership, because receivership created a duty to preserve property for all creditors, not just complaining creditor); *see also FCS Advisors, LLC v. Theia Group, Inc.*, Case No. 21-cv-06995 (PKC), 2021 WL 5042719 at *3 n. 2 (S.D.N.Y. Oct. 29, 2021) (granting motion for receiver but noting that "[objections] proceed[] from the assumption that [a secured creditor] would have an outsized influence on the decisions of the receiver. But the receiver is an officer of the Court and reports to it, not to [secured creditors]."). As the court's officer, all property held by a receiver is deemed to be constructively held by the court. *See, e.g., Sperber Adams Assocs. V. Jem Management Assocs. Corp*., 90 Civ. 7405 (JSM), 1991 WL 156337 at *5 (S.D.N.Y. Aug. 5, 1991) (noting that "suits may [not] be brought against a receiver to establish any right to the property which may be placed in his custody without permission of the court. The property being at all times under the control of the court of administration, it would be absurd to permit the institution of suits in another forum to recover such property or diminish its value.") (citations and quotations omitted).

Here, instead of presenting an equitable order that ensures the Receiver's duties run to this Court, the Proposed Receiver Order prejudices the non-Participating Creditors and interferes with the Receivership process. Among the problematic extraordinary provisions of the Proposed Receiver Order, are the following:

- ***Mandating Pro Rata Distribution of the Receiver Assets and Effective Removal the Oasis First Lien***. The Proposed Receiver Order directs Generex to turnover legal and equitable title in its assets to the Receiver and orders that the Receiver Assets be used to satisfy AEXG's Judgment and certain "Verified Claims" on a ***pro rata basis*** (Proposed Receiver Order, at p. 1(iii); 3(i) and 4(viii)). Oasis objects to these provisions to the extent such





provisions purport to strip or subordinate Oasis of its First Lien (which is senior to any judgment creditor) and modify its state law rights.

- ***Creating a Receivership Estate and Requiring the Receiver to Report Separately to Two Participating Creditors***. The Proposed Receiver Order creates an alleged "Receivership Estate" (Proposed Receiver Order, at p. 3) and requires the Receiver to "communicate directly with the Participating Creditors … regarding any issues, status updates, or questions related to the Receivership Estate." Proposed Receiver Order, at p. 4(vii). Oasis objects to the inclusion of these extraordinary provisions. A receivership is not a bankruptcy proceeding where a statutory "estate" is created. Rather, the property subject to a receivership is held in the custody of a court. It is unclear why such language is included but it appears these extraordinary provisions attempt to fashion a pseudo-bankruptcy estate with oversight by an aggressive oversight committee comprised of the two Participating Creditors. There is no justification for granting enhanced benefits and reporting rights to select creditors to the exclusion of other stakeholders.

- ***Requiring the Receiver to Commence a Bankruptcy Proceeding at the Direction of the Participating Holders and Pre-determining the Receiver's Rights, Duties and Obligations in Any Future Bankruptcy Proceeding.*** The Proposed Receiver Order provides that:

> (ix) the Receiver may, or if requested by a majority of the Participating Creditors … and the Receiver does not determine such request to be contrary to the interests of the holders of the Verified Claims, the Receiver shall, file a voluntary petition for relief under chapter 11 or 7 of title 11, United States Code (the "Bankruptcy Code") on behalf of Generex and any other eligible affiliate or subsidiary of Generex, to the extent permissible under applicable law as to the latter, and the Receiver shall be entitled to an uncontested priority claim in any such Generex bankruptcy case for its unpaid fees and costs (including without limitation any Advanced Expenses) incurred in connection with fulfilling its duties under this Order. If Generex or any such entity is placed in bankruptcy proceedings, the Receiver may become, and may be empowered to operate the applicable assets or property as, a debtor in possession. In such a situation, the Receiver shall have all of the powers and duties as provided a debtor in possession under the Bankruptcy Code to the exclusion of any other person or entity.

Proposed Receiver Order, at p. 4(ix). The Participating Creditors attempt to grant themselves the ability to direct the Receiver to commence a voluntary chapter 11 bankruptcy case for Generex. To do so, they propose that this Court grant a Receiver (with





no authority), the ability to (a) commence a bankruptcy case under the Bankruptcy Code and (b) then operate the company as a debtor-in-possession. These provision are extraordinary and will result in challenges should a bankruptcy case ever in fact be commenced. The Proposed Receiver Order also purports to grant the Receiver the right to file bankruptcy on behalf of subsidiaries and affiliates of Generex without regard for the requisite corporate authority. Oasis objects to these extraordinary provisions.

Further, the Proposed Receiver Order grants the Receiver's fees and expenses, including the "Advanced Expenses" provided by the Participating Creditors themselves, administrative priority under section 503 of the Bankruptcy Code in a not yet filed bankruptcy case and before that bankruptcy court has an opportunity to consider whether section 503 of the Bankruptcy Code has been satisfied. The Proposed Receiver Order should not be a mechanism for overriding the Bankruptcy Code or dictating the relative rights among a Receiver and other stakeholders in a hypothetical bankruptcy case. While Oasis has no issue with a fair and equitable receivership conducted under this Court's supervision, initiating a receivership only to give control to a small group of Participating Creditors in order to immediately and conveniently pivot into bankruptcy is inequitable and should not be authorized – nor is it necessary under the circumstances.

- ***Granting Participating Creditors a Priming Lien Ahead of the Oasis First Lien and Control the Actions of the Receiver, Including the Use of Advances***. The Proposed Receiver Order provides that in the event there are insufficient assets the Participating Creditors will advance the Receiver out-of-pocket expenses, provided that Participating Creditors' Representative receives notice of expenses in excess of $500 and the Participating Creditors have a right to deny or reject expenses above the threshold, and the Receiver may borrow funds from time to time from Participating Creditors and deliver related loan and security agreements in connection therewith. *See* Proposed Receiver Order, at p. 6. In effect, these extraordinary provisions purport to authorize the Receiver to grant a priming lien and security interest to the Participating Creditors ahead of the Oasis First Lien in assets of Generex without notice, justification or consideration from the Court. They also purport to grant Participating Creditors control over the actions the Receiver may take and how it may use advanced funds. The Proposed Receiver Order states that the Receiver is authorized to cause any Receivership Asset to be used to pay to the Receiver. Proposed Receiver Order, at p. 3(iv). This provision gives the Receiver carte blanche to charge and use any assets to pay the Receiver's fees. To the extent the fees and expenses are charged to the Receiver Assets, appropriate notice procedures should be put in place to evaluate and challenge any surcharge.

  The Participating Creditors, through the Proposed Receiver Order, require the Receiver, within 30 days of entry of the order, to "file a status report with the Court, which report





shall include a summary of receivership activities to date, a proposed deadline to commence distributions on Verified Clams and **recommendations for a continuation or discontinuation of the receivership as compared to a bankruptcy proceeding, and the reasons for such recommendations**;" Proposed Receiver Order, at p. 9 (emphasis added). Other than satisfying a discrete interest of the Participating Creditors, there is no evidence that this extraordinary third component is a necessary or appropriate use of the Receiver's time or the "Receiver Estate" resources. Moreover, according to the Proposed Receiver Order, the fees and expenses incurred from such an exercise will be either charged to the Receiver Assets or repaid from "Advances," and all fees, costs, expenses and compensation of the Receiver will be paid from the proceeds of the Receivership Estate and the Receivership Assets (Proposed Receiver Order, at p. 6, 8), allowing the repayment of the Advances to come ahead of, or be treated *pari passu* with, the Oasis First Lien.

- ***Excluding from the Injunction, Participating Creditors' Ability to File an Involuntary Petition***. The Proposed Receiver Order includes a broad injunction limiting the rights of all persons and entities claiming an interest in the Receivership Assets. *See* Proposed Receiver Order, at p.7. Oasis recognizes that an appropriately tailored injunction may be useful and thus, does not oppose it generally. But the Proposed Receiver Order inexplicably carves out from the injunction, a creditor's ability to exercise rights to file an involuntary bankruptcy proceeding under section 303 of the Bankruptcy Code. *Id*. The prohibition on the ability to file an involuntary proceeding should not be singularly carved out from the injunctions under the order while Oasis remains bound in all respects by an injunction that prohibits it from exercising its rights as a secured creditor. "[D]istrict courts possess the authority and discretion to enter anti-litigation orders, including those that bar the filing of involuntary bankruptcy petitions absent the district court's permission." *SEC v. Byers*, 609 F.3d 87, 89 (2d Cir. 2010); *see also Big Shoulders Capital LLC v. San Luis & Rio Grande Railroad, Inc.*, No. 19-C-6029, 2019 WL 6117578 at *3 (N.D. Ill. Nov. 18, 2019) (finding the court had the authority to enjoin an involuntary bankruptcy petition on the basis that the appointment of a federal receiver already protected the entity in receivership's assets, and the allowance of a petition, which includes the automatic stay, would impermissibly interfere with the court's ability to administrate the receivership already in place). It appears that the only reason the Participating Creditors inserted such a provision is to provide themselves with the option of transforming the Receivership into a bankruptcy proceeding if the Receiver declines to follow their instructions or if the Receivership fails to achieve their desired outcome.

Oasis requests that the proposed provisions referenced above should be eliminated or modified before the Court enters the Proposed Receiver Order. The order should not strip or modify non-Participating Creditors of their legal, contractual and equitable rights. Nor should it be permitted to shift the cost (through lien priming, fee charges, alteration of Oasis' collateral without its





consent or any of the other objectionable extraordinary provisions) of the Receiver's activities onto the secured creditor without its consent. As set forth above, the Receiver's duties run to this Court, not the specific creditors that sought the Receiver's appointment, and receivership property should managed and operated equitably, under a neutral order, pursuant to this Court's oversight. For these reasons, Oasis requests that the form of Proposed Receiver Order be modified accordingly.

Oasis remains available to have meaningful negotiations with all parties. At this stage, it is possible that a mediator could facilitate a resolution on an intercreditor agreement and a narrowly tailored receiver order. Absent a consensual resolution, Oasis respectfully requests an opportunity to be heard on these matters, and in connection herewith will contemporaneously be filing a motion to intervene in this case.

Respectfully submitted,

ArentFox Schiff LLP

*/s/ George Angelich*

George Angelich